Gerald D.W. North, Esq.
  northlaw2@yahoo.com
125 South Wacker Drive, Suite 1000
Chicago, Illinois 60606
Telephone: (480) 998-6990
Facsimile: (312) 629-0901

COLT / SINGER / BEA LLP
  Doug W. Colt (Bar No. 210915)
  dcolt@coltsinger.com
  Renee B. Bea (Bar No. 268807)
  rbea@coltsinger.com
  Douglas S. Tilley (Bar No. 265997)
  dtilley@coltsinger.com
Shorebreeze II
255 Shoreline Drive, Suite 540
Redwood Shores, California 94065
Telephone:    (650) 887-6650
Facsimile:    (650) 887-6650
*Attorneys for Clear-View Technologies, Inc..*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CLEAR-VIEW TECHNOLOGIES, INC., a California Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>JOHN H. RASNICK, J. BASIL MATTINGLY, WILL RASNICK, PARKER MATTINGLY, individuals residing in Kentucky, and M&R SOLUTIONS, LLC, a dissolved Kentucky Limited Liability Company,<br><br>        Defendants. | CASE NO. 13-CV-02744-BLF (PSG)<br><br>**CLEAR-VIEW TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE IMPLEADER, OR, IN THE ALTERNATIVE, TO JOIN PARTIES**<br><br>Filing Date:    June 14, 2013<br>Trial Date:    June 8, 2015<br>Hearing Date:  March 26, 2015 at 9:00 a.m. |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

I.   FACTUAL BACKGROUND ................................................................................. 3

  A.   DEFENDANTS FILE THREE ANSWERS WITHOUT ONCE MENTIONING
       OR SEEKING RELIEF FROM THE PROPOSED NEW PARTIES ................................. 3

  B.   DEFENDANTS' SPOLIATION AND SUPPRESSION OF KEY EVIDENCE .............. 5

  C.   Defendants' Discovery Abuses Required Further Extension of the Case Calendar .......... 7

II.  DEFENDANTS' MOTION SHOULD BE DENIED ................................................ 8

  A.   Defendants' Motion is Not Properly Before This Court ................................. 8

  B.   Even if They Observed The Required Procedure, Defendants' Motion Should
       Still Be Denied As Without Substantive Merit ................................................. 9

    1.   Defendants Cannot Show the Diligence Required to Implead or Join Now ................ 9

    2.   Even if They Timely Acted, Defendants' Motion Should Still Be Denied ............... 12

    3.   Joinder is Additionally Inappropriate Because The Proposed New Parties
         Categorically Are Neither Necessary Nor Indispensable ........................................... 14

    4.   Even Were They Necessary, Joining the Proposed New Parties Is Not
         Feasible .................................................................................................... 18

    5.   Equity and Good Conscience Require that this Action Proceed ............................... 19

CONCLUSION ................................................................................................. 20

- I -

CLEAR-VIEW TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE
IMPLEADER, OR, IN THE ALTERNATIVE, TO JOIN PARTIES
CASE NO. 13-CV-02744-BLF (PSG)

colt/singer/bea LLP

# TABLE OF AUTHORITIES

## CASES

*Alfa Life Ins. Corp. v. Advantage Consulting Group, Inc.*, 236 F.R.D. 570 (M.D. Ala. 2006) ......... 17

*Applera Corporation-Applied Biosystems Group v. Illumina, Inc.*, 2008 U.S. Dist. LEXIS 40326 (N.D. Cal. May 5, 2008) ................................................................................................ 8, 11, 13

*Axiom Worldwide, Inc. v. Becerra*, 2009 U.S. Dist. LEXIS 40214 (M.D. Fla. May 13, 2009) .. 16, 17

*Bel Air Mart v. Arnold Cleaners, Inc.*, 2014 U.S. Dist. LEXIS 23867 (E.D. Cal. Feb. 21, 2014) ...... 8

*Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962 (9th Cir. Cal. 2008) .................. 16

*EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070 (9th Cir. 2010) ............................................. 18

*Enns Pontiac, Buick, & GMC Truck v. Flores*, 2011 U.S. Dist. LEXIS 43327 (E.D. Cal. April 20, 2011) ......................................................................................................................................... 13

*Fid. Nat'l Ins. Co. v. Sandpoint Title Ins. Incorporated*, 2013 U.S. Dist. LEXIS 81723 (D. Idaho June 7, 2013) ............................................................................................................................... 19

*Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, 917 F. Supp. 2d 985 (D. Ariz. 2013) ........................................................................................................................ 9, 12, 13, 16

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) .................................... 8, 9, 11

*Jones v. Forbes*, 2013 U.S. Dist. LEXIS 172730 (D. Ariz. Dec. 9, 2013) ......................................... 9

*Kenko Int'l, Inc. v. Asolo S.r.L.*, 838 F. Supp. 503 (D. Colo. 1993) ................................................ 16

*Knight Transportation, Inc. v. Baldwin & Lyons, Inc.*, 2014 U.S. Dist. LEXIS 9581 (D. Ariz. January 27, 2014) ............................................................................................................ 8, 9, 13, 19

*Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843 (11th Cir. 1999) ............................ 16, 17

*Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 75 S. Ct. 865, 99 L. Ed. 1122 (1955) ...... 3, 15, 17

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co., LTD*, 2007 U.S. Dist. LEXIS 59946 (N.D. Cal. Aug. 9, 2007) .......................................................... 3, 14, 15, 16, 18, 19, 20

*Mogel v. Hanni*, 2014 U.S. Dist. LEXIS 3931 (N.D. Cal. Jan. 10, 2014) ......................................... 9

*Morris v. Princess Cruises, Inc.*, 236 F.3d 1061 (9th Cir. 2001) ..................................................... 18

*Richland Partners, LLC v. Hall*, 2014 U.S. Dist. LEXIS 141385 (D. Mont. Sept. 29, 2014) ......................................................................................... 8, 9, 11, 12, 13, 19

*Temple v Synthes Corp.*, 498 U.S. 5 (1990) .......................................................................... 3, 15, 17

*United States v. Bigley*, 2014 U.S. Dist. LEXIS 167408 (D. Ariz. 2014).......................................... 14

*Zero Tolerance Entertainment, Inc. v. Ferguson*, 254 F.R.D. 123 (C.D. Cal. 2008) .............. 9, 12, 13

- II -

CLEAR-VIEW TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE IMPLEADER, OR, IN THE ALTERNATIVE, TO JOIN PARTIES
CASE NO. 13-CV-02744-BLF (PSG)

## **STATUTES**

28 U.S.C. § 1332(a) ..................................................................................................... 18

## **RULES**

Federal Rule of Civil Procedure 14................................................... 1, 8, 10, 12, 18

Federal Rule of Civil Procedure 16.................................................... 2, 4, 8, 9, 11

Federal Rule of Civil Procedure 19............................................ 3, 8, 9, 16, 18, 19

Federal Rule of Civil Procedure 20................................................... 8, 14, 18

- III -

CLEAR-VIEW TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE
IMPLEADER, OR, IN THE ALTERNATIVE, TO JOIN PARTIES
CASE NO. 13-CV-02744-BLF (PSG)

# INTRODUCTION

Defendants' eleventh-hour request for leave to file a third-party complaint or to amend the existing pleadings to name Joy Mackell, Joe Myerchin, and Bruce Reynolds (the "Proposed New Parties") is but the latest in a long campaign to delay trial and evade justice for their documented conspiracy to usurp control of Clear-View Technologies, Inc. ("CVT") or, failing that, sabotage the company and divert its intellectual property, personnel, and investors to a competing enterprise.

<u>First</u>, Defendants' Motion is without question untimely and intended solely to delay. Defendants cannot deny that they knew of their claims against the Proposed New Parties when this action was filed nearly 19 months ago. In fact, Defendants readily admit, as they must, that they have known of their own co-conspirators' roles since **April 2011**. Yet Defendants waited until now—on the eve of the Court's repeatedly extended fact discovery cutoff and mere months before trial—to seek to assert those claims or join these so-called indispensable parties. Defendants could have done so in their original July 2013 Answer, or within 14 days after filing the same under Rule 14(a)(1), or in answering Plaintiff's March 2014 First Amended Complaint, or 14 days after that, or when they amended their Answer to CVT's FAC in May 2014. Defendants instead elected ***five times*** to sit on their hands. What is more, Defendants inexplicably do not ask to add key co-conspirators Clyde Berg or Hugh Simpson, both of whom were identified by name in CVT's original June 14, 2013 Complaint. If, as Defendants claim, it is "crucial to Defendants' case" that their co-conspirators be joined, *Defendants would be asking to join them all.* That they are not speaks volumes about the true motive of their Motion. Courts, including in authority cited by Defendants, have unflinchingly denied leave to file impleaders or join new parties in light of far lesser delays and less obvious gamesmanship.

<u>Second</u>, Defendants' request to amend the pleadings is not even properly before this Court. The already-extended deadline to seek to amend the pleadings lapsed over seven months ago, meaning Defendants were required to first file a motion to modify the case schedule before bringing this Motion. They failed to do so, and their request should be denied on that ground alone.

colt/singer/bea LLP

**Third**, even if they had respected the necessary procedure, Defendants cannot possibly establish the "good cause" required under Rule 16 to amend the pleadings. The cornerstone of that inquiry is whether Defendants acted diligently in asserting the claims. There is no debate that their tactical decision—repeated five times over a 19 month period—to *not* assert known claims is the very opposite of diligence. Even if the liberal Rule 15 standard applied here (and the Court has already held that it does not), case law would still require that Defendants' Motion be denied.

Defendants' purported justifications for their delay only underscore their gamesmanship and bad faith. Counsel begs the Court's indulgence because he is new to the case. Counsel hides, however, that his office had been in close contact with Defendants and prior counsel for several months prior to its formal appearance. And in any event, the "we are new" defense is ***precisely the same excuse*** Defendants used eight months ago in asking the Court to extend the original March 2014 deadline to amend. The Court indulged Defendants, who elected *again* to not assert the claims they now present. The Court thereafter told Defendants in no uncertain terms not to seek any further delay. Defendants also falsely claim that they only became aware of the Proposed New Parties during their review of documents recovered through a Court-ordered forensic investigation into Defendants' admitted spoliation. Setting aside that their representation is demonstrably untrue—CVT produced certain of the materials relied upon in April 2014 and Defendants themselves introduced one of them as an exhibit during a September 2014 third party deposition—Defendants' cries of diligence in reviewing evidence **they systematically destroyed and suppressed** makes a mockery of the judicial process.[1]

**Fourth**, it is similarly indisputable that CVT will be gravely prejudiced if Defendants' untimely Motion is granted. Courts routinely reject proposed impleaders and joinders as impermissibly prejudicial where they would likely require that fact discovery be extended and trial be delayed. Both are not just likely but ***virtually guaranteed*** if Defendants' request is granted. Defendants' Motion will not even be heard until two months *after* discovery closes. Moreover, if

---

[1] On January 6, 2015, CVT filed an extensive Motion for Sanctions based on Defendants' massive evidence spoliation and discovery failures. (*See* Dkt. Nos. 127-130.) That motion is now pending before Judge Grewal.

added, the Proposed New Parties would need several additional months to, among other necessary tasks, retain counsel, respond to the third-party complaint (which may involve Rule 12 motion practice), conduct discovery, and file or oppose dispositive motions, rendering a June 8, 2015 trial impossible. Defendants' suggestion that the prejudice to CVT is "non-existent" is absurd on its face.

Finally, as the Supreme Court explained 60 years ago, and as countless cases in this Circuit have reaffirmed, "[c]o-conspirators, like other joint tortfeasors, are not deemed indispensable parties." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co., LTD*, 2007 U.S. Dist. LEXIS 59946 (N.D. Cal. Aug. 9, 2007) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329-30, 75 S. Ct. 865, 99 L. Ed. 1122 (1955) and *Temple v Synthes Corp.*, 498 U.S. 5, 7 (1990)). Defendants' 16-year-old, out-of-circuit, easily distinguished authority does nothing to alter this well-settled rule. In any event, it is not feasible that the cherry-picked Proposed New Parties be joined: Defendants acknowledge that each of the proposed new parties, like CVT, "reside[s] in the State of California[,] meaning that their joinder would "destroy diversity jurisdiction" in violation of Rule 19.

At bottom, Defendants have known of the Proposed New Parties and claims they now seek to join since this case began—and for several years before that—yet they repeatedly declined to pursue them, even as they amended prior pleadings to assert other claims. Defendants categorically are not entitled to a sixth bite at the apple, even were their request not bald-faced gamesmanship. Defendants offer no valid excuse for their lack of diligence, much less any basis to ignore the substantial prejudice to CVT in further delaying its day in court. It is time to put an end to Defendants' serial delay tactics, and direct them to stand trial.

## I. FACTUAL BACKGROUND

### A. DEFENDANTS FILE THREE ANSWERS WITHOUT ONCE MENTIONING OR SEEKING RELIEF FROM THE PROPOSED NEW PARTIES

CVT filed its original Complaint on June 14, 2013. (Dkt. No. 1.) That Complaint set forth in extensive detail Defendants' conspiracy to either usurp control of CVT, or else to cripple the company and divert its intellectual property, personnel, and investor base to a competing entity. (*Id*.

at ¶¶ 25-35.)  CVT's June 2013 Complaint further detailed the role that disaffected CVT employees, such as the Proposed New Parties, played in Defendants' conspiracy.  (*Id*. at ¶¶ 26, 28, 30, 32.)

Defendants filed their original Answer on September 20, 2013.  (Dkt. No. 20.)  Defendants generally denied liability, but made no mention of the Proposed New Parties and asserted no counter or third party claims.

On January 8, 2014, then-presiding Judge Davila entered a Case Management Order setting a March 10, 2014 "deadline for joinder of any additional parties, or other amendments to the pleadings[,]"  and instructed that "[a]mendments sought after the deadline must comply with Federal Rule of Civil Procedure 16."  (Dkt. No. 26 at 1.)  The Court set additional case management deadlines, including a July 18, 2014 fact discovery cutoff.  (*Id*. at 2.)  Defendants made no attempt to amend their answer to name the Proposed New Parties, or to file any third-party complaint against them, prior to the expiration of the Court's deadline to join parties.

CVT filed a First Amended Complaint ("FAC") on March 10, 2014, asserting contract claims against Defendants.  (Dkt. No. 37.)  Like its original Complaint, CVT's FAC described the Proposed New Parties' role in Defendants' unlawful conspiracy.  (*Id*. at ¶¶ 34, 36, 38, 39, 43, 44, 46.)  Defendants answered CVT's FAC on April 7, 2014.  (Dkt. No. 39.)  As before, Defendants elected to make no mention of the Proposed New Parties or seek to file any third party claim.

On April 17, 2014, this matter was reassigned from Judge Davila to the Hon. Beth Labson Freeman, who set a Case Management Conference for May 14, 2014.  (Dkt. No. 43.)  In advance of that Conference, on May 1, 2014, the parties submitted a Joint Case Management Statement, wherein Defendants advised for the first time that they intended to seek to amend their Answer to assert counterclaims.  (Dkt. No. 44 at 6.)  But again, Defendants made no reference to seeking to join or assert claims against the Proposed New Parties.

Nor did Defendants express any desire to join the Proposed New Parties at the Case Management Conference, stating only that they wished to seek leave to amend their answer to assert counterclaims against CVT.  (Declaration of Doug Tilley in Support of Opposition to Motion for Leave, submitted concurrently herewith ("Tilley Decl."), ¶ 2, Ex. A (5/14/14 CMC Tr.) at 3:7-22.)

colt/singer/bea

Counsel for CVT advised the Court that Judge Davila had previously set a March 10, 2014 deadline to amend the pleadings, which deadline Defendants had allowed to lapse. (*Id*. at 8:6-9:6.) Counsel for Defendants requested relief from the Court's deadline because he was "new to the case," although other members of Defendants' legal team, who remained on the legal team, were not. (*Id.* at 2:12-14.) The Court indulged counsel's request, and ordered that "any motion to amend your answer to assert other affirmative claims must be filed … no later than May 28[, 2014.]" (*Id.* at 9:7-20.) At Defendants' request, the Court extended the fact discovery cutoff from July 18 to November 7, 2014. (Dkt. No. 50.)

On May 28, 2014, Defendants filed a motion for leave to amend their second Answer to assert two counterclaims against CVT. (Dkt. No. 52.) Neither Defendants' motion nor their Amended Answer made any mention of the Proposed New Parties or their purported liability to Defendants. (*See id.*; Dkt. No. 53-3.) The Court granted Defendants' motion on September 3, 2014. (Dkt. No. 75.) Defendants filed their Amended Answer on September 15, 2014. (Dkt. No. 79.) CVT answered Defendants' counterclaims on September 29, 2014. (Dkt. No. 87.)

**B. DEFENDANTS' SPOLIATION AND SUPPRESSION OF KEY EVIDENCE**[2]

Beginning in April 2014, CVT voluntarily produced over 2,800 pages of documents supporting its claims against Defendants. (Tilley Decl., ¶ 3.) CVT's production contained hundreds of pages CVT obtained from Defendants' co-conspirators (including Joy Mackell), including communications detailing, in Defendants' own words, their plot to "[f]orm a new operating company, completely independent of CVT" to commercialize a knock-off of CVT's flagship product then "[t]ransfer those assets necessary to complete the operational plan, including hardware, software, and personnel who wish to join the effort, from CVT into the new operating company" and "[o]nce an accurate list of all stockholders … is compiled, hold a meeting will [sic] all, present … the proposed operational plan going forward, and offer each stock (or options,

---

[2]     The following discussion describes only a few examples of Defendants' abuses, in order to provide the Court with necessary context regarding Defendants' efforts over many years to evade and delay justice in this case. A fuller factual discussion is set forth in CVT's Motion for Sanctions and supporting papers, currently pending before Judge Grewal. (*See* Dkt. Nos. 127-130.)

colt/singer/bea<sub>LLP</sub>

1   warrants, etc.) in the new company in exchange for an agreement to let the new company go

2   forward without interference." (*Id*. at ¶ 4.)

3       On February 10, 2014, CVT served narrowly tailored discovery requests on Defendants,

4   including document requests seeking, among other categories, Defendants' communications

5   between themselves and with co-conspirators and other individuals identified by CVT, including

6   authors and recipients of the communications contained in CVT's voluntary production. (*Id*. at ¶ 5.)

7       Months later, Defendants produced 48 pages of documents in response, and verified under

8   oath that they had no more responsive materials in their possession, custody, or control. (*Id*. at ¶ 6.)

9   Defendants produced none of the damning emails contained in CVT's production. (*Id*.)

10  Defendants refused to meet and confer with CVT regarding these and other deficiencies. (*Id*. at

11  ¶ 7.)

12      On July 16, 2014, CVT filed a motion to compel further responses and an independent

13  investigation of Defendants' records and files. (Dkt. No. 62.) Following CVT's motion,

14  Defendants produced an additional 305 pages and supplemented every aspect of their discovery

15  responses. (Tilley Decl., ¶ 8.) Defendants still failed to produce any of the incriminating

16  documents CVT obtained from third parties. (*Id*.)

17      On September 9, 2014, Judge Grewal granted CVT's motion to compel, and ordered

18  Defendants to appear for depositions regarding document preservation and collection practices, as

19  well as to submit their media for independent forensic examination. (Dkt. No. 76.) As more fully

20  set forth in CVT's motion for sanctions, Defendants at every turn sought to delay Court-ordered

21  depositions as well as avoid and undermine Court-ordered forensic investigation. (*See* Dkt. No.

22  127-1 at ¶¶ 17, 24-31, 35-43.)

23      Once they were made to comply with Judge Grewal's Orders, Defendants' depositions and

24  the independent forensic investigation revealed staggering spoliation and suppression of key

25  evidence, as well as counsel's utter failure to supervise Defendants' search and collection efforts.

26  For example, the forensic examiner determined that Defendants affirmatively deleted thousands of

27  files after their duty to preserve attached, installed and used wiping software just six days after CVT

28

colt/singer/bea

1    filed its Motion to Compel, and had at all relevant times possessed yet failed to produce (and

2    continue to this day to withhold) indisputably relevant documents. (Tilley Decl., ¶¶ 10, 12.)

3    Ultimately, the forensic examiner recovered and produced 2,594 responsive, non-privileged

4    documents, totaling nearly 12,500 pages—over 12,000 pages more than Defendants produced

5    despite repeatedly affirming under oath that they had produced all responsive documents in their

6    possession, custody, or control. (*Id*. at ¶ 11.)

7        CVT filed a motion for sanctions and costs on January 6, 2015. (Dkt. No. 127.) CVT's

8    Motion is scheduled for hearing before Judge Grewal on February 10, 2015.

9        **C. Defendants' Discovery Abuses Required Further Extension of the Case Calendar**

10       Simultaneous with their efforts to delay or avoid compliance with Judge Grewal's

11   September 9, 2014 Order granting CVT's Motion to Compel—and having failed for months to

12   provide a single date on which any Defendant might be deposed—Defendants sought to notice

13   substantial third party discovery in order to force CVT to depose key witnesses, including

14   Defendants' co-conspirators, on a virtually non-existent documentary record. (Tilley Decl., ¶ 14.)

15   For example, on September 11, Defendants served a document and deposition subpoena on Clyde

16   Berg, whom Defendants tortiously kept from following through on a promise to invest substantial

17   monies in CVT, noticing his deposition for September 23. (*Id*. at ¶ 15.) Defendants thereafter

18   sought to notice depositions of 19 third party witnesses, including many of their co-conspirators, to

19   be conducted in locations throughout the county in the five days leading up to the Court's already-

20   extended November 7, 2014 fact discovery deadline. (*Id*. at ¶ 16.)

21       In light of Defendants' substantial proposed third party discovery, failure to provide a

22   single deposition date for any Defendant, and protestations of near-total unavailability for this

23   matter, CVT requested that Defendants stipulate to modify the case calendar so that key witnesses

24   could be examined on a full document record, i.e., after Court-ordered forensic investigation into

25   Defendants' spoliation was completed and recovered documents were produced to CVT. (*Id*. at

26   ¶ 17.) Defendants declined to respond for a week, then ultimately refused.

27

28

- 7 -

CLEAR-VIEW TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE
IMPLEADER, OR, IN THE ALTERNATIVE, TO JOIN PARTIES
CASE NO. 13-CV-02744-BLF (PSG)

In light of Defendants' refusal, on October 24, 2014, CVT moved to modify the case management schedule and to stay discovery, and to shorten time to hear CVT's request. (Dkt. Nos. 105, 106.) This Court granted CVT's request on October 30, 2014, extending the fact discovery cutoff for a second time and pushing back other deadlines, including for dispositive motions. (Dkt. No. 111.) The Court made clear that it would permit no further delays. (Tilley Decl., ¶ 18, Ex. B ("10/30/14 Mtn. to Stay Tr.") at 16:7-9 ("I'm expecting that [the Crosby firm] are not entering the case with the purpose of asking for a continuance of the trial date. I would see no reason for that…. [T]hey need to understand that it's a firm trial date with a firm discovery schedule in place.")

## II. DEFENDANTS' MOTION SHOULD BE DENIED

### A. Defendants' Motion is Not Properly Before This Court

Defendants' Motion should be denied for several reasons, including that it is untimely, prejudicial, and a thinly-veiled attempt to inject ever more delay and expense into this litigation. But even without addressing the substantive deficiencies, the Court should deny Defendants' Motion because Defendants have failed to seek modification of the case management order as required under Rule 16. *See, e.g.*, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); *Applera Corporation-Applied Biosystems Group v. Illumina, Inc.*, 2008 U.S. Dist. LEXIS 40326, *4 (N.D. Cal. May 5, 2008) ("Under Rule 16(b), once a court has entered a scheduling order, subsequent pleading amendments **are not allowed without a request to first modify the scheduling order**.") (emphasis added).

Each of Defendants' proffered bases to expand the scope of this case—impleader under Rule 14 or joinder under Rules 19 or 20—is subject to the requirements of Rule 16. *See, e.g.*, *Richland Partners, LLC v. Hall*, 2014 U.S. Dist. LEXIS 141385, *18 (D. Mont. Sept. 29, 2014) (denying motion for joinder); *Bel Air Mart v. Arnold Cleaners, Inc.*, 2014 U.S. Dist. LEXIS 23867 (E.D. Cal. Feb. 21, 2014) (denying impleader because movant "must meet the Rule 16 standard of good cause and the Rule 14(a) standard for impleader."); *Knight Transportation, Inc. v. Baldwin & Lyons, Inc.*, 2014 U.S. Dist. LEXIS 9581, *7 (D. Ariz. January 27, 2014) (same). Yet Defendants' Motion

makes no mention of Rule 16 or the case management order *at all*, let alone any request to modify the same. Accordingly, their Motion should be denied at the outset.

**B. Even if They Observed The Required Procedure, Defendants' Motion Should Still Be Denied As Without Substantive Merit**

1. <u>Defendants Cannot Show the Diligence Required to Implead or Join Now</u>

Where, as here, a case management order has issued and Defendants allowed the amendment deadline to lapse, Rule 16(b)(4) affords them an opportunity to modify the case calendar "only for good cause[.]" Fed. R. Civ. P. 16(b)(4). This is an exacting inquiry which "primarily considers the diligence of the party seeking the amendment." *Knight*, 2014 U.S. Dist. LEXIS 9581 at *5. "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. In assessing a party's diligence, the Court considers (a) when the party seeking amendment came to learn the facts supporting the same, and (b) how promptly thereafter the party sought to amend. *See id.* at 609-610.

Courts find diligence only where the party seeking amendment recently discovered new facts and promptly sought to amend its pleading. *See, e.g., Mogel v. Hanni*, 2014 U.S. Dist. LEXIS 3931 (N.D. Cal. Jan. 10, 2014); *Jones v. Forbes*, 2013 U.S. Dist. LEXIS 172730, *9-10 (D. Ariz. Dec. 9, 2013). Conversely, courts reject efforts to implead or join new parties where, as here, the party requesting amendment has long known the operative facts yet failed to act. *See, e.g.*, *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, 917 F. Supp. 2d 985, 988-89 (D. Ariz. 2013) (denying impleader where facts known for at least five months prior to motion); *Zero Tolerance Entertainment, Inc. v. Ferguson*, 254 F.R.D. 123, 126 (C.D. Cal. 2008) (denying **unopposed** impleader filed six months after discovering operative facts); *Richland*, 2014 U.S. Dist. LEXIS 141385 at *18 (failure to act for two months "is also grounds for denying [] Rule 19 request."); *Johnson*, 975 F.2d at 609-610 (information disclosed in non-movant's pleadings).

It is beyond debate that Defendants have not acted diligently here. They do not deny that they have known of their purported claims against the Proposed New Parties for the entirety of this litigation: CVT's original complaint, filed June 14, 2013, asserted claims for conspiracy and

colt/singer/bea⸱ᴸᴸᴾ

colt/singer/bea LLP

tortious interference and made plain the Proposed New Parties' roles.[3]  In fact, Defendants readily

admit, as they must, that they knew of their purported claims as early as April 2011.  (*See* Mtn. at 3-

4 (recounting 2011, 2012, and 2013 communications *sent to Defendants by or in explicit reference*

*to* the Proposed New Parties).)  Defendants could have sought to assert their claims at any time—in

answering CVT's original Complaint in September 2014; within 14 days thereafter under Rule 14;

in answering CVT's FAC in April 2014; within 14 days thereafter; or in seeking to amend their

Answer to CVT's FAC between May 28 and September 15, 2014.  Yet Defendants elected time,

and time, and time, and time, and time again not to.

Defendants' purported justifications for relieving them of their repeated tactical decisions

fail.  <u>First</u>, counsel appears to request leniency because "[m]y firm substituted in as counsel for

Defendants in this matter on November 14, 2014."  (Dkt. No. 124 ("Crosby Decl."), ¶ 5, under the

heading "Timeliness of Motion & Discovery[.]")  This not only ignores that Defendants were

represented by another firm for over a year, but also deceptively conceals that the Crosby firm was

in frequent contact with prior counsel for at least two and a half months prior to formally appearing

in this matter.  (Tilley Decl., ¶ 13.)  In fact, Defendants' privilege log reveals that between August

31 and November 14, 2014, the Crosby firm sent to or received from Defendants or prior counsel as

many as 3,997 emails.  (*Id.*)  Moreover, the "let us amend because we are new" defense is one we

have heard before:  prior counsel used this *very same excuse* in seeking relief from Defendants'

failure to assert known claims prior to the Court's original March 10, 2014 deadline for amendment

or joinder.  (*See* 5/14/14 CMC Tr. at 2:12-14, 9:7-9 ("MR. RUBEL: I'm new to the case, but I have

been working with counsel of record, David Johanson and Jamie Lee… THE COURT: Well, Mr.

---

[3]       The current posture is thus markedly different from when this Court granted Defendants'
May 2014 Motion to Amend their Answer to assert counterclaims.  (Again, Defendants made no
request to name or seek relief from third parties.)  There, the Court permitted Defendants to amend
to assert counterclaims because the contract underlying the same was not in issue until the filing of
CVT's March 2014 First Amended Complaint.  (*See* Dkt. No. 75 at 3-4 ("Regardless of whether
they knew of the facts giving rise to their allegations that Plaintiff breached the Confidential
Agreement at a prior time, no lack of diligence can be attributed to Defendants' decision to forebear
such claims absent assertion of breach of that Agreement by Plaintiff.").)  Here, CVT's original
June 2013 Complaint asserted the conspiracy and tortious interference claims at the heart of
Defendants' Motion.  (*See* Dkt. No. 1 at ¶¶ 26, 28, 30, 32.)

Rubel, what I'm really thinking I'm hearing is that you're new to the case and you have come in with a different view of how to handle the case…").) Defendants appear to believe that they may indefinitely avoid trial by ignoring Court-ordered deadlines then simply changing counsel to let the new attorney plead unfamiliarity. Of course, they are wrong, and Your Honor told them as much in October: "I'm expecting that [the Crosby firm] are not entering the case with the purpose of asking for a continuance of the trial date. I would see no reason for that…. [T]hey need to understand that it's a firm trial date with a firm discovery schedule in place." (10/30/14 Mtn. to Stay Tr. at 16:7-9.) The Court was right to do so: "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril… Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation[.]" *Johnson*, 975 F.2d at 610.

　　　　Second, Defendants claim that they "acted promptly upon review of thousands of pages of discovery produced in the past two (2) weeks[.]" (Mtn. at 7.) What Defendants decline to say in their Motion is that Defendants were reviewing *their own documents*: every single one of those pages was in Defendants' possession, and had to be forcibly collected from Defendants via Court-ordered forensic investigation in light of their unbelievable discovery abuses. (*See* Crosby Decl. at ¶ 6.) Defendants also decline to tell the Court that CVT produced certain of the emails referenced in Defendants' Motion in April 2014, or that the parties introduced two of them as exhibits during the Clyde Berg deposition in September. (Tilley Decl., ¶¶ 3, 15.) Defendants' failure to review their own files, let alone a targeted production delivered to them by CVT, cannot possibly constitute diligence. *See, e.g.*, *Richland*, 2014 U.S. Dist. LEXIS 141385 at *8-9 ("Not surprisingly, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."); *Applera*, 2008 U.S. Dist. LEXIS 40326 at *5 ("The very documents that Applied relies on to [amend] were in Applied's possession [yet o]ver four months passed before Applied noticed the instant motion.").

colt/singer/bea LLP

1        <u>Third</u>, Defendants assert that the Court must focus only on the period beginning on

2   September 3, 2014, when this Court granted Defendants' request for leave to amend their Answer to

3   assert counterclaims (but, tellingly, not to add new parties or assert third party claims). Not

4   surprisingly, Defendants offer zero support for their bid to ignore the prior 15 months of litigation.

5   To the contrary, Defendants' own authority confirms that their request must be denied:

6                  Rule 14(a) contemplates adding a third-party defendant within 14
               days after serving **the original answer**. Fed. R. Civ. P. 14(a)(1).

7                  Nissan's Motion to add third-party defendants was filed on
               November 8, 2012, nearly ten months after it filed its original answer,

8                  on February 16, 2012.

9   *Helferich*, 917 F. Supp. 2d at 988-89 (denying impleader for undue delay) (emphasis added);

10  *accord, e.g.*, *Zero Tolerance*, 254 F.R.D. at 126 (leave denied due to six month delay); *Richland*,

11  2014 U.S. Dist. LEXIS 141385 at *18 (two months). The unexplained 15 month delay here

12  between Defendants' September 2013 Answer and their December 2014 Motion certainly does not

13  merit more lenient treatment. And even if there were some basis to focus solely on Defendants'

14  April 2014 Answer to CVT's FAC, *Helferich* still damns Defendants' argument:

15                 Further, Nissan did not file its Motion to implead until more than five
               months after Helferich filed its amended complaint, which should

16                 have erased any doubt that the activities of the social media
               companies were central to Helferich's allegations. Because Nissan

17                 has had notice of the nature of these claims-and of the role that the
               social media companies play in them--for many months and delayed

18                 in filing its Motion, the Motion is untimely.

19  *Id*.

20          2.    <u>Even if They Timely Acted, Defendants' Motion Should Still Be Denied</u>

21       While the rules regarding impleader and joinder are intended to promote judicial efficiency

22  by eliminating the multiplicity of actions, the Court "must balance the desire to [avoid] circuity of

23  actions and to obtain consistent results against any prejudice that the plaintiff might suffer from

24  complications of the case." *Zero Tolerance*, 254 F.R.D at 127 (denying **unopposed** motion for

25  leave). In determining whether to permit impleader, the Court considers: "(1) prejudice to the

26  original plaintiff; (2) complication of issues at trial; (3) likelihood of trial delay; and (4) timeliness

27  of the motion to implead." *Id*. Similarly, in assessing joinder, the Court considers: (1) undue delay,

28

1  (2) bad faith or dilatory motive by movant, and (3) prejudice to non-movant. *See Enns Pontiac,*

2  *Buick, & GMC Truck v. Flores*, 2011 U.S. Dist. LEXIS 43327, *15-17 (E.D. Cal. April 20, 2011)

3  (denying joinder even under liberal Rule 15 standard); *Richland*, 2014 U.S. Dist. LEXIS 141385 at

4  *14-15.  Given their overlap, these factors are collectively addressed below.  All weigh heavily

5  against Defendants' proposed expansion of the case.

6       **Prejudice and Trial Delay**.  Defendants' eleventh-hour expansion, if granted, "would

7  require extending the discovery cut-off date, as well as delaying the trial." *Zero Tolerance*, 254

8  F.R.D at 127 (overriding parties' **stipulation** that amendment would not prejudice plaintiff).

9  Indeed, Defendants' Motion will not even be heard until March 26, two months *after* this Court's

10 repeatedly-extended discovery cutoff.  *See Applera*, 2008 U.S. Dist. LEXIS 40326 at *5 ("The fact

11 discovery cutoff date is imminent…. Too much prejudice would flow from this last-minute

12 manipulation of the pleadings.").  If it allows Defendants' request, the Court would have to reopen

13 discovery as well as significantly delay trial, as the Proposed New Parties would need several

14 additional months to retain counsel, respond to the FAC or third-party complaint (which may

15 involve Rule 12 motion practice), conduct discovery, and file or oppose dispositive motions.  *Enns*

16 *Pontiac*, 2011 U.S. Dist. LEXIS 43327 at *15-17 (denying joinder under liberal Rule 15 standard).

17 It is beyond debate that Defendants' request would render a June 8, 2015 trial impossible.  *Zero*

18 *Tolerance*, 254 F.R.D. at 127 (denying motion filed five months before trial); *see also Helferich*,

19 917 F. Supp. 2d at 989 (finding undue prejudice even in the *absence* of a trial date).

20      **Complication of Issues**.  Courts deny efforts to bring in third parties where, as here, their

21 addition would require the existing parties and Court to address otherwise unnecessary issues, such

22 as "the allocation of responsibility between" tortfeasors.  *Helferich*, 917 F. Supp. 2d at 989-90;

23 *Knight*, 2014 U.S. Dist. LEXIS 9581 at *11; *Zero Tolerance*, 254 F.R.D. at 127.   Defendants

24 acknowledge that they could bring a separate action against the Proposed New Parties, and simply

25 prefer not to.  Defendants' convenience is no basis to delay trial, expand the issues requiring

26 resolution, or further prejudice CVT. *See Knight*, 2014 U.S. Dist. LEXIS 9581 at *11-12 (denying

27

28

CLEAR-VIEW TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE
IMPLEADER, OR, IN THE ALTERNATIVE, TO JOIN PARTIES
CASE NO. 13-CV-02744-BLF (PSG)

leave because "[nothing] prevents [movant] from initiating a separate lawsuit for indemnity or contribution against [proposed new parties].")

**Undue Delay and Bad Faith/Dilatory Motive**.  As set forth above, there is no question that Defendants have unduly delayed in seeking to join the Proposed New Parties.  Since the inception of this litigation in June 2013, CVT has made plain that it seeks to recover for Defendants' conspiracy with CVT investors and personnel, including the Proposed New Parties.  (*See* Dkt. No. 1 at ¶¶ 26, 28, 30, 32.)  Defendants had many opportunities to seek to join those parties, including when they begged leave to amend their Answer to assert counterclaims against CVT, yet they repeatedly elected not to.  Only now, on the eve the fact discovery cutoff and mere months before trial, do Defendants seek to materially expand the scope of this case and inject extraneous issues.  As such, there can be no reasonable debate that Defendants' untimely Motion is brought in hopes of pushing off trial.  Indeed, Defendants' own Motion betrays as much.  If it were true that joinder of their co-conspirators is "crucial to Defendants' case[,]" Defendants would be asking to join *all* of them, not some subset that excludes other known, key co-conspirators such as Clyde Berg and Hugh Simpson.  (*See* Dkt. No. 1 at ¶¶ 25, 26, 28, 30, 33; Dkt. No. 37 at ¶¶ 34, 36, 47.)  Defendants' inexplicable cherry-picking speaks volumes about their intent.[4]

**Rule 20**.  Defendants' assertion that they may join the Proposed New Parties under Rule 20 is pure nonsense.  "Rule 20(a) is a rule by which plaintiffs decide who to join as parties and is not a means for defendants to structure the lawsuit."  *United States v. Bigley*, 2014 U.S. Dist. LEXIS 167408 (D. Ariz. 2014)

3. Joinder is Additionally Inappropriate Because The Proposed New Parties Categorically Are Neither Necessary Nor Indispensable

"It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."  *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev.*

---

[4]  Counsel's otherwise incomprehensible motive for adding only an arbitrary subset of Defendants' co-conspirators becomes clear when one realizes that he is *also* counsel for Clyde Berg:  were he to do what he claims is "crucial to Defendants' case"—seek to join *all* of Defendants' co-conspirators in hopes of sharing liability with them—he would be disqualified from both representations.

colt/singer/bea

*Co., LTD*, 2007 U.S. Dist. LEXIS 59946, *36 (N.D. Cal. Aug. 9, 2007) (quoti*ng Temple v Synthes Corp.*, 498 U.S. 5, 7 (1990)). It is equally settled that "[c]o-conspirators, like other joint tortfeasors, are not deemed indispensable parties." *Id.* (*quoting Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329-30 (1955)).

*Mintel*—a Northern District case decided nearly a decade after Defendants' single, out-of-circuit citation regarding co-conspirators—is highly instructive here, as the Court faced virtually identical facts and arguments. There, plaintiff alleged that defendants conspired with plaintiff's employee (its CEO) to, among other things, "misappropriate Mintel's software and other trade secrets, to copy Mintel's protected software … and to engage in … unfair competition." *Id.* at *32. Defendants argued that in so alleging, plaintiff "successfully established that [plaintiff's employee] is a necessary and indispensable party," and that in the absence of joinder, (a) "complete relief cannot be accorded to the parties of this action[,]" (b) "the nature of [employee's] alleged role would expose [defendants] to multiple or inconsistent obligations[,]" and (c) "[employee] will not be given the opportunity to protect his rights regarding any determination by the finder of fact as to which of [plaintiff's] trade secrets were misappropriated." *Id.* at *32-34.

These are the very same arguments asserted here, each of which was handily rejected by the *Mintel* Court:

> Co-conspirators, like other joint tortfeasors, are not deemed indispensable parties. Because the liability of joint tortfeasors is both joint and several, a plaintiff can sue one without suing the others, and the court can afford a plaintiff complete relief in the absence of all the joint tortfeasors in the same lawsuit.
>
> [Defendants] also assert that [employee's] participation is necessary to protect [employee's] legally cognizable interests and to protect defendants from the risk of incurring multiple or inconsistent obligations because of [employee's] interests. Joinder is contingent… upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action. Here, [Defendants] simply hypothesize that [employee's] interests will be impaired if he is not joined in this action. They offer no evidence that [employee] himself has asserted a protected interest in the subject matter of the action.

colt/singer/bea

*Id.* at *37-38 (italics and ellipsis in original, quotations and citations omitted).   There is no basis here to abandon the Supreme Court's longstanding rule that co-conspirators are not necessary or indispensable parties.  The Proposed New Parties do not claim any interest relating to the subject matter of the action, and are not so situated that their absence either impairs or impedes their ability to protect that never-claimed interest.  Any financial interest they might have in avoiding liability is insufficient.  *See Axiom Worldwide, Inc. v. Becerra*, 2009 U.S. Dist. LEXIS 40214, *12 (M.D. Fla. May 13, 2009) ("The only interest identified by [Defendant] is the possibility of [the proposed additional party] incurring [secondary] liability. However, Rule 19 requires 'a legally protected interest, and not merely a financial interest or interest of convenience.'") (quoting *Kenko Int'l, Inc. v. Asolo S.r.L*, 838 F. Supp. 503, 506 (D. Colo. 1993)). The Proposed New Parties' absence does not leave Defendants subject to a risk of multiple or inconsistent obligations.  *See Mintel*, 2007 U.S. Dist. LEXIS 59946 at *36 (liability of co-conspirators is joint and several); *Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962, 976 (9th Cir. Cal. 2008) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.").

Defendants' reliance on *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999), an antitrust case, is unavailing.  First, neither *Laker* nor any case cited by Defendants (except *Helferich*, which unambiguously requires denial of this Motion) involved the substantial, unjustified, and prejudicial delays here.

Second, *Laker* is limited to the antitrust context.  *See Axiom*, 2009 U.S. Dist. LEXIS 40214, *12 (finding joint tortfeasor unnecessary despite binding *Laker* opinion because "[t]his case, by contrast, does not involve an antitrust claim…").   In-circuit cases make plain that even the most "active" co-conspirator is neither necessary nor indispensable.  *See Mintel*, 2007 U.S. Dist. LEXIS 59946 at *36-38 (plaintiff's employee unnecessary and dispensable in conspiracy action where employee secretly registered trademarks for plaintiff's intellectual property in his own name, sought to modify plaintiff's agreements in defendants' favor, authorized defendants to use plaintiff's trade secrets, and appeared in defendants' advertisements).  Were the purported *Laker* exception as broad

colt/singer/bea

colt/singer/bea LLP

1    as Defendants suggest, it would swallow the Supreme Court's longstanding rule that joint

2    tortfeasors, and co-conspirators in particular, are unnecessary and dispensable. *See Temple*, 498

3    U.S. at 7; *Lawlor*, 349 U.S. at 329-30.

4      <u>Third</u>, even if it applied outside of the antitrust context, *Laker* is factually distinguishable.

5    There, the antitrust plaintiff sued British Airways ("BA") on the theory that BA conspired with

6    Airport Coordination Ltd. ("ACL"), a British government-appointed corporation granted **exclusive**

7    **control** over airport landing slots, to monopolize landing slots at a particular British airport. The

8    Court determined that ACL was a necessary party because "ACL is the only entity that can allocate

9    slots at Gatwick Airport. Without ACL, BA would not be able to manipulate, as Laker suggests, the

10   slot allocation process." *Laker*, 182 F.3d at 848. Even courts on whom *Laker* is binding distinguish

11   that opinion where, as here, a movant cannot show that the proposed additional parties "exercise[d]

12   exclusive control" over Defendants' conspiracy and were thus more than "routine joint

13   tortfeasors[s.]" *See, e.g.*, *Alfa Life Ins. Corp. v. Advantage Consulting Group, Inc.*, 236 F.R.D. 570,

14   572 (M.D. Ala. 2006). There is no suggestion here that the Proposed New Parties exercised

15   exclusive control over any aspect of Defendants' conspiracy, or even that they acted alone; to the

16   contrary, CVT's original and amended Complaints identify several key co-conspirators who are

17   conspicuously absent from Defendants' Motion, including Clyde Berg and former CVT vice

18   president Hugh Simpson.

19     CVT's claims, moreover, "do not require proof of [the Proposed New Parties'] activities."

20   *Axiom*, 2009 U.S. Dist. LEXIS 40214 at *12 (further distinguishing *Laker*). Without reference to

21   the Proposed New Parties, CVT can show that (a) Defendants conspired to and did tortiously

22   interfere with CVT's contractual and prospective economic relations via <u>John Rasnick's</u> fraudulent

23   misrepresentations to Berg and others, and (b) Defendants conspired to misappropriate confidential

24   information when <u>Defendants</u> asked CVT employees for technical and strategic information as well

25   as investor lists. If it were true that CVT's claims hinged on what Defendants' co-conspirators did,

26   then the Court would need to add *all* co-conspirators, including Clyde Berg.

27

28

colt/singer/bea LLP

There is no basis to ignore the longstanding rule that "[c]o-conspirators, like other joint tortfeasors, are not deemed indispensable parties." *Mintel*, 2007 U.S. Dist. LEXIS 59946 at *36.

### 4. Even Were They Necessary, Joining the Proposed New Parties Is Not Feasible

Rule 19 provides that joining a required party is feasible if their joinder "will not deprive the court of subject-matter jurisdiction[.]" Fed. R. Civ. P. 19(a)(1). Here, because CVT's claims arise under state law, subject-matter jurisdiction depends on diversity: CVT is a California citizen, and each Defendant is resident of Kentucky or Florida. Defendants acknowledge that, like CVT, "all of the [Proposed New Parties] reside in the State of California" (Mtn. at 8:24),[5] yet inexplicably claim that joining California citizens in a suit with a California plaintiff will not destroy diversity. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (28 U.S.C. § 1332(a) "requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants."). Defendants offer no authority for their apparent assertion that Rule 19 or 20 permits them to add the Proposed New Parties as anything other than plaintiffs or defendants, so as not to deprive this Court of subject-matter jurisdiction. *See, e.g.*, Fed. R. Civ. P. 20 (providing that parties may be joined as either "plaintiffs" or "defendants"); *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070, 1087 (9th Cir. 2010) (referencing "the settled doctrine that Rule 19(b) was not intended to require the joinder of persons… such as potential indemnitors."). Indeed, if those Rules permitted non-parties to be added as third party defendants, Rule 14 would be entirely

---

[5]     In so stating, Defendants provide an answer to their own question regarding why CVT did not name the Proposed New Parties in its Complaint—CVT could not have done so without defeating diversity jurisdiction. In any event, the Proposed New Parties were not omitted because they "do not have deep pockets." (Mtn. at 5:7-16, 7:25-27.) Defendants shamelessly mischaracterize former CVT CEO Paul Mula's email, which reads in relevant part: "[T]he issue is the breach of trust and violations of broken promises by others that led to the shut-down of the company. The fact of the matter is that if we pool together as a team right now, we can unleash very powerful litigation against some very deep pockets with the likelihood of bringing the company back to life rather quickly and force an early settlement once the pleadings are one file. **At that point, our adversaries will have to make a reasoned business decision as to whether they want to throw money down the litigation tube with no reasonable prospect of success, or come clean and pay up for their tortious and other illegal conduct**." (Dkt. No. 124 at pp. 23-25 (emphasis added).)

CLEAR-VIEW TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE
IMPLEADER, OR, IN THE ALTERNATIVE, TO JOIN PARTIES
CASE NO. 13-CV-02744-BLF (PSG)

unnecessary. And in any event, Defendants' request must fail in light of their inexcusable delay, their dilatory motive, and the prejudice to CVT.

5. Equity and Good Conscience Require that this Action Proceed

Assuming, *arguendo*, that the Proposed New Parties were necessary parties, because they cannot feasibly be joined, this Court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). In other words, the Court must determine whether the Proposed New Parties are "indispensable[.]" *Fid. Nat'l Ins. Co. v. Sandpoint Title Ins. Incorporated*, 2013 U.S. Dist. LEXIS 81723, *13 (D. Idaho June 7, 2013). As set forth above, it is well settled that "[c]o-conspirators, like other joint tortfeasors, are not deemed indispensable parties." *Mintel*, 2007 U.S. Dist. LEXIS 59946 at *36. There is no basis here to deviate from that longstanding rule.

Even setting aside this dispositive principle, the absence of the Proposed New Parties certainly does not require dismissal. Rule 19(b)'s "equity and good conscience" inquiry looks to (a) prejudice to a party or the absent party; (b) whether relief can be tailored to lessen prejudice; (c) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (d) whether an alternative forum exists." *Fid. Nat'l Ins*, 2013 U.S. Dist. LEXIS 81723 at *13.

These factors counsel unambiguously against dismissal. While there is no prejudice to the Proposed New Parties from their absence, dismissal would severely prejudice CVT. CVT has expended substantial resources, including to expose and seek relief from Defendants' staggering spoliation and suppression of evidence, all of which would be squandered (and Defendants would skate scot-free) if this case were dismissed. Any prejudice to Defendants is negligible because they can simply pursue their claims in alternative adequate forums, such as any court in California or federal court in Kentucky. *Cf. Mintel*, 2007 U.S. Dist. LEXIS 59946 at *37; *Knight*, 2014 U.S. Dist. LEXIS 9581 at *11-12. Complete relief (not just the adequate relief required to avoid dismissal) can be awarded among the existing parties. *See Richland*, 2014 U.S. Dist. LEXIS 141385 at *16 ("the specific question is whether this Court can grant complete relief in a tort action

to the parties before it when other joint tortfeasors may exist. The answer is yes."); *Mintel*, 2007 U.S. Dist. LEXIS 59946 at *37.

## CONCLUSION

Defendants do not deny that they have known of their purported claims against the Proposed New Parties since this case began, and for several years before that. Yet they elected at least five times *not* to seek the relief they now claim to need. And even now, they *still* do not seek to add *all* of the co-conspirators whose inclusion they assert is "crucial to Defendants' case[.]" Defendants' protestations that they have acted diligently in finally reviewing their own spoliated documents and CVT's productions, or that amendment at this late juncture would not prejudice CVT, or that their proposed amendment somehow will not require substantially delaying trial are flatly contrary to the law and common sense. This is rank gamesmanship, pure and simple, in hopes of further delaying justice. Enough is enough. It is time to direct Defendants to stand trial.

Date: January 12, 2015

Respectfully submitted,

COLT / SINGER / BEA LLP

By:_____
    Douglas W. Colt
    Renee B. Bea
    Douglas S. Tilley
    Attorneys for Clear-View Technologies, Inc.

CLEAR-VIEW TECHNOLOGY, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE
IMPLEADER, OR, IN THE ALTERNATIVE, TO JOIN PARTIES
CASE NO. 13-CV-02744-BLF (PSG)