1   Gerald D.W. North, Esq. (*Pro Hac Vice Application to be Filed*)
2       northlaw2@yahoo.com
    125 S. Wacker Dr., Suite 1000
    Chicago, IL 60606
3   Telephone:     (480) 998-6990
    Facsimile:      (312) 629-0901
4
    COLT / SINGER / BEA LLP
5     Doug W. Colt (Bar No. 210915)
      dcolt@coltsinger.com
6     Renee B. Bea (Bar No. 268807)
      rbea@coltsinger.com
7     Doug Tilley (Bar No. 265997)
      dtilley@coltsinger.com
8   Shorebreeze II
    255 Shoreline Drive, Suite 540
9   Redwood Shores, California  94065
    Telephone:         (650) 887-6650
10  Facsimile:          (650) 887-6650

11  *Attorneys for Plaintiff Clear-View Technologies, Inc.*

12                  UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                        SAN JOSE DIVISION

15  CLEAR-VIEW TECHNOLOGIES, INC., a          CASE NO. CV13-02744-BLF (PSG)
    California Corporation,
16                                            **PLAINTIFF'S NOTICE OF MOTION,**
                    Plaintiff,                **MOTION AND MEMORANDUM OF**
17                                            **POINTS AND AUTHORITIES IN**
                                              **SUPPORT OF MOTION TO STRIKE AND**
18  v.                                        **EXCLUDE DEFENDANTS' EXPERT**
                                              **TESTIMONY, AND FOR ATTORNEYS'**
19  JOHN H. RASNICK, J. BASIL MATTINGLY,      **FEES UNDER FED. R. CIV. P. 37(C)(1)**
    WILL RASNICK and PARKER MATTINGLY,
20  individuals residing in Kentucky; and M&R   Original Filing Date:  June 14, 2013
    SOLUTIONS, LLC, a dissolved Kentucky      Hearing Date:          May 28, 2015 (noticed),
21  Corporation.                                                     but soonest available
                                                                     date requested
22                  Defendants.               Trial Date:            June 8, 2015

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

I.   FACTUAL BACKGROUND ................................................................................. 5

   A.   CVT's Claims and Defendants' Counterclaims ........................................... 5

   B.   The Case Calendar and Expert Disclosure Deadlines ................................... 6

   C.   The Parties' Topic Disclosures .................................................................... 7

   D.   The Parties' Expert Disclosures .................................................................. 7

   E.   CVT's Efforts to Resolves The Parties' Dispute ......................................... 9

II.   LEGAL STANDARDS........................................................................................ 9

   A.   Purpose and Scope of Expert Opinion Evidence ......................................... 9

   B.   Expert Disclosures Procedure ................................................................... 10

      1.   Requirements for Rebuttal Expert Disclosures, and the Court's Obligation to
         Strike for Non-Compliance .......................................................... 11

III.   DEFENDANTS' PROFFERED REBUTTAL EXPERT TESTIMONY IS IMPROPER...... 13

   A.   McCune's Report Must Be Stricken In Whole ........................................... 13

      1.   The McCune Report Must Be Stricken Because McCune Was Not Timely
         Disclosed and Exceeds the Authorized Scope of Rebuttal ......................... 13

      2.   The McCune Report Should Also Be Stricken Because It Relies on
         Inadmissible Hearsay Whose Probative Value Cannot Outweigh Its Prejudicial
         Effect   16

      3.   Nothing Short of Exclusion Will Suffice to Correct Defendants' Misconduct .......... 19

   B.   Turner's Report Must Be Stricken In Part and Corresponding Testimony Excluded....... 19

      1.   Turner May Not Rely On or Introduce Any of McCune's Purported Opinions ......... 19

      2.   Turner Impermissibly Seeks to Usurp the Role of Judge and Jury............................ 22

IV.   DEFENDANTS SHOULD BE DIRECTED TO PAY CVT'S COSTS IN BRINGING
    THIS MOTION ................................................................................................... 23

CONCLUSION ................................................................................................................. 23

- i -

PLAINTIFF'S MOTION TO STRIKE AND EXCLUDE DEFENDANTS' EXPERT TESTIMONY, AND FOR ATTORNEY'S FEES
CASE NO. CV13-02744-BLF (PSG)

1

## TABLE OF AUTHORITIES

2

3

### CASES

4

*Amos v. Makita U.S.A.*, 2011 U.S. Dist. LEXIS 158103,*2 (D. Nev. Jan. 6, 2011)...................... 13, 15

5

*AZ Holding, L.L.C. v. Frederick*, 2009 U.S. Dist. LEXIS 74515 (D. Ariz. Aug. 7, 2009)................. 23

6

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ................................. 9, 10

7

*Dominguez v. Four Winds Int'l Corp.*, 2009 U.S. Dist. LEXIS 43515 (S.D. Cal. May 22, 2009)..... 17

8

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002)............................ 2, 20

9

*Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014) .................................... 10

10

*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 U.S. Dist. LEXIS 52792, *14-15 (E.D. Cal. May 17, 2011) .......................................................................................... 11, 15, 19

11

*Glenwood Sys., LLC v. Thirugnanam*, 2012 U.S. Dist. LEXIS 71261, *21-22 (C.D. Cal. May 21, 2012) ............................................................................................................................... 23

12

*Goben v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 81442, *5 (D. Nev. June 16, 2014).... passim

13

*Houle v. Jubilee Fisheries, Inc.*, 2006 U.S. Dist. LEXIS 1408, *2 (W.D. Wash. Jan. 5, 2006)... 12, 14

14

*In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012-13 (C.D. Cal. 2003) ... 4, 20

15

*International Business Machines Corp. v. Fasco Indus., Inc.*, 1995 U.S. Dist. LEXIS 22533, *7 (N.D. Cal. Mar. 15, 1995) ................................................................................................ 12, 14

16

*Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005) ................................................................. 20

17

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ....................................... 4, 17, 22

18

*Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063 (9th Cir. 2002)............................................... 10, 23

19

*R & R Sails Inc. v. Insurance Co. Of State of Penn.*, 251 F.R.D. 520, 526 (S.D. Cal. 2008)............. 11

20

*R&O Constr. Co. v. Rox Pro Int'l Group, Ltd.*, 2011 U.S. Dist. LEXIS 78032, *5 (D. Nev. July 18, 2011) ...................................................................................................................... 11, 12, 14, 15

21

*United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).......................................................... 10, 23

22

*United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) ......................................................... 10

23

*United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. Cal. 1993) ...................................................... 9

24

*Villagomes v. Laboratory Corp. of America*, 2010 U.S. Dist. LEXIS 124185, *14-15 (D. Nev. Nov. 8, 2010) .................................................................................................................... 17, 18

25

*Vu v. McNeil-PPC, Inc.*, 2010 U.S. Dist. LEXIS 53639, *8 (C.D. Cal. May 7, 2010)............... passim

26

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ...... 10, 11, 14, 23

27

28

- ii -

PLAINTIFF'S MOTION TO STRIKE AND EXCLUDE DEFENDANTS' EXPERT TESTIMONY, AND FOR ATTORNEY'S FEES
CASE NO. CV13-02744-BLF (PSG)

colt/singer/bea<sub>LLP</sub>

1

**RULES**

2  Fed. R. Civ. P. 26 .................................................................................................. passim

3  Fed. R. Civ. P. 37 .................................................................................................. passim

4  Fed. R. Evid. 702 ..................................................................................................... 4, 22

5  Fed. R. Evid. 703 ........................................................................................ 4, 17, 18, 22

6  Fed. R. Evid. 704………………………………………………………………………………………10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**colt/singer/bea**LLP

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 28, 2015, at 2:30 p.m., or sooner if the Court becomes available, in Courtroom 3, 5th Floor of the United States District Court for the Northern District of California, the Honorable Beth Labson Freeman presiding, located at 280 South First Street, San Jose, California 95113, Plaintiff Clear-View Technologies, Inc. ("CVT") will and hereby does move for an Order (a) striking portions of the Rebuttal Expert Witness Report of James A. Turner ("Turner") as set forth herein; (b) striking in whole the embedded report of Earl McCune ("McCune"); (c) precluding Defendants John H. Rasnick, J. Basil Mattingly, Will Rasnick, Parker Mattingly, and M&R Solutions, LLC (collectively "Defendants") from presenting in any way the opinions contained in the McCune Report, including through Turner; (d) precluding Defendants from calling Turner to testify to certain opinions and portions thereof as set forth herein; and (e) directing Defendants to pay CVT's costs, including attorney's fees, in bringing this Motion.

CVT's Motion is based on this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the Declaration of Doug Tilley filed concurrently herewith, all matters of which the Court may take judicial notice, and such other arguments and evidence as may be presented before or at the hearing on CVT's Motion.

\*          \*          \*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

CVT seeks an order striking so-called "rebuttal" expert reports submitted by Defendants and preventing Defendants from introducing or relying at trial upon hearsay and other improper statements set forth in the same. The first of Defendants' proffered "rebuttal" reports was purportedly authored by a non-testifying engineering expert, is based on impermissible testimonial hearsay from never-disclosed witnesses, far exceeds the scope of authorized rebuttal to CVT's damages report, and was required by this Court's October 30, 2014 scheduling Order to have been produced  a month earlier than Defendants did. The other report, by Defendants' testifying damages expert, seeks to smuggle in the engineer's report as a report-within-a-report even though the damages

1  expert has no absolutely no relevant technical expertise, parrot the findings of the non-testifying

2  engineer, and tell judge and jury exactly how Defendants believe they must find.

3         In October 2014, this Court ordered the parties to disclose experts and produce reports on all

4  "Issues (including claims, affirmative defenses, and counterclaims) on Which Disclosing Party Bears

5  the Burden of Proof" by February 17, 2015.  (Dkt. No. 111.)  Defendants assert counterclaims

6  premised expressly on their belief that "CVT failed to bring a viable product into the market, thereby

7  breaching its agreement relating to the distribution agreement with Defendant and interfering with

8  same."  But rather than disclose a technical expert in support of their counterclaims as required by the

9  Court, Defendants remained silent.  Then, after CVT disclosed its damages expert on February 17,

10  2015, Defendants sprang their latest trap:  just weeks before the expert discovery cutoff scheduled for

11  April 14, 2015, Defendants produced the report of supposed technical expert Earl McCune

12  ("McCune"), hidden away as an exhibit to the rebuttal damages report of proposed expert James

13  Turner ("Turner").   The McCune Report is dedicated exclusively to his belief that a single

14  technological aspect of CVT's product, The BarMaster, was "insufficiently supported to function as

15  claimed" and thus "fatally flawed."  This, the argument goes, is what crippled a company valued at

16  nearly $90 million dollars, not Defendants' well-documented conspiracy to gut the company from

17  within and starve it from without.  Defendants' damages expert, an accountant with no relevant

18  technical expertise, then parrots McCune's supposed finding throughout his own Report, along with

19  impermissible factual and legal conclusions intended to tell judge and jury how to do their jobs.

20  Because they have confirmed that McCune will not testify at trial, Defendants apparently believe that

21  an accountant may regurgitate on the witness stand the technical findings of an engineer, as well as

22  the testimonial hearsay of undisclosed laypersons on which the engineer's report purportedly is

23  based.  The law, however, is crystal clear that Defendants may not do what they seek to do.

24         The Court should strike the McCune Report in full and prevent Defendants from seeking to

25  present or rely upon McCune's supposed findings in any way, including through their mouthpiece

26  expert Turner.  *See, e.g.*, *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002)

27  (Posner, J.) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece

28  of a scientist in a different specialty.")

First, McCune's disclosure and report plainly are untimely.  This Court ordered the parties to disclose all affirmative experts and reports regarding issues on which such party bears the burden of proof by February 17, 2015.  Defendants' contract and covenant counterclaims hinge expressly on their belief that "CVT failed to bring a viable product into the market[.]"  As McCune's report is dedicated exclusively to the viability of CVT's product, Defendants were obliged to disclose him 42 days ago.  Yet Defendants elected not to, even after stating in September 2014 that they would offer initial expert testimony on this very topic.

Second, the McCune Report far exceeds the scope of authorized rebuttal.  Notwithstanding the fact that CVT's damages expert (an economist) offers absolutely no opinion regarding any technological aspect of The BarMaster, that is the one and only thing McCune discusses.  Further, McCune does not so much as allude to any opinion rendered by CVT's expert, or even identify any aspect of CVT's expert report as a fact or datum McCune considered in forming his opinions.

Defendants' motive for waiting to disclose McCune's opinions is clear:  they hope to force CVT to proceed to trial with no expert or opportunity to rebut McCune's spurious conclusions.  Courts routinely strike rebuttal reports and exclude rebuttal testimony in situations like this.  *See, e.g.*, *Vu v. McNeil-PPC, Inc.*, 2010 U.S. Dist. LEXIS 53639, *8 (C.D. Cal. May 7, 2010) ("as a result of [Defendants'] belated disclosure, Plaintiffs are prevented from rebutting any of [Defendants'] expert opinions dealing with matters outside the scope of [Plaintiff's expert] report because the deadline for disclosing rebuttal experts has passed. This is a hornbook example of sandbagging, a litigation tactic this Court will not tolerate.").

Third, Defendants cannot show that their untimely disclosure of McCune was either substantially justified or harmless, so as to avoid "automatic and mandatory" exclusion under Fed. R. Civ. P. 37(c)(1).  *Vu*, 2010 U.S. Dist. LEXIS 53639 at *11.  Defendants stated in September 2014 that they would offer initial expert testimony on the technical viability of The BarMaster, yet decided not to in order to gain an unfair advantage.  Hopes of manipulating the rules cannot substantially justify the means employed to reach that end.  The harm to CVT is clear as day:  Defendants' chicanery leaves CVT with no opportunity to rebut or contradict McCune's findings.

colt/singer/bea LLP

1    <u>Fourth</u>, McCune's opinions rest heavily on inadmissible hearsay from third parties whom

2    Defendants never identified in discovery or initial disclosures.  Because Defendants seek to use these

3    undisclosed third parties' statements affirmatively rather than "solely for impeachment," Fed. R. Civ.

4    P. 37(c)(1) prohibits Defendants from relying on them at trial.  Defendants cannot show that their

5    strategic declination to disclose crucial witnesses—whom CVT would have deposed in fact discovery

6    had Defendants indicated any intent to rely upon them—is substantially justified or harmless.  Nor

7    may Defendants seek to present this inadmissible hearsay because they cannot show that its probative

8    value, if any, "substantially outweighs their prejudicial effect."  Fed. R. Evid. 703; *see Marvel*

9    *Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("a party cannot call an expert simply as

10   a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the

11   basis of his testimony.").

12       Accordingly, the McCune Report must be stricken in full, and Defendants barred from calling

13   McCune at trial or otherwise seeking to present his purported opinions at trial.

14       Even if some portion of McCune's improper report could stand, the law would still prohibit

15   Defendants' "mouthpiece" damages expert Turner from giving voice to it.  *See, e.g., Dura Auto. Sys*,

16   285 F.3d at 614 (Posner, J.); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005,

17   1012-13 (C.D. Cal. 2003) (precluding an expert from relying upon a non-testifying expert's opinions

18   generated for litigation).  Turner, a certified public accountant, has precisely zero qualification to

19   state whether, to what extent, or why McCune's purported technical findings and methodology are or

20   are not sound.  *See, e.g., Goben v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 81442, *5 (D. Nev.

21   June 16, 2014) ("Because Orchard is unable to state the principles and methods used to create the

22   report that he relied on, testimony based on the report's contents cannot satisfy the requirements of

23   Fed. R. Evid. 702.").  All portions of Turner's report relying on or referring to McCune's findings

24   must therefore be stricken.

25       The Court should also strike from Turner's report all improper arguments and ultimate

26   conclusions of fact and law.  Rather than limit himself to contradicting or rebutting the opinions of

27   CVT's damages expert, Turner proposes to tell both judge and jury exactly what they need to do:

28   determine that CVT's expert's "incredible" opinions are based in "junk science" and have "no

1    evidentiary value" because CVT is a "Ponzi scheme" that "does not have a working product, fatally

2    flawed technology, poor management, no patents, and has never made a bonafide [sic] sale from

3    inception in 2006 through June of 2011." In fact, Turner dedicates an entire section of his report to

4    what he calls "CVT's Failure to Mitigate Alleged Damages." But the law makes plain that the jury,

5    not Turner and not Defendants, must decide what CVT was and why it went from being worth tens of

6    millions of dollars to virtually nothing.

7            CVT respectfully requests that the Court strike the reports of McCune and Turner as set forth

8    herein, preclude Defendants from introducing or relying at trial upon any stricken findings, and direct

9    Defendants to pay CVT's costs and fees in bringing this Motion.

10   **I.   FACTUAL BACKGROUND**

11          **A. CVT's Claims and Defendants' Counterclaims**

12          This action arises out of Defendants' well-documented conspiracy with avaricious CVT

13   insiders to divert CVT's intellectual property, personnel, and investor base from CVT to a competing

14   entity, dubbed "Skunk Works," through which Defendants would commercialize a knock-off of

15   CVT's revolutionary product The BarMaster. On June 13, 2013, CVT filed its Complaint in this

16   action. (Dkt. No. 1.) On March 19, 2014, CVT filed its First Amended Complaint, asserting, *inter*

17   *alia*, a claim for Defendants' breach of a distribution agreement between CVT and Defendant M&R

18   Solutions, LLC, in which each individual Defendant participated. (Dkt. No. 37, the "FAC.")

19          Defendants answered the FAC on April 7, 2014. (Dkt. No. 39.) On May 28, 2014,

20   Defendants sought leave to amend their Answer to assert counterclaims seeking relief for CVT's

21   alleged breach of the parties' distribution agreement and associated covenants. (Dkt. No. 52.)

22   Defendants' proposed First Amended Answer alleged that CVT breached the distribution agreement

23   "by failing to manufacture or cause to be manufactured, promote and sell the product, and to develop

24   into a successful production for distribution." (Dkt. No. 53-3.) Defendants' interrogatory responses

25   confirm that their affirmative claims hinge on their assertion that "CVT failed to bring a viable

26   product into the market, thereby breaching its agreement relating to the distribution agreement with

27   Defendant and interfering with same." (Tilley Decl., ¶ 6, Ex. A.)

28

1    This Court granted Defendants' motion for leave to amend on September 3, 2014, and

2    Defendants' filed their First Amended Answer on September 15, 2014.  (Dkt. Nos. 75, 79.)

3    **B.  The Case Calendar and Expert Disclosure Deadlines**

4        On January 8, 2014, former presiding Judge Davila set an August 1, 2014 deadline for

5    "Designation of Opening Experts with Reports[,]" as well as an August 29, 2014 deadline for

6    "Designation of Rebuttal Experts with Reports[.]"  (Dkt. No. 26.)  These deadlines remained in effect

7    following reassignment of this case to the Hon. Beth Labson Freeman.  (*See* April 17, 2014 Order

8    Reassigning Case at ¶ 5.)  This Court held a Case Management Conference on May 14, 2014, reset

9    certain deadlines, and directed the parties to "meet, confer and submit a proposed stipulation setting

10   discovery cut-off dates[,]" including in regards to expert witnesses.  (Dkt. No. 50.)  On May 30,

11   2014, the parties submitted a stipulated case calendar that, among other things, set (a) a November 7,

12   2014 "Fact Discovery Cutoff[;]" (b) a September 12, 2014 deadline for the parties to exchange

13   "Initial Disclosure[s] of Topics on which Parties Intend to Offer Expert Testimony[;]" (c) an October

14   3, 2014 deadline for "Supplemental Disclosure of Topics on which Parties Intend to Offer Expert

15   Testimony[;]" (d) a January 21, 2015 deadline to "Disclose Initial Experts, Exchange Initial Reports

16   on Issues (including claims, affirmative defenses, and, if permitted by the Court, counterclaims) on

17   Which Disclosing Party Bears the Burden of Proof[,]" and (e) a February 9, 2015 deadline to

18   "Disclose Rebuttal Experts, Exchange Rebuttal Reports[.]"  (Dkt. No. 55.)  The Court entered the

19   parties' stipulated case calendar on June 2, 2014.  (Dkt. No. 56.)

20       On September 9, 2014, in response to CVT's Motion to Compel (Dkt. No. 62) and in light of

21   substantial evidence of spoliation by Defendants, Magistrate Judge Paul S. Grewal, to whom all

22   discovery matters were referred, directed that Defendants submit their media to a court-appointed

23   examiner for forensic investigation into the nature and extent of Defendants' discovery misconduct.

24   (Dkt. No. 76.)  Under Judge Grewal's Order, the parties were to meet, confer, and submit a joint plan

25   regarding a plan for forensic examination by September 23, 2014.  (*Id.*)  Following serial delays and

26   bad faith negotiations by Defendants, which required that CVT repeatedly request judicial

27   intervention in enforcing the Court's Orders (*see* Dkt. Nos. 80, 89, 92, 96, 101), Judge Grewal

28   entered a forensic examination plan on October 21, 2014—just over two weeks prior to the

1    November 7, 2014 fact discovery cutoff.  (Dkt. No. 103, adopting and entering stipulated forensic

2    examination plan.)  The Court-approved forensic inspection plan called for the independent forensic

3    examiner to issue its findings regarding Defendants' media by December 18, 2014.

4           In light of the looming November 7, 2014 fact discovery deadline, the forensic examination

5    schedule, and Defendants' October 17, 2014 statement that they intended to notice and take 19 third

6    party depositions across the country, on October 24, 2014, CVT moved this Court to modify the case

7    calendar so that Defendants' spoliated documents could be forensically recovered and produced to

8    CVT before Defendants and third parties were deposed.  (Dkt. No. 105.)  This Court granted CVT's

9    request on October 30, 2014.  (Dkt. No. 111.)  As relevant to the instant Motion, the Court set a

10   February 17, 2015 deadline to "Disclose Initial Experts, Exchange Initial Reports on Issues

11   (including claims, affirmative defenses, and counterclaims) on Which Disclosing Party Bears the

12   Burden of Proof[,]" as well as a March 17, 2015 deadline to "Disclose Rebuttal Experts, Exchange

13   Rebuttal Reports[.]"  (*Id*., incorporating by reference Dkt. No. 105-6 at 2.)

14          **C.   The Parties' Topic Disclosures**

15          Pursuant to the Court's Scheduling Order (Dkt. No. 56), on September 12, 2014, the parties

16   exchanged lists of topics on which they intended to offer expert testimony.  CVT stated that it "may

17   offer expert testimony regarding the following topics:  1. Damages, including but not limited to

18   company valuation; 2. Technology and start-up companies; 3. Document preservation and search

19   practices; and 4. Spoliation."  (Tilley Decl., ¶ 8.)  Defendants identified the following "topic[s] of

20   Defendants' intended expert testimony… 2. Status of the BarMaster product during the relevant time

21   period, including assessment of feasibility for mass production for purposes of distribution and

22   sales[.]"  (*Id*. at ¶ 9, Ex. B.)  Neither party identified particular experts or provided reports.

23          On October 3, 2014, CVT advised that it "may offer rebuttal expert testimony regarding the

24   topics disclosed [by Defendants], including but not limited to the '[s]tatus of the BarMaster product

25   during the relevant time period, including assessment of feasibility for mass production and sales.'"

26   (*Id*. at ¶ 10.)  Defendants disclosed no additional topics.  (*Id*.)

27          **D.   The Parties' Expert Disclosures**

28

1    On February 17, 2015, CVT timely disclosed Dr. Jonathan Neuberger as its damages expert,

2    stated that it would rely on Dr. Neuberger at trial, and provided Dr. Neuberger's report as required by

3    Fed. R. Civ. P. 26(a)(2)(D).  (Tilley Decl., ¶ 11, Ex. C, (the "Neuberger Report").)  The Neuberger

4    Report set forth Dr. Neuberger's quantification of the harm wrought upon CVT by Defendants'

5    unlawful conduct, based on information produced in this litigation as well as his own independent

6    analysis.  (*Id.*)  The Neuberger Report contained no technological analysis of any aspect of The

7    BarMaster product, as Dr. Neuberger is not a technical expert.  (*Id.*)

8    Defendants "state[d] that they do not presently intend to offer the testimony of any expert

9    witness[,]" and "reserve[d] the right to submit a rebuttal expert witness list no later than March 17,

10    2015 pursuant to Federal Rules of Civil Procedure – Rule 26(a)(2)(D)(ii) and the *Order Granting*

11    *Plaintiff's Motion to Stay Fact Discovery and Modify Case Management Schedule*[.]"  (Tilley Decl.,

12    ¶ 12 (italics in Defendants' disclosure).)

13    On March 17, 2015, Defendants served the "Rebuttal Expert Witness Report of James A.

14    Turner, MBA, CPA."  (Tilley Decl., ¶ 13, Ex. D (the "Turner Report").)   As set forth in his Report,

15    Turner was engaged "to review and comment in the capacity of a rebuttal expert on the subject matter

16    set forth in plaintiff's Expert Witness Report of Jonathan A. Neuberger[.]"  (*Id*. at ¶ 1, citing Fed. R.

17    Civ. P. 26(a)(2)(D)(ii).)  In seeking to rebut Dr. Neuberger's opinions, Turner argues that Dr.

18    Neuberger failed to account for "technology risks," namely, that "the BarMaster is 'fatally flawed.'"

19    (Turner Report at 14, 17.)  Because he does not claim any relevant technological expertise or

20    qualifications, Turner adopts in full the findings of a second report proffered by Defendants—the

21    report of Earl McCune, attached as Exhibit 2 to the Turner Report.  (Turner Report at Exhibit 2 (the

22    "McCune Report").)  The Turner Report describes McCune as a "[t]echnology consultant" to Turner

23    (Turner Report at ii), while the McCune Report states that McCune was retained by defense counsel.

24    (McCune Report at ¶ 3.)  The McCune Report does not mention Dr. Neuberger or any opinion

25    rendered by him, and does not identify the Neuberger Report as a fact or data relied upon by McCune

26    in rendering his opinions.

27    The McCune Report is dedicated solely to the purported viability of The BarMaster and

28    focuses exclusively on radio frequency identification, a single component of The BarMaster

technology.  (McCune Report, ¶ 4.)  Dr. McCune states that "[he] did not evaluate" and other aspect of The BarMaster.  (*Id*.)  The McCune Report is based upon Dr. McCune's (a) review of a single promotional BarMaster video posted on YouTube; (b) review of five photographs which he understands to depict limited aspects of The BarMaster technology; (c) review of patent application histories, and (d) interviews with Defendant Parker Mattingly as well as third parties James Bryon Wyatt, David Cano, and Hugh Simpson.  (*Id*. at ¶ 6, Figs. 1 and 2, and Exs. B, C, D.)  Neither Wyatt nor Cano appears on any party's initial disclosures under Fed. R. Civ. P. 26(a)(1), nor has been identified by either party in discovery responses or otherwise as potentially relevant to this litigation. (Tilley Decl., ¶¶ 2, 3, 6.)  Defendants have not identified Simpson, Wyatt, or Cano as a "person with knowledge regarding [the] facts" underpinning Defendants' claims that The BarMaster was not viable.  (*Id*. at ¶ 6, Ex. A.)  Neither Wyatt, Cano, nor Simpson was deposed in this action or provided any declaration, affidavit, or other sworn statement.  (*Id*. at ¶ 7.)

### E.  CVT's Efforts to Resolves The Parties' Dispute

On March 26, 2015, counsel for CVT wrote counsel for Defendants, stating that the McCune Report and portions of the Turner Report are improper under the Federal Rules in several materials respects and requesting that Defendants withdraw the same in order to avoid unnecessary motion practice.  (*Id*. at ¶ 15, Ex. E.)  On March 30, 2015, defense counsel confirmed that while "Mr. McCune will not be called to testify at the trial of this matter[, n]o portions of Mr. McCune's report will be withdrawn."  Mr. Crosby further advised that "[n]o portions of Mr. Turner's report will be withdrawn."  (*Id*.)

## II. LEGAL STANDARDS

### A.  Purpose and Scope of Expert Opinion Evidence

In recognition that litigation may present questions about which the average fact finder lacks knowledge, Federal Rule of Evidence 702 authorizes a party to present expert opinion testimony when the proffered expert has "knowledge, skill, experience, training, or education" that "will help the trier of fact to understand or to determine a fact in issue[.]"  The "central concern" of Rule 702 is that expert testimony be "helpful[]" to the jury.  *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. Cal. 1993); *see also Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 591 (1993).

colt/singer/bea LLP

1    The Court must act as "gatekeeper" to ensure that expert testimony is sufficiently reliable to

2    assist the factfinder.  The Supreme Court has suggested several factors to guide the Court's inquiry:

3    "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and

4    publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory

5    or technique enjoys general acceptance within the relevant scientific community."  *United States v.*

6    *Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Daubert*, 509 U.S. at 592-94)

7    The Court must also be vigilant in prohibiting experts from invading the province of the judge

8    or jury.  While expert opinion is not *per se* objectionable "just because it embraces an ultimate issue"

9    to be decided, Fed. R. Evid. 704, an expert may not opine on legal conclusions, that is, give "an

10   opinion on an ultimate issue of law."  *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063 (9th Cir.

11   2002), overruled on other grounds by *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th

12   Cir. 2014).  Nor may an expert opine on an ultimate issue of fact, for in doing so the expert

13   substitutes his judgment for that of the finder of fact.  *See, e.g.*, *United States v. Duncan*, 42 F.3d 97,

14   101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid

15   the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.").

16   **B.  Expert Disclosures Procedure**

17   Federal Rule of Civil Procedure 26(a)(2)(A)  requires that a party "must" disclose the identity

18   of any expert witness "it may use at trial[.]"  Rule 26(a)(2)(D)(ii) permits the admission of rebuttal

19   expert evidence, where such evidence is "intended solely to contradict or rebut evidence on the same

20   subject matter identified" by an initial expert witness.  Any expert disclosure must be made "at the

21   times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D)(i).

22   Rule 37(c)(1) provides that "[i]f a party  fails to provide information or identify a witness as

23   required by Rule 26(a) … the party is not allowed to use that information or witness to supply

24   evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

25   harmless."  Exclusion of expert evidence "is automatic and mandatory unless the party can show the

26   violation is either justified or harmless."  *Vu v. McNeil-PPC, Inc.*, 2010 U.S. Dist. LEXIS 53639, *11

27   (C.D. Cal. May 7, 2010); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106

28   (9th Cir. 2001) (Rule 37 "gives teeth to [the disclosure] requirements by forbidding the use at trial of

any information required to be disclosed by Rule 26(a) that is not properly disclosed."); 1993 Adv. Comm. Notes to Fed. R. Civ. P. 37(c) (exclusion for violation of Rule 26 is "automatic" and "self-executing[.]").

The party who violates Rule 26 bears the burden of showing substantial justification or harmlessness. *See Yeti*, 259 F.3d at 1106. In determining whether such a party has met its burden, courts consider: (i) prejudice or surprise to the party against whom the evidence is offered; (ii) the ability of that party to cure the prejudice; (iii) the likelihood of disruption of the trial; and (iv) bad faith or willfulness involved in not timely disclosing the evidence. *See Gerawan Farming, Inc. v. Prima Bella Produce, Inc*., 2011 U.S. Dist. LEXIS 52792, *14-15 (E.D. Cal. May 17, 2011). Inadvertent mistakes and unintentional oversights are not substantial justifications for delay. *R & R Sails Inc. v. Insurance Co. Of State of Penn.*, 251 F.R.D. 520, 526 (S.D. Cal. 2008). Courts strike untimely disclosures where, e.g., such disclosure is made after expiration of the fact discovery cutoff, the deadline to disclose rebuttal experts, or the deadline to file dispositive motions. *See, e.g.*, *Vu*, 2010 U.S. Dist. LEXIS 53639 at *11; *R&O Constr. Co. v. Rox Pro Int'l Group, Ltd.*, 2011 U.S. Dist. LEXIS 78032, *5 (D. Nev. July 18, 2011).

1. **Requirements for Rebuttal Expert Disclosures, and the Court's Obligation to Strike for Non-Compliance**

The function of rebuttal expert testimony is to "explain, repel, counteract or disprove evidence of the adverse party." *R&O*, 2011 U.S. Dist. LEXIS 78032 at *5 (collecting cases). Because rebuttal disclosures "are not intended to provide an extension of the expert designation and report production deadline[,]" *Gerawan Farming*, 2011 U.S. Dist. LEXIS 52792 at *9 (citation omitted), the law places firm limits on the scope of rebuttal testimony.

First, a rebuttal expert must directly and specifically contradict the particular opinions set forth by the expert he or she is offered to rebut. *See, e.g.*, *Goben v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 81442, *8 (D. Nev. June 16, 2014) (precluding testimony for expert's failure to provide "the specificity required of rebuttal reports."). It is insufficient to address the "general subject matter of the case." *Id*. As the Central District of California recently explained:

1
2
3
4
5

> In its opposition, Costco argues that because Dr. Kelly opined on Connor's cause of [harm], Costco's Experts are entitled to opine on alternative causes of [harm] because all of these opinions deal with the same subject matter. Costco's argument does not make sense. If the phrase "same subject matter" is read broadly to encompass any possible topic that relates to the subject matter at issue, it will blur the distinction between "affirmative expert" and "rebuttal expert."  More importantly, such broad reading of Rule 26(a)(2)(C)(ii) will render the scope of the subject matter limitless and will lead to unjust results, such as the result Costco suggests in its opposition.

6

*Vu*, 2010 U.S. Dist. LEXIS 53639 at *6-8.  Where a so-called rebuttal report fails to "directly address

7

the findings" of the initial report it is offered to rebut, "it is not a rebuttal expert report within the

8

meaning of Rule 26[.]"  *R&O*, 2011 U.S. Dist. LEXIS 78032 at *8; *see Houle v. Jubilee Fisheries,*

9

*Inc.*, 2006 U.S. Dist. LEXIS 1408, *2 (W.D. Wash. Jan. 5, 2006) (holding that a witness is not a

10

rebuttal expert where his report did not cite, mention, or indicate that he was aware of the previous

11

expert report).  Such a report is treated instead as an affirmative expert report and, unless produced by

12

the deadline for submitting initial expert reports, will be stricken as untimely and unfair:

13
14
15

> Here, as a result of Costco's belated disclosure, Plaintiffs are prevented from rebutting any of Costco's expert opinions dealing with matters outside the scope of Dr. Kelly's report because the deadline for disclosing rebuttal experts has passed. This is a hornbook example of sandbagging, a litigation tactic this Court will not tolerate.

16

*Vu*, 2010 U.S. Dist. LEXIS 53639 at *8; *see also, e.g., International Business Machines Corp. v.*

17

*Fasco Indus., Inc.*, 1995 U.S. Dist. LEXIS 22533, *8-9 (N.D. Cal. Mar. 15, 1995) ("two of Fasco's

18

rebuttal experts should have been designated on the initial disclosure date because they plan to opine

19

on subjects that IBM's experts will not address[.]").

20

Second, because "[a] rebuttal expert report is not the proper place for presenting new

21

arguments[,]" *R&O*, 2011 U.S. Dist. LEXIS 78032 at *15, "rebuttal experts cannot put forth their

22

own theories; they must restrict their testimony to attacking the theories offered by the adversary's

23

experts." *IBM*, 1995 U.S. Dist. LEXIS 22533 at *7.  Courts strike rebuttal reports and preclude

24

rebuttal testimony that "go beyond the boundaries" of the affirmative report they are intended to

25

rebut.  *Vu*, 2010 U.S. Dist. LEXIS 53639, at *6-8; *see also Goben*, 2014 U.S. Dist. LEXIS 81442 at

26

*6-9.  Courts similarly exclude so-called rebuttal experts where "the purpose of [their] testimony is to

27

contradict an expected and anticipated portion of the other party's case-in-chief[.]"  *Amos v. Makita*

28

*U.S.A.*, 2011 U.S. Dist. LEXIS 158103,*2 (D. Nev. Jan. 6, 2011) (such a witness "is not a rebuttal witness or anything analogous to one.") (quotation omitted).

## III. DEFENDANTS' PROFFERED REBUTTAL EXPERT TESTIMONY IS IMPROPER

### A.  McCune's Report Must Be Stricken In Whole

The McCune Report—tucked away as an exhibit to the Turner Report—is improper in several respects.  Defendants have confirmed that McCune will not testify at trial.  McCune's Report must be stricken in whole, and Defendants must be barred from seeking to present his opinions in any way, whether through Turner or otherwise.

1. **<u>The McCune Report Must Be Stricken Because McCune Was Not Timely Disclosed and Exceeds the Authorized Scope of Rebuttal</u>**

<u>First</u>, McCune's Report is untimely because it speaks exclusively to an issue on which Defendants bear the burden of proof, and thus should have been produced by the Court's deadline for initial expert disclosures.  (*See* Dkt. No. 111 (setting deadline for parties to disclose initial experts and produce reports on "Issues (including … affirmative defenses[] and counterclaims) on Which Disclosing Party Bears the Burden of Proof").)   Defendants assert counterclaims for breach of the parties' Distribution Agreement and associated covenants on the theory that CVT failed to deliver a functional product.  (Dkt. No. 79 at Counterclaims.)  Defendants have confirmed in interrogatory responses that their claimed entitlement to relief hinges on their assertion that "CVT failed to bring a viable product into the market, thereby breaching its agreement relating to the distribution agreement with Defendant and interfering with same."  (Tilley Decl., ¶ 6.)  McCune's Report is dedicated specifically and solely to supporting Defendants' assertion:  McCune opines that The BarMaster is "fatally flawed" and "did not address the most rudimentary radio antenna characteristics[;]" that CVT "misunderstood and improperly applied" radio frequency transmission technology[;]" and that as a result, The BarMaster "was insufficiently supported to function as claimed[.]"  (McCune Report at Executive Summary of Findings.)   Because Defendants bear the burden of proof on all elements of their affirmative claims, the Court's scheduling Order required that Defendants' disclose McCune and serve his Report no later than February 17, 2015.  Defendants strategically elected, however, to wait for additional several weeks to disclose McCune, in order to rob CVT of any opportunity to

colt/singer/bea LLP

contradict his opinions.  "[A]s a result of [Defendants'] belated disclosure, Plaintiff[ is] prevented from rebutting" the opinions in the untimely report "because the deadline for disclosing rebuttal experts has passed.  This is a hornbook example of sandbagging, a litigation tactic this Court will not tolerate."  *Vu*, 2010 U.S. Dist. LEXIS 53639 at *8.

        Second, McCune's Report makes plain that he is not offered as a rebuttal witness.  Despite that the law requires rebuttal experts to directly and specifically contradict the particular opinions of an initial expert, the McCune Report does not address in even the most cursory fashion a single fact, assertion, or opinion contained in the Neuberger Report.  *See, e.g.*, *Houle*, 2006 U.S. Dist. LEXIS 1408 at *2.  In fact, McCune never once mentions Dr. Neuberger, nor does he identify the Neuberger Report as a something he considered in forming his opinions.  *See id.*; Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring expert to state "facts or data considered by the witness in forming" his or her opinions).  All the McCune Report does is offer an alternative theory of causation—that some technological failing, rather than Defendants' well-documented conspiracy to cripple CVT, was the cause of CVT's losses.  This is plainly improper.  *See, e.g.*, *Goben*, 2014 U.S. Dist. LEXIS 81442 at *9 ("Orchard's report goes far beyond simply trying to discredit or explain Cecchi's findings, and instead focuses on an alternative theory of causation."); *IBM*, 1995 U.S. Dist. LEXIS 22533 at *7 ("rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.").  "[CVT] has not designated an expert to opine on [technical] issues, so [McCune has] nothing to rebut[.]"  *IBM*, 1995 U.S. Dist. LEXIS 22533 at *7.  Accordingly, McCune "[may] not testify, period."  *Id.*; *accord R&O*, 2011 U.S. Dist. LEXIS 78032 at *8-9 (striking expert reports that exceed the scope of the initial report); *Vu*, 2010 U.S. Dist. LEXIS 53639 at *6 ("Because these experts' opinions go beyond the boundaries of Dr. Kelly's report, Costco's blanket characterization of Drs. Banner and Beckwith as 'rebuttal experts' is disingenuous.").

        Third, Defendants cannot show that their untimely disclosure was harmless or substantially justified so as to avoid "automatic and mandatory" exclusion of McCune's opinions.  *Vu*, 2010 U.S. Dist. LEXIS 53639 at *11; *see Yeti*, 259 F.3d at 1106 (explaining that the burden of proof rests with the proponent of evidence).  The prejudice to CVT is obvious, as are CVT's inability to cure and Defendants' willfulness:  because the deadline for disclosing rebuttal experts has lapsed, Defendants

1   hope to force CVT to proceed to trial—scheduled for two months from today—with no expert to

2   explain and correct the many inaccuracies in McCune's purported findings.  *See Vu*, 2010 U.S. Dist.

3   LEXIS 53639 at *8 ("This is a hornbook example of sandbagging, a litigation tactic this Court will

4   not tolerate."); *R&O*, 2011 U.S. Dist. LEXIS 78032 at *10 (finding exclusion-worthy harm due to

5   untimely disclosures even where no trial date is set); *Gerawan Farming*, 2011 U.S. Dist. LEXIS

6   52792 at *18 ("[D]isobedient conduct not shown to be outside the control of the litigant is all that is

7   required to demonstrate willfulness, bad faith, or fault.") (quotation omitted).

8          Defendants cannot hope to justify their tardiness on the grounds that, for example, they

9   believed that CVT, as plaintiff, must offer expert opinion regarding technical aspects of The

10   BarMaster.  *See R&O*, 2011 U.S. Dist. LEXIS 78032 at *21-22 (rejecting that untimely disclosure

11   was "substantially justified because [plaintiff] bears all burden of proof in this case, and therefore

12   [Defendants] did not believe a primary expert was necessary since [they] merely [are] rebutting

13   R&O's allegations.").  What is more, such an argument would only *confirm* Defendants' violations:

14   "courts have found that a defense expert whose testimony is intended to negate an element of the

15   plaintiff's case, generally, must be identified in the initial round of expert disclosures."  *Gerawan*

16   *Farming*, 2011 U.S. Dist. LEXIS 52792 at *11 fn.3 (collecting cases); *see also Amos*, 2011 U.S. Dist.

17   LEXIS 158103 at *2 ("[i]f the purpose of expert testimony is to contradict an expected and

18   anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or

19   anything analogous to one.").  Further, any such claim is flatly contradicted by the record.

20   Defendants stated in September 2015 that they intended to offer expert opinion regarding **"[s]tatus of**

21   **the BarMaster product** during the relevant time period, including assessment of feasibility for mass

22   production for purposes of distribution and sales[,]" and CVT responded in October 2015 that it "may

23   offer **rebuttal** expert testimony regarding the topics disclosed [by Defendants], including but not

24   limited to the '[s]tatus of the BarMaster product during the relevant time period, including assessment

25   of feasibility for mass production and sales."  (Tilley Decl., ¶¶ 9, 10 (emphases added).)   The

26   Defendants may not rewrite the record now in hopes of saddling CVT with the consequences of their

27   gamesmanlike disclosures.

28

colt/singer/bea LLP

1         For the foregoing reasons, the McCune Report must be stricken in whole and Defendants

2   barred from seeking to introduce or rely upon McCune's purported opinions in any manner, including

3   through Turner.

4         2.   **The McCune Report Should Also Be Stricken Because It Relies on**

5                **Inadmissible Hearsay Whose Probative Value Cannot Outweigh Its**

6                **Prejudicial Effect**

7         Other than five photographs, patent file wrappers, and a marketing video, McCune relies

8   exclusively on purported hearsay statements from third parties James Bryon Wyatt, David Cano, and

9   Hugh Simpson as well as Defendant Parker Mattingly.  (*See* McCune Report at "List of

10   Discussions.")  McCune attributes the following statements to Wyatt or Cano:  (i) "original

11   installation instructions for the Back Bar shelf antenna loops were to use 18 gauge (18/2 AWG) pairs

12   of copper wires to the RFID reader[;]" (ii) "the original interconnect to the shelf RFID loops were

13   actually antennas, themselves, so the shelves could not work as intended[;]" (iii) this interconnect had

14   to be replaced with coaxial cable, and that the interconnection (the 'balun') from the coaxial cable to

15   the copper loop antenna had to be redesigned[;]" (iv) RFID communication was problematic but

16   "sometimes OK[;]" (v) that "the mirror behind the Back Bar shelves at '202 Market' caused

17   communications for the RFID[;]" and (vi) "other installers 'did not care' that attaching the defined

18   shelf copper loop antennas to a metal shelf would never work."  (McCune Report at 12.)   Each of

19   these alleged statements is central to McCune's ultimate conclusion that The BarMaster "is fatally

20   flawed."  (*Id.* at 2.)

21         a.   **The Purported Statement by Wyatt and Cano Are Inadmissible**

22         These purported statements by third parties Wyatt and Cano are inadmissible as a matter of

23   law.  First, Defendants failed to disclose Wyatt or Cano in their Rule 26(a) initial disclosures, and

24   neither party so much as identified either as potentially relevant to this litigation.  *See* Fed. R. Civ. P.

25   26(a)(1) (requiring party to identify "each individual… that the disclosing party may use to support

26   its claims or defenses, unless the use would be solely for impeachment[.]").  Because Defendants

27   never disclosed these third parties and intend to use their statements in affirmative support of

28

colt/singer/bea LLP

1   Defendants' claims rather than "solely for impeachment," neither Wyatt nor Cano may testify at trial.

2   Fed. R. Civ. P. 37(c)(1).

3        Defendants cannot show that their failures to disclose Wyatt and Cano were substantially

4   justified or harmless.  *Id.*  To the contrary, McCune makes plain that Defendants have been aware of

5   Wyatt and Cano, yet inexplicably declined to disclose them as potential witnesses on whom

6   Defendants might rely.  (*See* McCune Report at 3 (stating that defense counsel provided McCune

7   with "names and contact information" for these and other third parties).)  Nor can Defendants deny

8   that CVT is substantially prejudiced by Defendants' nondisclosures:  because fact discovery closed in

9   January 2015, CVT has no opportunity prior to trial to determine whether these third parties made the

10  statements attributed to them by McCune, much less explore their factual bases for any such

11  statements.  *See Villagomes v. Laboratory Corp. of America*, 2010 U.S. Dist. LEXIS 124185, *14-15

12  (D. Nev. Nov. 8, 2010) (finding unfair prejudice where party "had no opportunity to verify whether

13  [third party's] opinions were accurately reported by [expert] or to explore the basis for [third party's]

14  opinions."); *Dominguez v. Four Winds Int'l Corp.*, 2009 U.S. Dist. LEXIS 43515 (S.D. Cal. May 22,

15  2009) (granting motion to "preclude defendants' expert from testifying as to the details of any

16  hearsay upon which he bases his opinion").

17        Second, McCune's reliance on Wyatt and Cano also runs afoul of the rules against hearsay.

18  *See* Fed. R. Evid. 801, 802.  While it is sometimes permissible for experts to rely on hearsay in

19  reports, that exception has no application where, as here, the purported declarants cannot be called at

20  trial.  The Second Circuit recently explained that:

21        Although the Rules permit experts some leeway with respect to hearsay
         evidence, Fed. R. Evid. 703, a party cannot call an expert simply as a
22        conduit for introducing hearsay under the guise that the testifying
         expert used the hearsay as the basis of his testimony.  The appropriate
23        way to adduce factual details of specific past events is, where possible,
         through persons who witnessed those events. And the jobs of judging
24        these witnesses' credibility and drawing inferences from their
         testimony belong to the factfinder. We therefore think the district court
25        clearly did not abuse its discretion in declining to admit this evidence.

26  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (citations omitted).  Thus,

27  because they may not testify at trial, McCune may not rely upon any purported statements Wyatt or

28  Cano may or may not have made.  *See Dominguez*, 2009 U.S. Dist. LEXIS 43515.  Any other

1  outcome would permit Defendants to replace the Court's and the jury's understanding and assessment

2  of the alleged statements made by Wyatt and Cano with their own.  Because there is no way to

3  separate those portions of McCune's analysis that depend on unsalvageable hearsay statements from

4  those that do not, the McCune Report must be stricken in whole and Defendants precluded from

5  introducing or relying in any way on McCune's purported opinions.  *Marvel*, 726 F. 3d at 135-36

6  (affirming that "the reports and testimony were inadmissible."); *Dominguez*, 2009 U.S. Dist. LEXIS

7  43515.

8  **b.  Whatever Probative Value These Alleged Statements Have Cannot**

9  **"Substantially Outweigh" the Prejudice to CVT**

10  McCune's reliance on purported statements by Wyatt and Cano cannot satisfy Fed. R. Evid.

11  703, which provides that Defendants "may disclose [otherwise inadmissible facts or data] to the jury

12  **only if** their probative value in helping the jury evaluate [McCune's] opinion **substantially**

13  **outweighs** their prejudicial effect."  (Emphases added.)  CVT hotly disputes Defendants' suggestion

14  that beta installations failed because of some perceived "fatal flaw" in RFID communication

15  components of The BarMaster, and as well as whether Wyatt or Cano had a sufficient foundation for

16  the statements Defendants allege.  It is entirely possible that neither Wyatt nor Cano made the

17  statements attributed to them, or that McCune misheard any statements they did make, or that

18  McCune lacked the necessary context in which to understand any such statements because, as he

19  acknowledges, "[d]ue to the lack of available information, I did not evaluate" any aspect of The

20  BarMaster other than radio frequency transmissions.  (McCune Report at 2.)  CVT would have

21  explored each issue during fact discovery had Defendants indicated that they intended to rely in any

22  fashion on Wyatt or Cano, as well as with McCune had he been timely disclosed.  But because

23  Defendants elected to conceal each purported witness, CVT is left with no opportunity prior to trial to

24  test these alleged statements, determine the circumstances under which they were supposedly made,

25  or assess whether and to what extent Wyatt or Cano have knowledge sufficient to so state.  *See*

26  *Villagomes*, 2010 U.S. Dist. LEXIS 124185 at*14-15 (Rule 703 requires exclusion of inadmissible

27  facts and data relied upon by expert where opponent "had no opportunity to verify whether Dr.

28  Murry's opinions were accurately reported by Dr. Kenan or to explore the basis for Dr. Murry's

1   opinions.").  Defendants ask CVT and this Court to take as gospel the word of a hired gun who will

2   not testify, regarding the statements of witnesses whom Defendants never disclosed, without any

3   opportunity for meaningful adversarial testing.  Defendants' proposal must be rejected.

4          3.  **Nothing Short of Exclusion Will Suffice to Correct Defendants' Misconduct**

5          Defendants may suggest that the Court might lessen the extreme prejudice to CVT by re-

6   opening fact discovery (closed January 30, 2015) and/or extending expert discovery (scheduled to

7   close on April 14, 2015) so as to permit CVT to depose Wyatt, Cano, and McCune as well as to

8   submit an expert report to rebut McCune.  Such a proposed remedy, however, will only *increase* the

9   prejudice to CVT by increasing expenses and pushing trial farther and farther off.  This Court has

10  already entered several scheduling modifications in light of Defendants' delay tactics, and should not

11  reward Defendants' sandbagging by permitting them to further avoid their day in court.  *See*

12  *Gerawan Farming*, 2011 U.S. Dist. LEXIS 52792 at *16 (striking untimely report rather than

13  extending case calendar).

14      **B.  Turner's Report Must Be Stricken In Part and Corresponding Testimony Excluded**

15          1.  **Turner May Not Rely On or Introduce Any of McCune's Purported Opinions**

16          In seeking to rebut the Neuberger Report, Turner relies heavily on McCune's conclusion that

17  The BarMaster is "fatally flawed."  Turner argues that: (i) "Earl McCune, Ph.D., an expert in RFID

18  technology, who reviewed the above claims and opined that the BarMaster is 'fatally flawed[;]'" (ii)

19  "Neuberger completely avoids any discussion of the fatally flawed technology and design that

20  prevented both the San Jose installation the [sic] Roanoke, VA installing [sic] from functioning[;]"

21  (iii) Neuberger ignores the impact of repeated technology & design failures and their affects [sic] on

22  the value of the Company[;]" (iv) "Neuberger also ignores the undisputed fact that the BarMaster

23  failed in every attempted installation[;]" (v) "Neuberger utilizes a discount rate that is too low for the

24  risks associated with a company that does not have a working product [and] fatally flawed

25  technology[;]" and (vi) Neuberger "failed to accurately assess and analyze … technology risks[.]"

26  (Turner Report at 7-9, 14, 17.)

27          Turner's parroting of McCune's findings must be rejected.  First, as set forth above, the

28  McCune Report must be stricken because it far exceeds the scope of proper rebuttal, is instead an

- 19 -

PLAINTIFF'S MOTION TO STRIKE AND EXCLUDE DEFENDANTS' EXPERT TESTIMONY, AND FOR ATTORNEY'S FEES
CASE NO. CV13-02744-BLF (PSG)

colt/singer/bea LLP

1  untimely initial report for which Defendants can show neither substantial justification nor

2  harmlessness to CVT, and impermissibly relies on unsalvageable hearsay.  As such, there is no basis

3  in law or fact to allow Turner to rely upon or voice McCune's purported conclusions.

4        Second, even if some portion of McCune's Report remains—and none should—Turner must

5  still be precluded from presenting or relying upon the same because the law does not authorize one

6  expert to act as a mouthpiece for another, particularly where, as here, the proffered mouthpiece expert

7  has no training or expertise whatsoever in the field of the non-testifying expert.  As Judge Posner of

8  the Seventh Circuit has explained:

9              A scientist, however well credentialed he may be, is not permitted to be
              the mouthpiece of a scientist in a different specialty.  That would not be
10             responsible science. A theoretical economist, however able, would not
              be allowed to testify to the findings of an econometric study conducted
11             by another economist if he lacked expertise in econometrics and the
              study raised questions that only an econometrician could answer.
12

13  *Dura Auto. Sys.*, 285 F.3d at 614.  In other words, the Federal Rules simply "do not permit an expert

    to rely upon excerpts from opinions developed by another expert for the purposes of litigation."
14
    *Imperial Credit*, 252 F. Supp. 2d at 1012-13 (surveying the law); *accord Larson v. Kempker*, 414
15
    F.3d 936, 941 (8th Cir. 2005) (explaining that one does not become an expert in another field simply
16
    by reviewing another expert's reports or research).
17
          *Imperial Credit* is highly instructive here.  In order to prevail on its affirmative securities
18
    claims, a party was "required to produce expert testimony demonstrating that SPFC's residuals were
19
    overvalued."  252 F. Supp. 2d at 1012.  Instead of designating a residual valuation expert, the party
20
    "instead presented a report by an accountant (Moore) who is not and does not purport to be a residual
21
    valuation expert."  *Id.*  Moore's report referenced and relied upon "an expert report authored by a
22
    purported residual valuation expert [(Davidson)] retained by" that party in a prior litigation against
23
    the same adversary.  *Id.*  The Court concluded that Moore's reliance on another expert's opinion
24
    generated for purposes of litigation was "improper" and that "the pertinent party of the Moore
25
    Report, referring to and relying upon Davidson's opinion as to the valuation of SPFC's residuals, is
26
    therefore inadmissible."  *Id.* at 1012-13.  The Court explained:
27
              [T]here is no circumstantial guarantee of trustworthiness [with respect
28             to the Davidson opinion]. Moore relies on excerpts from an opinion

colt/singer/bea LLP

1
2
3
4
5
6

prepared entirely for litigation, not facts, data or opinions generated in the ordinary course of discharging a professional responsibility owed to SPFC. Unlike the persons who prepared valuations of SPFC's residual assets for purposes of financial reporting, Davidson had no business duty to report accurately. Moreover, Federal Rule of Evidence 703 contemplates that Moore would be able to "validate" the facts, data and opinions he relied upon during his testimony and be subject to cross-examination on them. Because Moore himself is not qualified to perform residual valuation, he cannot "validate" Davidson's opinions and, therefore, those opinions cannot be subjected to meaningful adversarial testing through cross-examination of Moore.

7

*Id*. at 1012 fn.5.  This describes to a tee the unacceptable uncertainty Defendants' strategic elections

8

have created here.  In fact, the rationale applies with even greater force in this case:  far from a

9

situation where McCune was known to CVT through some prior litigation with Defendants regarding

10

similar subject matter, McCune, his supposed analysis, and his purported opinions were all complete

11

strangers to CVT until Defendants served his report, squirrelled away inside the Turner Report, on

12

March 17, 2015.

13

    That Defendants seek to label McCune a "technology consultant" to Turner, rather than an

14

unrelated third party on whose opinion Turner relies, cannot excuse Defendants' sandbagging.

15

(Turner Report at ii.)  In *Goben*, for example, a defendant disclosed a rebuttal expert (Orchard, owner

16

of Orchard Roofing Consultants) to deliver expert testimony regarding roofing defects that led to a

17

leak that caused plaintiff to slip, fall, and suffer injury.  2014 U.S. Dist. LEXIS 81442 at *5.  Orchard

18

reviewed many documents relating to the roof in question, the reports and exhibits submitted by

19

plaintiff's experts, and transcripts of depositions of plaintiff's experts, but did not personally inspect

20

the roof in question.  *Id*.  Rather, Orchard asked his employee (Madson) to perform an inspection of

21

the roof in issue.  *Id*.  Madson subsequently delivered a written report to Orchard, including 87

22

photographs of the roof.  *Id*.  Even though there was no dispute that Orchard was generally qualified

23

to speak to roofing issues or that he was familiar with Madson's usual inspection practices, the Court

24

granted plaintiff's motion to exclude Orchard:  "Because Orchard is unable to state the principles and

25

methods used to create the report that he relied on, testimony based on the report's contents cannot

26

satisfy the requirements of Fed. R. Evid. 702."  *Id*. at *6.  So too here—short of reading what is

27

written in McCune's report, Turner cannot state the principles and methods relied upon by McCune,

28

much less validate whether, to what extent, or why McCune's purported findings are sound.

colt/singer/bea LLP

colt/singer/bea LLP

Moreover, because they have confirmed that McCune will not testify at trial, Defendants intend to call Turner to testify to the hearsay conclusions of McCune, based on the alleged hearsay statements of undisclosed third parties Wyatt and Cano.  They may not; the Rule that bars McCune from relying on or introducing inadmissible hearsay applies doubly to Turner.  *See* Fed. R. Evid. 703; *Marvel*, 726 F.3d at 136 ("a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.").  Without the alleged statements by Wyatt or Cano, McCune's analysis crumbles.  And without McCune's analysis, Turner has little more to rebut Dr. Neuberger than his unwillingness to agree.

For the foregoing reasons, all portions of the Turner report which refer to or rely in any way upon the McCune Report must be stricken, and Defendants precluded from seeking to introduce in any way, whether through Turner or otherwise, the opinions set forth in the McCune Report.

### 2.   Turner Impermissibly Seeks to Usurp the Role of Judge and Jury

The Turner Report is replete with improper argumentative assertions and ultimate conclusions of fact and law.  Turner argues, for example, that: (i) "CVT is a company that was fraught was problems from the day it was formed and capitalized with 'IP' that [] did not exist[;]" (ii) "[f]rom the beginning, CVT had the elements of a ponzi [sic] scheme, i.e., by manufacturing the appearance of enterprise value that never existed and selling it to investors[;]" (iii) "the BarMaster failed in every attempted installation[;]" (iv) Neuberger's "opinion has no evidentiary value[;]" (v) Neuberger's prejudgment interest calculation is "moot" and need not be rebutted because "plaintiff's damages claims are so speculative, remote or conjectural that no supportably claim for damages can be made with reasonable certainty[;]" (vi) with respect to the current value of CVT, "[t]he Company itself correctly admits that this is junk science and has no relationship to 'fair market value[.]'"  (Turner Report at 7, 9, 16-17.)   In addition, Turner dedicates an entire section of his report to "CVT's Failure to Mitigate Alleged Damages."  (*Id.* at 16.)  In each such instance, Turner abandons the realm of authorized expert opinion in order to tell this Court and the jury exactly what Defendants think they should do:  determine that Neuberger's "incredible" opinions are based in "junk science" and have "no evidentiary value" because CVT is a "Ponzi scheme" that "does not have a working product,

1  fatally flawed technology, poor management, no patents, and has never made a bonafide [sic] sale

2  from inception in 2006 through June of 2011."

3        Defendants' efforts are improper and all such portions of Turner's report should be stricken.

4  *See Glenwood Sys., LLC v. Thirugnanam*, 2012 U.S. Dist. LEXIS 71261, *21-22 (C.D. Cal. May 21,

5  2012) (finding expert "improperly invad[es] the province of the jury" in "opin[ing] about plaintiff's

6  alleged failure to mitigate damages[.]") ; *see also Mukhtar*, 299 F.3d at 1063 ("an expert witness

7  cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.");

8  *Duncan*, 42 F.3d at 101 ("When an expert undertakes to tell the jury what result to reach, this does

9  not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the

10  jury's.").  It is for the jury to decide what CVT was and was not, and why a promising company Dr.

11  Neuberger values at nearly $90 million is now virtually worthless.

12  **IV. DEFENDANTS SHOULD BE DIRECTED TO PAY CVT'S COSTS IN BRINGING THIS**

13        **MOTION**

14        In addition to "automatic and mandatory" exclusion of at least the McCune Report and all

15  portions of the Turner Report relying on the same, Defendants' gamesmanship warrants sanctions

16  under Rule 37(c)(1)(A).  *See, e.g.*, *Yeti*, 259 F.3d at 1106 (confirming that the Court has "particularly

17  wide latitude" to enter sanctions under Rule 37(c)).  Had Defendants timely disclosed McCune as its

18  expert, or third parties Wyatt and Cano as third parties on whom Defendants might rely at trial, this

19  Motion might not be necessary—depositions could have been taken, spurious theories debunked, and

20  trial closer than ever.  But rather than respect the Federal Rules, Defendants elected, again, to do

21  whatever disadvantages CVT and slows this litigation the most.  Defendants' ongoing misconduct

22  has obliged CVT, again, to needlessly expend substantial time and resources in seeking to secure

23  Defendants' compliance with the law.  Defendants should be directed pay CVT's costs and fees

24  incurred in connection with this Motion and in deposing Defendants' improperly disclosed experts.

25  *See, e.g.*, *AZ Holding, L.L.C. v. Frederick*, 2009 U.S. Dist. LEXIS 74515 (D. Ariz. Aug. 7, 2009).

26        **CONCLUSION**

27        Defendants' improper expert reports should be rejected as yet another attempt to game the

28  judicial system to avoid the consequences of their unlawful conduct.  Defendants said they would

offer affirmative technical expert testimony, but did not do so until they assured themselves that CVT would have no opportunity to respond.  And they apparently still do not intend to offer actual technical testimony:  they buried the affirmative McCune Report inside the rebuttal Turner Report, suppressed the identities of key third parties on whose supposed hearsay assertions McCune relies, and will not call McCune to testify to his own purported opinions.  Defendants simply may not use an accountant to regurgitate the hearsay opinions of a non-testifying engineer, whose conclusions are in turn based virtually exclusively on another layer of hearsay from third parties who cannot testify at trial.  Nor may their hired gun Turner substitute his own judgment for that of judge and jury.  Justice requires that Defendants' chicanery be set aside so that a jury can decide this case on the merits and return a verdict with the assistance of competent and informed expert testimony that has survived adversarial testing.

Date:  March 31, 2015                    Respectfully submitted,

                                         COLT / SINGER / BEA LLP

                                         By:_____
                                             Douglas W. Colt
                                             Renee B. Bea
                                             Douglas S. Tilley
                                             *Attorneys for Clear-View Technologies, Inc.*