1  Gerald D.W. North, Esq. (*Pro Hac Vice Application to be Filed*)
       northlaw2@yahoo.com
2  125 S. Wacker Dr., Suite 1000
   Chicago, IL 60606
3  Telephone:      (480) 998-6990
   Facsimile:      (312) 629-0901
4
   COLT / SINGER / BEA LLP
5    Doug W. Colt (Bar No. 210915)
       dcolt@coltsinger.com
6    Renee B. Bea (Bar No. 268807)
       rbea@coltsinger.com
7    Doug Tilley (Bar No. 265997)
       dtilley@coltsinger.com
8  Shorebreeze II
   255 Shoreline Drive, Suite 540
9  Redwood Shores, California  94065
   Telephone:      (650) 887-6650
10 Facsimile:      (650) 887-6650

11 *Attorneys for Plaintiff Clear-View Technologies, Inc.*

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                     SAN JOSE DIVISION

15 CLEAR-VIEW TECHNOLOGIES, INC., a      CASE NO. CV13-02744-BLF (PSG)
   California Corporation,
16                                       **PLAINTIFF'S REPLY IN SUPPORT OF**
                                         **MOTION TO STRIKE AND EXCLUDE**
17              Plaintiff,               **DEFENDANTS' EXPERT TESTIMONY,**
                                         **AND FOR ATTORNEYS' FEES UNDER**
18 v.                                    **FED. R. CIV. P. 37(C)(1)**

19 JOHN H. RASNICK, J. BASIL MATTINGLY,
   WILL RASNICK and PARKER MATTINGLY,    Original Filing Date:  June 14, 2013
20 individuals residing in Kentucky; and M&R   Hearing Date:      May 28, 2015
   SOLUTIONS, LLC, a dissolved Kentucky  Trial Date:        June 8, 2015
21 Corporation.

22              Defendants.

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

3

4  INTRODUCTION ............................................................................................................. 1

5  I.   MCCUNE MUST BE EXCLUDED ........................................................................ 3

6      A.  McCune Is Neither A Timely Disclosed Initial Expert Nor A Proper Rebuttal
            Expert ............................................................................................................. 3

7
       1.  McCune May Not Testify as an Initial Expert ............................................ 3
8
       2.  McCune May Not Testify as a Rebuttal Expert .......................................... 5
9
       3.  Defendants May Not Otherwise Smuggle In McCune's Opinions .............. 6
10
          a. Undisclosed Witnesses Wyatt and Cano May Not Testify .................. 9
11
       4.  If McCune is Not Excluded in Full, CVT Requests Leave to Disclose a
12          Surrebuttal Witness ................................................................................... 10

13  II.  THE COURT SHOULD EXCLUDE TURNER'S PROPOSED TESTIMONY .................. 10

14     A.  The Court Should Exclude All Turner Opinions Based on Perceived Technical
            Flaws  in The BarMaster™ ............................................................................. 10
15
       B.  Virtually All of Turner's Other Opinions Must Be Excluded .......................... 11
16
       1.  The Court Should Exclude Turner's Factual and Legal Conclusions ........ 11
17
       2.  The Court Should Preclude Turner From Opining Regarding the Patentability
18          of The BarMaster™ ................................................................................... 12

19  CONCLUSION ............................................................................................................... 14

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Acres of Land etc. v. United States*, 411 F.2d 834, 839-40 (10th Cir. 1969) ........................ 7

*American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) ........................ 7

*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 U.S. Dist. LEXIS 52792, *11 (E.D. Cal. May 17, 2011) ........................................................................ 4

*Glenwood Sys., LLC v. Thirugnanam*, 2012 U.S. Dist. LEXIS 71261, *21-22 (C.D. Cal. May 21, 2012) ........................................................................ 11

*Goben v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 81442, *8 (D. Nev. June 16, 2014) ............. 5

*Houle v. Jubilee Fisheries, Inc.*, 2006 U.S. Dist. LEXIS 1408, *5 (W.D. Wash. Jan. 5, 2006) ....... 2, 5

*In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012-13 (C.D. Cal. 2003) ..... 2, 7

*Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*, 1995 U.S. Dist. LEXIS 22533, *7-9 (N.D. Cal. Mar. 15, 1995) ........................................................................ 6

*Kirola v. City & County of San Francisco*, 2010 U.S. Dist. LEXIS 7355 *7 (N.D. Cal. January 29, 2010) ........................................................................ 6

*LaFlamme v. Safeway, Inc.*, 2010 U.S. Dist. LEXIS 98815, *8-9 (D. Nev. September 2, 2010) ........ 6

*Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063 (9th Cir. 2002) ........................................ 11

*Ohio Envtl. Dev. Ltd. P'ship v. Envirotest Sys. Corp.*, 478 F.Supp.2d 963, 974-75 (N.D. Ohio 2007) ........................................................................ 7, 10

*Pakootas v. Confederated Tribes*, 2012 U.S. Dist. LEXIS 72137 (E.D. Wash. 2012) ........................ 6

*R&O Constr. Co. v. Rox Pro Int'l Group, Ltd.*, 2011 U.S. Dist. LEXIS 78032, *13-14 (D. Nev. July 18, 2011) ........................................................................ 1, 2, 4, 5

*Robert Kubicek Architects & Assocs. v. Bosley*, 2013 U.S. Dist. LEXIS 34722 (D. Ariz. Mar. 13, 2013) ........................................................................ 9

*Taylor v. B. Heller and Co.*, 364 F.2d 608, 613 (6th Cir. 1966) ........................................ 7

*United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ........................................ 12

*United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. Cal. 1993) ........................................ 13

*Valiavicharska v. Tinney*, 2012 U.S. Dist. LEXIS 11334, *5 (N.D. Cal. Jan. 31, 2012) ........................ 9

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 2009 U.S. Dist. LEXIS 38342, *13 (S.D. Cal. May 6, 2009) ........................................................................ 7

*Villagomes v. Laboratory Corp. of America*, 2010 U.S. Dist. LEXIS 124185, *14-15 (D. Nev. Nov. 8, 2010) ........................................................................ 9

colt/singer/bea LLP

*Vu v. McNeil-PPC, Inc.*, 2010 U.S. Dist. LEXIS 53639, *7-8 (C.D. Cal. May 7, 2010) ............ passim

**RULES**

Fed. R. Civ. P. 26 ....................................................................................................... passim

Fed. R. Civ. P. 37 ....................................................................................................... 4, 9, 10

Fed. R. Evid. 702 ....................................................................................................... 7, 13

Fed. R. Evid. 703 ....................................................................................................... 2, 7, 8, 14

colt/singer/bea LLP

**INTRODUCTION**

Defendants continue to play shell games with their expert disclosures in order to avoid the consequences of their strategic election to not disclose any initial experts; instead, Defendants attempt to smuggle in a purely technical report as purported "rebuttal" to CVT's damages expert—notwithstanding that Defendants' expert testified that he had never even seen CVT's report.  This gross abuse must be rejected.  *See, e.g., R&O Constr. Co. v. Rox Pro Int'l Group, Ltd.*, 2011 U.S. Dist. LEXIS 78032, *13-14 (D. Nev. July 18, 2011) ("Since [Defendants' expert] report does not address or rebut [CVT's expert] opinions and conclusions, it is not a rebuttal report within the meaning of Rule 26(a)(2)(C)(ii). It is, in fact, a grossly untimely initial expert report."); *Vu v. McNeil-PPC, Inc.*, 2010 U.S. Dist. LEXIS 53639, *7-8 (C.D. Cal. May 7, 2010) ("If the phrase 'same subject matter' [in Rule 26(a)(2)(D)(ii)] is read broadly to encompass any possible topic that relates to the subject matter at issue, it will… render the scope of the subject matter limitless and will lead to unjust results, such as the result [Defendants] suggest[] in [their] opposition.").

Defendants' Opposition memorializes the second time—in expert discovery alone—that Defendants have pulled a bait-and-switch to gain an unfair advantage.  First, in September 2014, Defendants advised that they intended to offer expert testimony regarding the technical viability of CVT's product, The BarMaster™.  (Declaration of Doug Tilley in Support of CVT's Motion to Exclude (Dkt. No. 153-1, the "Tilley Opening Decl."), ¶ 9, Ex. B.)  But they did not.  Instead, they waited for CVT to disclose its damages expert, then served a technical report from a non-testifying expert as purported rebuttal so that CVT would have no opportunity to respond.  The law rejects Defendants' untimely disclosure as "a hornbook example of sandbagging, a litigation tactic this Court will not tolerate."  *Vu*, 2010 U.S. Dist. LEXIS 53639 at *8 (excluding expert opinions).  Then, on March 30, 2015, Defendants stated without qualification that purported technical expert Earl McCune "will not be called to testify at the trial of this matter."  (Tilley Opening Decl., ¶ 15, Ex. E.)  But Defendants thereafter reversed course, announcing—in the middle of McCune's deposition on the day before expert discovery closed—that now they *will* seek to call McCune at trial.  (Declaration of Doug Tilley in Further Support of CVT's Motion, filed concurrently herewith ("Tilley Reply Decl."),

¶ 5, Ex. B ("McCune Tr.") at 8:24-9:6.)  Defendants should be held to their word, not permitted to double down on their gamesmanship.

The law requires McCune's exclusion even without reference to Defendants' tactics.  Both the Federal Rules and this Court's Scheduling Order provide for only two types of experts: initial and rebuttal.  McCune may not serve as either.  If Defendants now intend to call him as an initial witness, they were required to disclose him by the Court's February 17 deadline.  They failed to do so.  They do not seek to justify their failure or explain how it is harmless to CVT (because they cannot), nor have they sought to modify the Scheduling Order.  *See R&O*, 2011 U.S. Dist. LEXIS 78032 at *10-11.  The result is the same if Defendants now intend to call McCune to rebut the findings of CVT's damages expert, Dr. Jonathan Neuberger—McCune must be excluded, as his proffered opinions do not respond even tangentially to those put forward by Dr. Neuberger.  In fact, McCune confirmed under oath that he has never even seen the report Defendants claim he is offered to rebut.  (McCune Tr. at 65:22-66:1; *see Houle v. Jubilee Fisheries, Inc.*, 2006 U.S. Dist. LEXIS 1408, *5 (W.D. Wash. Jan. 5, 2006) (witness is "not a rebuttal expert" where he "did not mention [initial expert], cite his report, or otherwise indicate that he was aware of [initial expert's] opinions in this case[.]") (quotations omitted).)).

Defendants' efforts to invent some new class of testifying "consultant" expert, or to use their accountant James Turner as a mouthpiece for McCune's findings under Fed. R. Evid. 703 or otherwise, fail.  *See, e.g., In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012-13 (C.D. Cal. 2003).  Were it acceptable for a party to rob their adversary of any rebuttal opportunity by piggybacking experts as Defendants have done, everyone would do it and expert discovery would devolve from a fair and orderly process into precisely the "sandbagging" that courts routinely reject. *See Vu*, 2010 U.S. Dist. LEXIS 53639 at *8.  None of Defendants' authorities counsel otherwise, nor can Defendants show that McCune's opinions, or the underlying testimony hearsay from previously undisclosed witnesses, satisfy Rule 703.

Because Defendants may not present McCune's opinions, Turner may not rely on them. *Imperial Credit*, 252 F. Supp. 2d at 1012-13 ("The rules do not permit an expert to rely upon excerpts

colt/singer/bea LLP

from opinions developed by another expert for the purposes of litigation.").  And because Turner admits that McCune's purported analyses form a "critical" basis for his valuation opinions, Turner's report must also be stricken.  The Court should further exclude Turner's opinions regarding ultimate issues of law and fact, such as his assertions that Dr. Neuberger's opinions have "no evidentiary value," or that CVT "Fail[ed] to Mitigate Alleged Damages," or that CVT is a "ponzi [sic] scheme" that was "fraught with problems from the day it was formed and capitalized with 'IP' that [] did not exist."

 For the reasons set forth below and in CVT's Motion, all of McCune's opinions and virtually all of Turner's must be excluded.  In the event the Court declines to exclude Defendants' experts, CVT respectfully submits that it must be allowed to disclose surrebuttal witnesses to rebut their spurious analyses so that the jury may reach an informed verdict.

## I.  MCCUNE MUST BE EXCLUDED

### A.  McCune Is Neither A Timely Disclosed Initial Expert Nor A Proper Rebuttal Expert

 The Court's Scheduling Order, like the Federal Rules, provides for only two types of experts: "Initial Experts" and "Rebuttal Experts."  (Dkt. No. 111, entering proposed schedule at Dkt. No. 105-6 at 1-2; *accord* Fed. R. Civ. P. 26(a)(2).)   No matter how Defendants seek to label him, the law requires that purported technical expert Earl McCune be excluded.

#### 1.  <u>McCune May Not Testify as an Initial Expert</u>

 If offered as an initial expert—as he should have been because he is dedicated to an issue on which Defendants bear the burden of proof (*see* Mtn. at 13-14)—McCune must be excluded because Defendants disclosed him a month after the Court's February 17, 2015 deadline.  (*See* Tilley Opening Decl., ¶ 13, Ex. D.)

 As CVT anticipated (Mtn. at 15), Defendants point to CVT's role as Plaintiff in seeking to escape their failure to timely disclose McCune.  Their effort fails.  While Defendants correctly state that CVT's claims require proof of damages (Opp. at 18), Defendants cannot identify any claim for which CVT bears the burden of proving the technical viability of The BarMaster™.  This is because none does.  CVT may recover on each of its claims through proof that Defendants, armed with

colt/singer/bea LLP

1  pilfered CVT confidential information, solicited away CVT's investor base and ultimately deprived

2  CVT of millions in investor dollars, including Clyde Berg's promised $3.5 million investment.  In

3  fact, Defendants concede that once CVT proves Defendants' interference with the Berg investment,

4  CVT will have proved its ability to fix whatever "fatal flaws" Defendants contend existed with The

5  BarMaster™.  (*See* McCune Report at 10 ("A development budget not exceeding **$1.5 million** would

6  be sufficient to identify and fix the types of design flaws" identified in McCune's report) (emphasis

7  added); Tilley Reply Decl., ¶ 3, Ex. A at RASNICK0004620 (Defendant John Rasnick distributing

8  projected $1.525 million budget to complete the Skunk Works "PourOlogy" alcohol inventory

9  management product).)  The only claims that categorically *do* require proof regarding the viability of

10  The BarMaster™ are Defendants' counterclaims.  (*See* Mtn. at 5, 13-14.)  Defendants' suggestion

11  that they might at some future time dismiss those counterclaims does not change that on February 17,

12  2015, the burden of proof regarding technical viability rested squarely on their shoulders—as it does

13  today.  But even if some burden did lay with CVT, Defendants were *still* required to disclose

14  McCune by the initial expert deadline.  *See, e.g.*, *R&O*, 2011 U.S. Dist. LEXIS 78032 at *16

15  ("Because LaFortune's opinions contradict an expected and anticipated portion of the plaintiff's case-

16  in-chief, they cannot be rebuttal witness statements or anything analogous to rebuttal to McMullin's

17  statements."); *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 U.S. Dist. LEXIS 52792,

18  *11 (E.D. Cal. May 17, 2011) ("defense expert whose testimony is intended to negate an element of

19  the plaintiff's case, generally, must be identified in the initial round of expert disclosures.").

20       Defendants do not assert that McCune's belated disclosure was either "substantially justified

21  or [] harmless."  Fed. R. Civ. P. 37(c)(1); *see also Vu*, 2010 U.S. Dist. LEXIS 53639 at *11

22  ("Excluding expert evidence as a sanction for failure to disclose expert witnesses in a timely fashion

23  is **automatic and mandatory** unless the party can show the violation is either justified or harmless.")

24  (emphasis added, quotation omitted).  Defendants similarly do not request to modify the Court's

25  Scheduling Order.  *See R&O*, 2011 U.S. Dist. LEXIS 78032 at *10-11 ("[Defendant] did not seek an

26  extension of the deadline to disclose initial experts, nor has it shown good cause for  the failure to do

27  so. Accordingly, [defense expert's] report must be stricken.").

28

1    Defendants do suggest, without any supporting authority, that "CVT is not prejudiced by

2    Defendants' election because CVT thoroughly examined McCune [] under oath at [his] deposition[]."

3    (Opp. at 20.)  Defendants' argument, however, ignores that as a result of their untimely disclosure—

4    as well as their eleventh hour about-face regarding whether McCune will seek to testify—CVT is

5    "prevented from rebutting any of [Defendants'] expert opinions dealing with matters outside the

6    scope of Dr. [Neuberger's] report because the deadline for disclosing rebuttal experts has passed."

7    *Vu*, 2010 U.S. Dist. LEXIS 53639 at *8.  "This is a hornbook example of sandbagging, a litigation

8    tactic this Court will not tolerate."  *Id.*; *accord R&O*, 2011 U.S. Dist. LEXIS 78032 at *10.

9                    2.  **McCune May Not Testify as a Rebuttal Expert**

10    Even if offered as a rebuttal witness, McCune must still be excluded because his opinions far

11    exceed the scope of those he is offered to rebut.  *See, e.g.*, *Goben v. Wal-Mart Stores, Inc.*, 2014 U.S.

12    Dist. LEXIS 81442, *8 (D. Nev. June 16, 2014) (rebuttal expert must directly and specifically

13    contradict the particular opinions set forth by the expert he or she is offered to rebut).  McCune's

14    opinions are limited solely to certain "communications aspects" of The BarMaster™.  (McCune Tr.

15    at 24:4-7.)  McCune claims no expertise in the economic analyses set forth in CVT's damages expert

16    report, and performed no economic or valuation analysis in response to that set forth by Dr.

17    Neuberger.  In fact, McCune freely admitted that he has never even seen the Neuberger Report.  *See*

18    *Houle*, 2006 U.S. Dist. LEXIS 1408 at *5.

19    Defendants may not convert CVT's damages report into an invitation to offer rebuttal of

20    unlimited scope.  The law places clear limits on rebuttal reports, even if a clever lawyer can find a

21    way to link virtually any topic to "damages."  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (rebuttal evidence is

22    limited to that "intended solely to contradict or rebut evidence **on the same subject matter**

23    **identified by another** party[.]") (emphasis added).  As the Central District recently explained:

24            If the phrase "same subject matter" is read broadly to encompass *any*
               possible topic that *relates* to the subject matter at issue, it will blur the
25            distinction between "affirmative expert" and "rebuttal expert."  More
               importantly, such broad reading of *Rule 26(a)(2)(C)(ii)* will render the
26            scope of the subject matter limitless and will lead to unjust results, such
               as the result Costco suggests in its opposition.
27

28

colt/singer/bea LLP

colt/singer/bea LLP

1   *Vu*, 2010 U.S. Dist. LEXIS 53639 at *7-8 (emphases in original); *see also Int'l Bus. Machines Corp.*

2   *v. Fasco Indus., Inc.*, 1995 U.S. Dist. LEXIS 22533, *7-9 (N.D. Cal. Mar. 15, 1995). ("[A] party can

3   control the scope of the testimony of its Adversary's rebuttal experts by limiting its own experts'

4   testimony to a given subject matter.  A party who forgoes designating experts on the initial disclosure

5   date will thus find itself in a purely reactive mode, greatly restricted in its ability to offer expert

6   testimony.")  So too here:  while he considered an array of factors in his economic analysis, including

7   research and development risks, Dr. Neuberger did not offer any opinions on the technical viability of

8   The BarMaster.  Yet that is the one and only thing McCune speaks to.

9        None of Defendants' authorities support their expansive interpretation of Rule 26(a)(2)(D)(ii).

10   For example, *Pakootas v. Confederated Tribes*, 2012 U.S. Dist. LEXIS 72137 (E.D. Wash. 2012),

11   does not confer upon any rebuttal expert some right to "include significant elaboration" beyond that

12   set forth in an initial report.  (Opp. at 10.)  The *Pakootas* Court held only that an *initial* expert is not

13   prevented from including in his *surrebuttal* report elaboration he did not provide the first time

14   around.  *Pakootas*, 2012 U.S. Dist. LEXIS 72137 at *5-8.  That has no application here.  Similarly, in

15   *LaFlamme v. Safeway, Inc.*, the Court's admission of proffered rebuttal testimony hinged on its

16   findings that the rebuttal experts did not "present[] new facts about plaintiffs" and "d[id] not

17   introduce novel arguments."  2010 U.S. Dist. LEXIS 98815, *8-9 (D. Nev. September 2, 2010).

18   Here, McCune has done both.  Finally, in *Kirola v. City & County of San Francisco*, the Court

19   limited rebuttal evidence regarding the handicap accessibility of certain sites to only those 78 sites

20   "which were specifically identified in [its adversary's] expert report."  2010 U.S. Dist. LEXIS 7355,

21   *7 (N.D. Cal. January 29, 2010) (rejecting efforts to expand rebuttal to include 60 additional sites).

22        In sum, nothing in Defendants' Opposition lessens the Court's obligation to exclude McCune.

23   ### 3.  **Defendants May Not Otherwise Smuggle In McCune's Opinions**

24        Rather than label him as initial or rebuttal expert—either of which would require his

25   exclusion—Defendants seek to call McCune as a purported "technology consultant" to their

26   accountant James Turner.  Defendants' bid to invent some new class of testifying expert, however,

27   flies in the face of the Federal Rules, the Court's Scheduling Order, and their own authority.  For

28

example, Defendants cite *Ohio Envtl. Dev. Ltd. P'ship v. Envirotest Sys. Corp.*, 478 F.Supp.2d 963, 974-75 (N.D. Ohio 2007) and several other out-of-circuit cases for the proposition that, even if McCune's opinions are excluded, Defendants may still present them and Turner may still may rely on them.  (Opp. at 13-14.)   The law in this Circuit, however, is otherwise:

> First, Federal Rules of Evidence 702 and 703 permit an expert to rely upon "facts and data".  **The rules do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation.** The instant situation is distinguishable from a medical malpractice case, where a testifying expert relies upon medical records or a patient's chart, even when portions of those records or the patient's chart may contain opinions or hearsay. The differences are that the records and the chart, including the opinions contained therein, (1) were generated for purposes other than litigation, and (2) are properly relied upon and intended to be relied upon by experts and others in the performance of their ordinary professional duties outside of litigation. Such documents therefore bear independent indicia of reliability, unlike an opinion which is generated solely for the purposes of litigation.

*Imperial Credit*, 252 F. Supp. 2d at 1012-13 (excluding accountant's reliance upon opinion formed for litigation) (emphasis added); *accord Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) (Posner, J.) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science."); *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."); *6816.5 Acres of Land etc. v. United States*, 411 F.2d 834, 839-40 (10th Cir. 1969) ("the trial court must take steps to exclude any expert opinion that is predicated upon another opinion."); *Taylor v. B. Heller and Co*., 364 F.2d 608, 613 (6th Cir. 1966) ("expert opinion may not be based upon the opinion of others, either in evidence or not in evidence.").  Indeed, the sole in-circuit opinion to consider *Ohio Envtl* has rejected Defendants' argument as "meritless[.]"  *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 2009 U.S. Dist. LEXIS 38342, *13 (S.D. Cal. May 6, 2009) ("[N]othing in Rule 703 suggests that an expert may rely on evidence the Court has expressly precluded.").

Not even *Ohio Envtl* supports Defendants' position.  Far from suggesting that an appraisal expert (Gardner) may rely on the uncorroborated findings of an architect (Watson), the Court permitted Gardner to rely on Watson's findings only because Gardner, among other things,

colt/singer/bea LLP

"personally inspected each former E-Check station" and "identified and reviewed Watson's cost-to-cure estimates to ensure they coincided with his own evaluation[.]" 478 F. Supp. 2d at 975. "As opposed to blindly accepting Watson's calculations, Gardner satisfied himself that Watson's findings were consistent with Gardner's own personal observations of the thirteen E-Check stations. As such, Fed. R. Evid. 703 permits Gardner's reliance upon Watson's expert report." *Id.* In stark contrast, Turner testified unambiguously that his understanding of any technical aspect of The BarMaster™ comes exclusively from McCune. (Tilley Reply Decl., ¶ 8, Ex. E ("Turner Tr.") at 86:4-24.)

Even if their Rule 703 argument were not foreclosed as a matter of law, Defendants have not and cannot show that whatever probative value McCune's opinions might have "substantially outweighs their prejudicial effect" so as to warrant presentation to the jury. Fed. R. Evid. 703. To the contrary, McCune's deposition confirms that his opinions have *no* probative value, let alone any that could substantially outweigh the guaranteed prejudice to CVT from being unable to put forth its own technical expert. Defendants could, for example, have granted McCune's requests to examine the demonstration version of The BarMaster in Defendant Parker Mattingly's possession. (*See* McCune Tr. at 38:21-39:18, 41:12-16; Tilley Reply Decl., ¶ 9, Ex. F at 18:14-19:5.) Defendants could have provided McCune with technical documentation produced by CVT, such as that introduced at his deposition. (*See* McCune Tr. at 69:18-70:19 (discussing exhibits 201 and 202).) But Defendants tellingly refused to do either, leaving McCune to rely virtually exclusively on the testimonial hearsay from previously undisclosed witnesses regarding two BarMaster installations in Roanoke, Virginia and San Jose, California. (*See id.* at 39:19-41:8, 58:13-60:6.) The record is devoid, however, of any indication as to those third parties' roles in the installations, when they supposedly worked on those installations, or precisely what the purported problems with the installations were. Far from lending credence to his speculation regarding "fatal flaws," McCune admitted that these untested sources confirmed that unknown modifications to the installations "[a]ddressed and improved" perceived deficiencies in The BarMaster™'s performance. (*See id.* at 57:6-58:12, 62:15-63:8.) The Court should not permit Defendants to offer unrebutted technical testimony on such a record.

a. <u>**Undisclosed Witnesses Wyatt and Cano May Not Testify**</u>

As a further basis to exclude McCune's testimony, the third parties on whom he relies may not testify because Defendants failed to disclose them as required by Rule 26. (Mtn. at 16-19.) Defendants' argument that Wyatt and Cano will be called solely for impeachment is makeweight. "Impeachment as contemplated by the Rule 26(a) exception refers to attacks on the credibility of a witness and not to rebuttal evidence, which tends to prove any element of [a party's] claims." *Valiavicharska v. Tinney*, 2012 U.S. Dist. LEXIS 11334, *5 (N.D. Cal. Jan. 31, 2012) (quotations omitted, alteration in original). By their own admission, Defendants intend to call Wyatt and Cano specifically to contradict that "the Roanoke Installation was 'finished' in January 2011" as well as "any other statements set forth by CVT regarding a 'fully functioning' or 'finished' installation thereto." (Opp. at 15.) Defendants' arguments that CVT must prove the viability of The BarMaster™ remove any doubt that "[t]he proposed 'impeachment' actually goes to the substance of a potential defense[.]" *Valiavicharska*, 2012 U.S. Dist. LEXIS 11334 at *5 (barring defendant from calling witness at trial); *Robert Kubicek Architects & Assocs. v. Bosley*, 2013 U.S. Dist. LEXIS 34722 (D. Ariz. Mar. 13, 2013) ("If the [evidence] has independent relevancy to the merits of the case, [such evidence] is not "solely for impeachment" and must be disclosed to opposing counsel.").

Defendants make no attempt to show that their nondisclosures were substantially justified so as to avoid mandatory exclusion under Fed. R. Civ. P. 37(c)(1). Nor can Defendants seriously dispute that their suppression has prejudiced CVT. Because fact discovery closed in January 2015, CVT has no opportunity prior to trial to determine whether these third parties made the statements attributed to them by Defendants, much less explore their factual bases for any such statements. *See Villagomes v. Laboratory Corp. of America*, 2010 U.S. Dist. LEXIS 124185, *14-15 (D. Nev. Nov. 8, 2010) (finding unfair prejudice where party "had no opportunity to verify whether [third party's] opinions were accurately reported by [expert] or to explore the basis for [third party's] opinions.").

Independent of their Rule 26 failings, Defendants should be barred from calling Wyatt and Cano for the additional reason that they failed to identify either witness in response to CVT's interrogatory specifically requesting that Defendants "[i]dentify all factual bases for your contention,

- 9 -

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE DEFENDANTS' EXPERT TESTIMONY,
AND FOR ATTORNEYS' FEES UNDER FED. R. CIV. P. 37(C)(1)
CASE NO. CV13-02744-BLF (PSG)

1   set forth in Defendants' [Answer], that 'CVT, through its officers, directors, employees, or agent

2   breached their obligations under the Distribution Agreement by failing to manufacture or cause to be

3   manufactured, promote and sell the product, and to develop into a successful production for

4   distribution … including… each person with knowledge regarding those facts and documents."

5   (Tilley Opening Decl., ¶¶ 5-6, Ex. A.)  Defendants have failed once again to honor their discovery

6   obligations (*see* Dkt. No. 127) and must be held accountable.  *See* Fed. R. Civ. P. 37(c)(1).

7           4.   **If McCune is Not Excluded in Full, CVT Requests Leave to Disclose a**

8                **Surrebuttal Witness**

9           In the event the Court declines to exclude McCune in full, CVT respectfully requests a

10   modification of the Scheduling Order to extend the rebuttal disclosure and expert discovery deadlines

11   so that CVT may disclose a surrebuttal witness to rebut McCune's purported findings.  Good cause

12   exists for such a modification because (a) CVT has acted diligently in pursuing the same following

13   Defendants' improper and prejudicial expert disclosures; (b) there will be no undue prejudice to

14   Defendants inasmuch as they have already designated an expert to opine on technical issues relating

15   to The BarMaster™; and (c) there will be no delay in the trial calendar because CVT will serve its

16   report promptly and make its witness available for immediate deposition.

17   **II.  THE COURT SHOULD EXCLUDE TURNER'S PROPOSED TESTIMONY**

18           While CVT does not categorically contest Turner's ability to try to criticize those opinions

19   that Dr. Neuberger actually advanced, Turner goes far beyond the scope of authorized rebuttal.  In

20   addition to speaking to matters not addressed by the Neuberger Report, Turner purports to opine on

21   matters well outside his expertise, blindly relies on McCune's opinions, and seeks to impermissibly

22   usurp the roles of judge and jury.  Turner must be excluded as set forth below.

23       **A.  The Court Should Exclude All Turner Opinions Based on Perceived Technical Flaws**

24            **in The BarMaster™**

25           After denying any expertise in either radio frequency ("RF") or USB communications (*id*. at),

26   Turner confirmed that his technical understanding was based entirely "[o]n Dr. McCune's report."

27   (Turner Tr. at 28:21-29:6, 86:4-24; *contrast Ohio Envtl*, 478 F.Supp.2d at 975.)   As set forth above,

28

colt/singer/bea LLP

however, particularly because McCune must be excluded, the law prohibits Turner from relying on McCune's analysis. (*See* Mtn. at 19-22.) Accordingly, Turner must be prevented from presenting at trial any opinions that rely in part or in whole on McCune's supposed opinions. *Id.* Turner admitted at deposition that his blind reliance on McCune's analysis is "a critical factor" in his critique of Dr. Neuberger's opinions. (Turner Tr. at 86:4-17, 105:16-106:9.) To the extent the Court cannot reliably distinguish between permissible and impermissible opinion, Turner's report should be stricken in full.

## B.  Virtually All of Turner's Other Opinions Must Be Excluded

### 1.  The Court Should Exclude Turner's Factual and Legal Conclusions

As set forth in CVT's Motion, Turner impermissibly seeks to opine regarding ultimate conclusions of fact and law, including that: (i) "CVT is a company that was fraught with problems from the day it was formed and capitalized with 'IP' that [] did not exist[;]" (ii) "CVT had the elements of a ponzi [sic] scheme, i.e., by manufacturing the appearance of enterprise value that never existed and selling it to investors[;]" (iii) describing as "undisputed fact" that "the BarMaster failed in every attempted installation[;]" (iv) Neuberger's "opinion has no evidentiary value[;]" (v) "plaintiff's damages claims are so speculative, remote or conjectural that no supportable claim for damages can be made with reasonable certainty[;]" (vi) with respect to the current value of CVT, "[t]he Company itself correctly admits that this is junk science and has no relationship to 'fair market value[;]'" and (v) that CVT "Fail[ed] to Mitigate Alleged Damages[.]" (Mtn. at 22-23.) In response, Defendants state only that "[a]ll of these statements by Turner are assumptions upon which he relies in valuing CVT at $0.00[.]" (Opp. at 19-20.)

A plain read of Turner's conclusions is sufficient to reject Defendants' mischaracterizations. That Dr. Neuberger's "opinion has no evidentiary value" or is "junk science" or is "so speculative, remote or conjectural" so as to preclude "reasonable certainty" are pure legal conclusions that Turner may not draw. *See, e.g.*, *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063 (9th Cir. 2002) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."); *Glenwood Sys., LLC v. Thirugnanam*, 2012 U.S. Dist. LEXIS 71261, *21-22 (C.D. Cal. May 21, 2012) (finding expert "improperly invad[es] the province of the jury" in "opin[ing] about

- 11 -

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE AND EXCLUDE DEFENDANTS' EXPERT TESTIMONY,
AND FOR ATTORNEYS' FEES UNDER FED. R. CIV. P. 37(C)(1)
CASE NO. CV13-02744-BLF (PSG)

1    plaintiff's alleged failure to mitigate damages[.]").  That CVT "was fraught with problems from the
2    day it was formed[,]" or was "capitalized with 'IP' that [] did not exist," or Turner's many
3    representations regarding supposedly "undisputed facts" are (provably false) factual conclusions
4    Turner may not reach.  *See, e.g.*, *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an
5    expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision,
6    but rather attempts to substitute the expert's judgment for the jury's.").

7           What is more, Turner's deposition revealed that his assertions are based on nothing at all.  For
8    example, when asked for his basis that CVT had elements of a "ponzi [sic] scheme," Turner was
9    unable to identify a single CVT shareholder whom he suspected had received payouts from new
10   investor dollars.  (Turner Tr. at 112:14-115:16.)  Instead, Turner testified that CVT must be a Ponzi
11   scheme because co-founder Paul Mula "may have misappropriated assets[,]" yet was unable to point
12   to any support for his accusation.  (*Id.* at 115:17-116:4.)  Then Turner asserted that Mula fraudulently
13   granted himself founder's shares in exchange for "nothing of value" in light of his belief that "the
14   earliest patent application was filed years after" CVT's formation in December 2006.  (*Id.* at 115:19-
15   119:1.)  When confronted with a publicly-available patent application filed by Mula and CVT co-
16   founder Ken Bailey in September 2006—several months prior to CVT's incorporation—Turner
17   refused to retract his allegations, even as he could not explain his failure to locate the same or to
18   notice references to that application on the face of the materials he did find.  (*Id.* at 119:2-120:6.)
19   Turner's "moving target" opinions only reinforce the need for judicial intervention.

20                    2.   **The Court Should Preclude Turner From Opining Regarding the**
21                         **Patentability of The BarMaster™**

22          Despite that he has no relevant technical expertise, has never reviewed a patent relating to RF
23   technology, and has reviewed a grand total of two dozen file wrappers in his career (Turner Tr. at
24   22:1-18), Turner purports to opine to the jury that CVT had "no patentable 'IP' at any time before,
25   during or after the formation of CVT on December 1, 2006."  (Turner Report at 17.)  At deposition,
26   however, Turner confirmed that he intends to simply read to the jury and tell them what to conclude:

27          Q. Would you consider yourself an expert in interpreting the scope of patent claims?

28

colt/singer/bea LLP

A. What do you mean by the "scope of patent claims"?

Q. How about just interpreting patents, generally?

A. I would say that I'm proficient for what I do and what I need to do, yes. It's required of me under professional standards to understand what I'm valuing when I do a valuation.

Q. What opinions, if any, are you offering regarding patent interpretation in this matter?

A. That I reviewed the patent application and that I reviewed, to the extent that it existed in the public record, the adjudication process and that I reviewed the rejections of various claims and that I reviewed the ultimate abandonment of claims. Yes, I do consider myself capable and proficient to be able to ascertain these things from reviewing the record.

Q. I might just be a little bit unclear. I understand what you reviewed. Are you offering any opinions based on your review?

A. I'm offering what I reviewed as a matter of fact, yes.

Q. So short of identifying a list of things you looked at, what conclusions, if any, are you drawing from that?

A. I didn't say looked at, I said reviewed. What I'm opining on is, for example, that a patent was applied for as of a certain date, I'm capable of reading the record and ascertaining that and reporting in my report that information.  I'm capable of reading through the claims themselves and getting at least an understanding of what's being claimed and I'm capable of reviewing the adjudication process and the findings of the adjudicator, the patent attorney that works for the USPTO or the international patent office and I'm proficient in reading the word "rejected."

(Turner Tr. at 30:24-32:15.)

Even if this were not another impermissible attempt by Turner to overstep his role, Defendants cannot show that Turner's proposed testimony satisfies Federal Rule of Evidence 702. Among other deficiencies, Defendants cannot show that Turner has the requisite "scientific, technical, or other specialized knowledge" sufficient to assist the jury in understanding the evidence or determining a fact in issue.  Fed. R. Evid. 702(a).  Nor can Defendants show how Turner's uninformed testimony will be "helpful" to the finder of fact—the "central concern" of Rule 702. *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. Cal. 1993).

1    In the event the Court declines to exclude Turner's purported patentability opinions, CVT

2    respectfully requests the right to disclose an expert witness to rebut the same.  (*See* Section I(a)(4),

3    *supra*.)

4                                          **CONCLUSION**

5    Defendants' efforts to game the system continue unabated.  They have compounded the

6    improper disclosure of their so-called "rebuttal" technical expert McCune, "a hornbook example of

7    sandbagging[,]" by misleading CVT as to whether he will seek to testify at trial.  They seek to invent

8    a new class of testifying expert in order to smuggle in McCune's technical opinions.  Failing that,

9    they hope to convert Fed. R. Civ. P. 26(a)(2)(D)(ii) and Fed. R. Evid. 703 into a license to offer

10   limitless, unrefuted "rebuttal" from inadmissible witnesses in violation of applicable precedent,

11   common sense, and fundamental fairness.  The law makes plain that Defendants cannot do what they

12   have done.  For the reasons set forth above and in CVT's Motion, CVT respectfully requests that the

13   Court (a) exclude McCune in his entirety, as well as all portions of Turner's proposed testimony

14   relying in any way on McCune's findings; (b) prohibit Turner for testifying to ultimate legal and

15   factual conclusions that are reserved for judge and jury; (c) rule that undisclosed witnesses Wyatt and

16   Cano may not testify at trial; and (d) direct Defendants to pay CVT's costs, including attorneys' fees,

17   incurred in connection with CVT's Motion.

18

19   Date:  April 21, 2015                    COLT / SINGER / BEA LLP

20

21                                          By: _____

22                                              Douglas W. Colt
                                                Renee B. Bea
23                                              Douglas S. Tilley
                                                *Attorneys for Clear-View Technologies, Inc.*

24

25

26

27

28

colt/singer/bea LLP