UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLEAR-VIEW TECHNOLOGIES, INC., ) | Case No. 5:13-cv-02744-BLF |
| ) | |
| Plaintiff, ) | **ORDER GRANTING-IN-PART** |
| ) | **PLAINTIFF'S MOTION FOR** |
| v. ) | **SANCTIONS** |
| ) | |
| JOHN H. RASNICK, et al., ) | **(Re: Docket No. 127)** |
| ) | |
| Defendants. ) | |

Deployment of "Crap Cleaner" software—with a motion to compel pending. Lost media with relevant documents. False certification that document production was complete. Failure to take any steps to preserve or collect relevant documents for two years after discussing this very suit. Any one of these transgressions by Defendants John H. Rasnick, J. Basil Mattingly, Will Rasnick, Parker Mattingly and M&R Solutions, LLC and their prior counsel might justify sanctions. Taken together, there can be no doubt.

The court GRANTS-IN-PART Plaintiff Clear-View Technologies, Inc.'s sanctions motion, as explained below.

## I.

Once upon a time, the federal courts debated exactly when the duty to preserve documents arises. No more. "The duty to preserve evidence begins when litigation is 'pending or reasonably

1

foreseeable.'  Thus, '[s]poliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'  This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation."[1]  At times, a defendant's duty to preserve arises when plaintiff's counsel provides a defendant with notice to preserve relevant evidence.[2]  However, a future litigant need not make such a request, "and a failure to do so does not vitiate the independent obligation of an adverse party to preserve such information" if the adverse party knows or should know of impending litigation.[3]

This case arises from Defendants' alleged conspiracy with certain former CVT employees to take over CVT or, failing that, to divert CVT's personnel, intellectual property and investors to a competing enterprise dubbed "Skunk Works."[4]  The target of the alleged conspiracy was to commercialize CVT's alcohol tracking product—the BarMaster.[5]

---

[1] *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (citing *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).  *See also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (applying the same standard)).

[2] *See Sampson v. City of Cambridge*, *Md.*, 251 F.R.D. 172 at 181 (D. Md. 2008).

[3] *Apple Inc. v. Samsung Electronics Co.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) (citing *Thompson v. U.S. Dept. of Housing and Urban Development,* 219 F.R.D. 93, 100 (D. Md. 2003)).  *See also United States ex rel. Berglund v. Boeing Co.,* 835 F. Supp. 2d 1020, 1049 (D. Or. 2011); *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011); *Morford v. Wal-Mart Stores, Inc.,* Case No. 2:09-cv-02251-RLH, 2011 WL 635220, at *3 (D. Nev. Feb. 11, 2011); *Carl Zeiss Vision Intern. GmbH v. Signet Armorlite, Inc.*, Case No. 07-cv-0894-DMS, 2010 WL 743792, at *14 (S.D. Cal. Mar. 1, 2010); *Rev 973 LLC v. Mouren-Laurens*, Case No. 98-cv-10690-AHM, 2009 WL 273205, at *1 (C.D. Cal. Feb. 2, 2009); *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1067-68 (N.D. Cal. 2006); *Performance Chevrolet, Inc. v. Market Scan Info. Sys.*, Case No. 04-cv-0244-BLW, 2006 WL 1042359, at *1 (D. Idaho Apr. 18, 2006). *Cf. Micron*, 645 F.3d at 1320; *Silvestri*, 271 F.3d at 590; *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

[4] *See* Docket No. 37 at ¶ 3.

[5] *See id.* at ¶¶ 3-4.

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

**United States District Court**
For the Northern District of California

As early as May 6, 2011, CVT threatened Defendants with litigation for interfering with CVT's operations.[6]  CVT's then-CEO Paul Mula made clear in text messages to John Rasnick and Basil Mattingly that he was prepared to sue them for trying to interfere with Clyde Berg's investment in CVT.  "[D]on't call my shareholders with your b.s.  That is [tortious] economic interference.  I will not accept this. . . . [K]eep it up and you'll find [yourself] in court[.]  Call Clyde again and I sue.  Mark my words."[7]  Mula wrote friendly and apologetic texts the next morning, but those messages did not retract anything he had said the night before.[8]

On May 22, 2011, John Rasnick anticipated that CVT might bring suit:  "what if Pauly [Mula] sues you for interference if you go without his blessing?  I signed documents when I bought my stock that precluded me from interfering with the BarMaster."[9]  When advised by one of his alleged co-conspirators that "we would get a Federal Court Injunction and get sued big time," he thereafter urged that:  "I think I would couch it that you 'will' or that you 'can' fix it, not that you are already working on it, so that Paul [Mula] has nothing to come after you for."[10]

In June 2011, Defendants discussed bringing their own claims against CVT, consulted counsel and discussed the possibility of litigation with other shareholders after millions of dollars they invested in CVT appeared to disappear without explanation.[11]  For example, on June 13, 2011, John Rasnick wrote to CVT investor and former employee Pam Behm regarding potential litigation

---

[6] *See* Docket Nos. 127-2, Ex. A, 127-3, Ex. B.

[7] Docket No. 127-2, Ex. A; *see also* Docket No. 127-3, Ex. B (Mula to Basil Mattingly:  "You or John calls Clyde again, I'll sue you for the rest of your life. . . . Stay Away. . . . Period.").

[8] *See* Docket No. 127-2, Ex. A ("John, good afternoon!  I am sending this message to you with the best intentions."); Docket No. 127-3, Ex. B ("Bas, I was very upset last night, plus the booze.  I apologize for the haste.  Very disappointed in this deal.  Not sure what to do at the moment.  [S]till love you, but not sure what to do at the moment.  I am pitching at the moment, be in touch later.").

[9] Docket No.127-1 at ¶ 5; Docket No. 127-4, Ex. C.

[10] Docket No. 127-1 at ¶¶ 7-8; Docket No. 127-7, Ex. F.

[11] *See* Docket No. 127-5, Ex. D at 3; Docket No. 127-7, Ex. F.

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

1   against CVT, noting that "I don't expect there to be anything to get, but the discovery process may

2   be useful."[12]  On June 24, 2011, John Rasnick wrote to the other Defendants, along with some of

3   CVT's investors:  "I think we need to consider joining Pam [Behm] in a joint legal action against

4   Paul and CVT.  I don't think this action will retrieve any of the money we have invested, but I do

5   think it will bring Paul [Mula] to the table much quicker. . . . I hate litigation as much as anybody,

6   but I don't think anything reasonable is going to come from Paul [Mula] until he absolutely has to

7   do it.  Actions can be filed and actions can be subsequently withdrawn."[13]

8           On January 6, 2012, CVT's counsel sent a written document preservation and litigation

9   hold notice "in anticipation of litigation" to all of CVT's shareholders, note holders and present and

10  former employees, including Defendants and Berg in the "bcc" field.[14]  CVT's preservation notice

11  specifically instructed recipients to preserve "any evidence you may possess, especially electronic

12  evidence, including communications sent or received by Defendants as well as materials regarding

13  CVT, Skunk Works, or any project or plan to replace or compete with CVT."[15] The preservation

14  notice advised that "[a] violation of the duty to preserve may itself be a crime, an independent tort,

15  and/or may result in discovery sanctions" including "an order that the jury may or should draw

16  adverse inferences against any party who has destroyed evidence in anticipation of litigation or the

17  entry of an adverse judgment against said party."[16]  John Rasnick responded by threatening his own

18  legal action, whereupon CVT's counsel advised him to seek counsel.[17]

---

[12] Docket No. 127-1 at ¶ 6; Docket No. 127-5, Ex. D.

[13] *See* Docket No. 127-7, Ex. F.

[14] Docket No. 130 at ¶ 12; Docket No. 130-1, Ex. A.

[15] *Id.*

[16] *Id.*

[17] *See* Docket No. 130 at ¶ 14; Docket No. 130-2, Ex. B; Docket No. 127-1 at ¶ 10; Docket No. 127-8, Ex. G.

4

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

On June 14, 2013, CVT filed this suit.[18]

On February 10, 2014, CVT served discovery requests.[19]  Defendants produced 48 pages in response—bringing their total production, including initial disclosure documents, to 117 pages in all—and swore under oath that they had no further documents to produce.[20]  Defendants' production contained no communications solely between Defendants, virtually no communications between Defendants and any co-conspirator identified in CVT's requests and none of the hundreds of pages of emails CVT had obtained from Defendants' alleged co-conspirators.[21]

On July 16, 2014, Defendants produced an additional 305 pages, notwithstanding their prior verifications that they had already produced all responsive documents.[22]  Defendants still failed to produce email communications or text messages among themselves or with any identified co-conspirator.  Defendants nevertheless reaffirmed "under penalty of perjury" that they had "no additional documents responsive to any requests made by CVT."[23]

CVT moved to compel further production, and on September 9, 2014, the court granted CVT's motion.  The court ordered that (i) Defendants appear by September 23 for depositions regarding "document preservation and production," and (ii) the parties meet and confer in order to submit to the court by September 30 "a plan to retain an independent consultant to do a limited forensic collection and analysis of the media associated with each named defendant."[24]

---

[18] *See* Docket No. 1.

[19] *See* Docket No. 62-1 at ¶ 8; Docket No. 62-2, Ex. C.

[20] *See* Docket No. 62-1 at ¶¶ 13-15, 17; Docket No. 62-2, Exs. G, J.

[21] *See* Docket No. 62-1 at ¶ 16.

[22] *See* Docket No. 74-1 at ¶ 7.

[23] Docket No. 127-1 at ¶ 13, Docket No. 127-9, Ex. H at ¶ 6.

[24] Docket No. 76.

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

The testimony at deposition revealed that the "[f]irst time" John Rasnick "took any steps" to protect information was "[o]nly after the lawsuit was filed against us . . . I deleted files on CVT . . . as I saw fit . . . up until the lawsuit."[25]  Regarding his failure to produce any communications with Joy Mackell, Rasnick testified that he "erased them all."[26]  Regarding his production of just one communication with Behm, he testified that he "[m]ust have erased all the rest of them."[27]  Regarding his limited production of text messages with Mula, he testified that "it's the only one I kept."[28]

Basil Mattingly testified that "I'm sure I have" deleted emails and text messages relating to CVT, BarMaster, M&R Solutions and Mula.[29]  He testified that he "delete[s] e-mails all day[]long. . . . [e]very day."[30]  Mattingly further admitted to not implementing any steps to make sure that documents relating to CVT were preserved, notwithstanding that he was aware of rules regarding document preservation.[31]

Will Rasnick admitted that since 2011, he has thrown away several iPhones, a laptop computer and an iPad he used to access relevant documents and email accounts, with no prior efforts to back up those sources, and that he discarded hard copy documents relating to M&R Solutions because "I would try not to have them."[32]

---

[25] Docket No. 127-1 at ¶ 15; Docket No. 127-10, Ex. I at 73:17-75:10, 92:4-93:10.

[26] Docket No. 127-10, Ex. I at 89:9-16.

[27] *Id.* at 87:16-88:23.

[28] *Id.*

[29] Docket No. 127-1 at ¶ 18; Docket No. 127-12, Ex. K at 75:11-76:10, 78:19-79:23.

[30] *Id.*

[31] *See id.*

[32] Docket No. 127-1 at ¶ 16; Docket No. 127-11, Ex. J at 15:11-23, 16:19-17:18:4, 20:20-21:20, 28:13-23, 29:16-31:7.

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

**United States District Court**
For the Northern District of California

1      Parker Mattingly denied taking any steps prior to June 2013 to prevent the loss of

2 documents.[33]

3      Defendants also described their search and collection practices.  For example, despite

4 CVT's document requests calling for emails, text messages and other written communications,

5 John Rasnick confirmed that he (a) reviewed only narrow and selected portions of his emails

6 accounts and computers, without running a single search across any medium; (b) did not search his

7 phones at all and (c) he made no attempt to search or recover deleted information.[34]  Parker

8 Mattingly failed to conduct a single search for documents relating to "Skunk Works" or

9 correspondence with particular individuals identified in CVT's document requests.[35]  Likewise,

10 Basil Mattingly confirmed that he did not search admittedly crucial media, such as his Outlook

11 account.[36]  Despite declaring under oath that they "reviewed each of their cell phones . . . for any

12 relevant documents,"[37] John Rasnick and Basil Mattingly admitted that they discarded several

13 devices and, moreover, that they did not know how to conduct necessary searches.[38]  Defendants

14 also testified that their prior counsel failed to monitor or participate in collection efforts.[39]

15      Meanwhile, on October 21, 2014, the Court selected the firm of Stroz Friedberg to perform

16 a forensic analysis of Defendants' media and email accounts, and otherwise adopted the parties'

---

[33] *See* Docket No. 127-1 at ¶ 19, Docket No. 127-13, Ex. L at 46:14-47:9, 50:11-51:6.

[34] *See* Docket No. 127-10, Ex. I at 18:12-19:19:3, 77:19-83:19, 93:22-94:14.

[35] *See* Docket No. 127-1 at ¶ 19, Docket No. 127-13, Ex. L at 46:14-47:9, 50:11-51:6.

[36] Docket No. 127-12, Ex. K at 83:5-8, 84:21-85:6.

[37] *See* Docket No. 127-1 at ¶ 13, Docket No. 127-9 Ex. H at ¶ 2.

[38] Docket No. 127-10, Ex. I at 93:22-94:14; Docket No. 127-12, Ex. K at 83:2-8.

[39] *See* Docket No. 127-10, Ex. I at 90:24-92:3 (Rasnick conducted his own collection without supervision, assistance or participation from counsel); Docket No. 127-12, Ex. K at 81:17-20, 87:9-25 (same); Docket No. 127-13, Ex. L at 51:7-13, 68:17-69:9 (same for himself and on behalf of Defendant M&R Solutions).

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

Joint Proposal Regarding Forensic Examination.[40]  The order called for Defendants to produce over 40 specified electronic media and email accounts for forensic imaging, failing which Defendants were required to provide a sworn declaration explaining why such media or account was not produced.[41]  The order also identified eleven "exemplary communications" of indisputable relevance to this litigation that the forensic examiner was instructed to search for on Defendants' media and accounts.[42]  Finally, the order set two deadlines.  By October 28, 2014, Defendants were to produce media to Stroz Friedberg and serve both an inventory of all media produced and declarations regarding unproduced media so that CVT "could verify that the scope of production was complete."[43]  By December 12, 2014, Stroz Friedberg was to report its findings to the parties.[44]

Stroz Friedberg ultimately found 2,593 relevant documents totaling 12,467 pages—over 12,000 pages more than Defendants had previously produced.[45]  Stroz Friedberg also determined that "four separate system optimization and computer cleaning programs were run" on Basil Mattingly's Dell Laptop.[46]  At least one of these programs, CCleaner, "can be used to wipe specific files and folders."[47]  These programs were loaded onto Basil Mattingly's laptop and executed on July 22, 2014—just six days after the filing of CVT's motion —and resulted in the deletion of

---

[40] *See* Docket No. 127-1 at ¶ 30; Docket No. 128-2, Ex. O; Docket No. 103.

[41] *See* Docket No. 103 at ¶¶ 2-3.

[42] *Id.* at ¶ 9.

[43] *See id.* at ¶¶ 14-16.

[44] *See id.*

[45] *See* Docket No. 128-7, Ex. T at § VI.

[46] *Id.* at § VIII-A.

[47] *Id.*

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

"over 50,000 files and forensic artifacts that Stroz Friedberg would otherwise have relied on to determine how the computer was used."[48]

Stroz Friedberg further reported that in late September 2012, the "My Documents," "Outlook Files" and "OUTLOOK Personal Files" were purged from Basil Mattingly's external hard drive.[49]  Basil Mattingly previously testified that his Outlook account would have contained a wealth of potentially valuable documents.[50]  However, given the purge, "the contents of these folders could not be searched for Potentially Relevant Data."[51]

In total, Stroz Friedberg found that, in addition to the tens of thousands of files purged by Basil Mattingly's wiping programs, Defendants deleted thousands more after they first became aware of potential litigation with CVT in May 2011.[52]

In accordance with the court's order, Defendants provided sworn declarations to explain why any media or accounts were not produced to the forensic examiner, and what efforts Defendants took to obtain access to such media or accounts.[53]  For example, John Rasnick declared he was unable to provide the forensic examiner with access to his jrasnick@summit-engr.com, jrasnick@jhrholdings.com or john@rasnickfamptr.com email accounts—each of which was used in the relevant period to communicate regarding CVT and the proposed "Skunk Works" venture— because he forgot the password.[54]  In addition, despite the fact that Defendants exchanged text

---

[48] Docket No. 128-7, Ex. T at §§ V-A, VIII-A (emphasis added).

[49] *See id*. at § V-A.

[50] *See* Docket No. 127-12, Ex. K at 84:21-85:6 (the Outlook account is "not on there anymore.  So if we can figure out how to turn it back on, that would be really great.  Because I used to keep really, really good notes in the Outlook world.").

[51] Docket No. 128-7, Ex. T at § V-A.

[52] *See id*. at § VII.

[53] *See* Docket No. 103 at ¶ 3.

[54] *See* Docket No. 127-1 at ¶ 42; Docket No 129-3, Ex. BB at ¶¶ 6-9; *see also* Docket No. 127-10, Ex. I at 10:21-11:15.

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

messages in 2011with each other and key witnesses such as Mackell, Hugh Simpson and Mula,[55] each Defendant testified and declared that that they lost or threw away multiple mobile devices.[56] Defendants similarly admitted to discarding additional media, including computers likely to contain potentially relevant information.[57]

In addition to deleted documents forensically recovered, the court-ordered production included a significant number of documents that Stroz Friedberg concluded were active and present on Defendants' media, despite Defendants' previous, repeated declarations under oath that they did not have any additional documents in their possession, custody or control.[58]  For example:

• Four copies of a May 7, 2011 email from John Rasnick to all Defendants stating what "has to happen next. . . .The current management must step aside and no longer have any control over operations. . . . Prepare a detailed budget and operational outline of what will be required to complete [the product]. . . . Form a new operating company, completely independent of CVT, to carry out the operation plan going forward. . . . Transfer those assets necessary to complete the operational plan, including hardware, software, and personnel who wish to join the effort, from CVT into the new operating company. . . . Once an accurate list of all stockholders . . . is compiled, hold a meeting [with all] present . . . the proposed operational plan going forward, and offer each stock (or options, warrants, etc.) in the new company in exchange for an agreement to let the new company go forward without interference."[59]

• Two copies of a May 22, 2011 email exchange wherein Basil Rasnick expresses Defendants' concern that CVT will sue "for interference" and then asking Ken Bailey if "work should go forward without Paul [Mula's] blessing? Can this be done legally in your opinion?" Bailey responded "NO we are not going to go behind Paul [Mula]'s back and do

---

[55] *See id.* at ¶ 45.

[56] *See* Docket No. 127-1 at ¶¶ 39-42; Docket No. 129, Ex. Y; Docket No. 129-1, Ex. Z; Docket No. 129-3, Ex. BB; *compare* Docket No. 127-12, Ex. K at 9:9-10:4 (Basil Mattingly used at least two iPhones since 2011) *with* Forensic Report at § III-A (Basil Mattingly produced one mobile device).

[57] *See* Docket No. 127-1 at ¶¶ 39-42; Docket No. 129, Ex. Y; Docket No. 129-1, Ex. Z; Docket No. 129-3, Ex. BB.

[58] *See* Docket No. 128-7, Ex. T at § VI.

[59] Docket No. 128-7, Ex. T at § VI-C and D, referencing Exemplary Communication I (Docket No. 127-1 at ¶ 35, Docket No. 128-6, Ex. S).

10

anything on our own. YES we would get a Federal Court Injunction and get sued big time."[60]

• A June 13, 2011 email to John Rasnick from Mackell stating "Hey John, [w]e've named the Skunk Works bar product POURology and registered its domain name.  Here's how we see the next 90 days of work."[61]

• Four copies of a June 13, 2011 exchange between Basil Rasnick, Berg, Behm and others regarding Rasnick's June 16, 2011 meeting with Berg "to go over the [Skunk Works'] operational plan and the budget in as much detail as possible."  Basil Rasnick:  "[w]e really need someone to get an up to date investor list. This is the group we should approach first about investing going forward.  Surely someone knows someone who can get this list. . . . It is also imperative [that] no one at CVT know of our trip."[62]

CVT now requests monetary sanctions, an adverse inference instruction and terminating sanctions.[63]

## II.

The court has jurisdiction under 28 U.S.C. § 1332.  The matter was referred to the undersigned pursuant to Fed. R. Civ. P. 72(a).

"Preclusive sanctions are within the court's discretion."[64]  Magistrate judges may issue monetary sanctions and adverse inference jury instructions for spoliation.[65]  Because a permissive

---

[60] Docket No. 128-7, Ex. T at § VI-D, referencing Exemplary Communication A (Docket No. 127-1 at ¶ 5, Docket No. 127-4, Ex. C).

[61] Docket No. 128-7, Ex. T at § VI-C, referencing Exemplary Communication H (Docket No. 127-1 at ¶ 35, Docket No. 128-5, Ex. R).

[62] Docket No. 128-7, Ex. T at § VI-C, referencing Exemplary Communication B (Docket No. 127-1 at ¶ 6; Docket No. 127-5, Ex. D).  Stroz Friedberg further confirmed that after it loaded collected documents onto a production database for Defendants' review, Defendants continued, and are continuing, to withhold certain of these "exemplary communications" on the ground that they are non-responsive.  *See* Docket No. 128-7, Ex. T at §§ VI-A through VI-D.

[63] *See* Docket No. 127.

[64] *See Apple Inc. v. Samsung Electronics Co.*, Case No. 5:11-cv-1846-LHK, 2012 WL 1595784, at *3 (N.D. Cal. May 4, 2012); (citing *Navellier v. Sletten,* 262 F.3d 923, 947 (9th Cir. 2011) ("Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of the discovery.").

[65] *See Apple Inc. v. Samsung Electronics Co.*, 888 F. Supp. 2d, 976, 985-86 (N.D. Cal. 2012) (citing *Herson v. City of Richmond,* Case No. 4:09-cv-02516-PJH, 2011 WL 3516162, at *2 (N.D.

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

adverse inference jury instruction "does not 'have an effect similar to those motions considered

dispositive' under § 636(b)(1)(A)," such an instruction "is not properly characterized as

'dispositive'"[66] and so is within the magistrate judge's authority.[67]

### III.

This court may issue sanctions for spoliation under two authorities.  When a discovery

order has been violated, absent substantial justification or injustice, the court must order

Defendants, counsel or both to pay the opposing party's reasonable expenses under Fed. R. Civ. P.

37, and may sanction further.[68]  Where Rule 37 does not apply, the court has additional discretion

under its inherent authority to respond to abusive litigation practices.[69]  Under either authority,

---

Cal. Aug. 11, 2011); *Io Grp. Inc. v. GLBT Ltd.,* Case No. 3:10-cv-1282-MMC, 2011 WL 4974337 (N.D. Cal. Oct. 19, 2011); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.,* Case No. 5:06-cv-3359-JF, 2009 U.S. Dis. LEXIS 62668 (N.D. Cal. July 2, 2009); *see also Keithley v. Homestore.com, Inc.*, Case No. 3:03-cv-04447-SI, 2008 WL 4830752 (N.D. Cal. Nov. 6, 2008).

[66] *Apple*, 888 F. Supp. 2d at 988-89; *See MOSAID Techs. Inc. v. Samsung Elecs. Co.*, Case No. A01-cv-4340-WJM, 2004 WL 2550309, at *2 (D.N.J. Oct. 1, 2004) ("Courts have recognized that even if a magistrate judge's order has the potential to materially affect the outcome of an issue, the order should still be reviewed under the more deferential standard."); *cf. Avila v. Olivera Egg Ranch, LLC,* Case No. 2:08-cv-02488-JAM, 2010 WL 7087074, at *1-2 (E.D. Cal. Feb. 18, 2010) (reviewing magistrate judge's adverse inference spoliation sanction for clear error).

[67] *See Apple*, 888 F. Supp. 2d at 988 (holding jury instruction sanctions are non-dispositive when the jury would be instructed that:  (1) the defendant failed to perform its discovery obligations; (2) the jury may presume the evidence destroyed was relevant and favorable to the plaintiff; and (3) the jury may, but need not, find this presumption determinative in reaching its verdict); *Maisonville v. F2 America, Inc.,* 902 F.2d 746, 747-48 (9th Cir. 1990) (finding monetary sanction imposed pursuant to Rule 11 are non-dispositive); *Grimes v. City and County of San Francisco,* 951 F.2d 236, 240 (9th Cir. 1991) (holding monetary sanctions imposed under Rule 37 are non-dispositive).

[68] *See* Fed. R. Civ. P. 37(b)(2) (authorizing a range of sanctions, from terminating sanctions to mandatory expenses and attorney's fees for "fail[ure] to obey an order to provide or permit discovery[.]"); *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, Case No. 05-cv-1516-RSWL, 2007 U.S. Dist. LEXIS 72953, at *16 (C.D. Cal. Sept. 18, 2007) ("For the discovery system to function properly, the costs of resisting discovery must be sufficiently great so that the benefits to be gained from sharp or evasive discovery practices are outweighed by the sanctions imposed when those practices are discovered.").

[69] *See Apple*, 881 F. Supp. 2d at 1135-36 (citing *Shepherd v. Am. Broad. Co., Inc.,* 62 F.3d 1469, 1474 (D.C. Cir. 1995) ("When rules alone do not provide courts with sufficient authority to protect

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

United States District Court
For the Northern District of California

1    sanctions may issue when the aggrieved party shows that "(1) the party having control over the

2    evidence had an obligation to preserve it when it was destroyed or altered, (2) the destruction or

3    loss was accompanied by a culpable state of mind, and (3) the evidence that was destroyed or

4    altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated

5    evidence."[70]  On this record, there is no doubt that all three prongs of this test are met.

6         ***First***, Defendants were on notice of foreseeable litigation well before spoliation occurred.

7    On or around May 6, 2011, upon learning of Defendants' discussions with investor Berg, Mula

8    text-messaged John Rasnick and Basil Mattingly regarding tortious interference with his

9    shareholders.  "[K]eep it up and you'll find [yourself] in court[.]  Call Clyde again and I sue[.]

10   Mark my words."[71]  "You or John calls Clyde again, I'll sue you for the rest of your life."[72]  While

11   Defendants protest that Mula later wrote apologetic and encouraging texts, Mula did not take back

12   his threat of litigation in any way, shape or form.[73]  As if to confirm that litigation was still

13   foreseeable, that same month, Defendants themselves openly discussed the litigation ramifications

14   of their actions in explicit detail.[74]  This call is not even close.

15

16

17

18   their integrity and prevent abuses of the judicial process, the inherent power fills the gap.")); *Apple*,
     888 F. Supp. 2d at 987 ("Sanctions under a court's 'inherent powers must be exercised with
19   restraint' and should be appropriate to the conduct that triggered the sanction.") (citing *Chambers
     v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991)); *see also Micron Technology*, 645 F.3d at 1326
20   (reviewing a choice of sanctions for an abuse of discretion).

21   [70] *Apple*, 881 F. Supp. 2d at 1138; *Slep-Tone Entertainment Corp. v. Granito*, Case No. 12-cv-298-
22   TUC, 2014 U.S. Dist. LEXIS 2023, at **7-8 (D. Ariz. Jan. 8, 2014); *see also Zubulake v. UBS
     Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004).
23
     [71] Docket No. 127-2.
24
25   [72] Docket No. 127-3.

26   [73] *See* Docket Nos. 127-2, 127-3.

27   [74] *See* Docket No. 127-4, Ex. C at ¶ 5; Docket No. 127-7, Ex. F at ¶¶ 7-8.  *See also Rimkus
     Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 641 (S.D. Tex. 2010) (finding duty
28   triggered where party discussed bringing suit and sought advice of counsel); *see also PersonalWeb
     Techs., LLC v. Google Inc.*, Case No. 5:13-cv-01317-EJD, 2014 U.S. Dist. LEXIS 18593, at *9

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Second**, Defendants' spoliation occurred with the required culpable mindset.  Defendants were on notice litigation was foreseeable, and not only did they take no reasonable steps to preserve relevant evidence, but they also affirmatively destroyed it.[75]  They failed to implement a hold policy.[76]  They deleted thousands of relevant emails, discarded several phones, laptops, iPads and hard-copy documents—including Basil Mattingly's "my Documents," Outlook Files," and "Outlook Personal Files."[77]  They only began taking steps to preserve or collect potentially relevant materials in June or July 2013.[78]  Even after that, "four separate system optimization and computer cleaning programs were run" on Basil Mattingly's Dell Laptop six days after CVT filed its motion, resulting in the deletion of "over 50,000 files and forensic artifacts that Stroz Friedberg would otherwise have relied on to determine how the computer was used."[79]  When Defendants were asked and compelled to produce documents, they failed to conduct a reasonable or diligent search and they misrepresented to the court under oath about their preservation and collection efforts.[80]

---

(N.D. Cal. Feb. 13, 2014) ("[T]he Court finds that litigation was reasonably foreseeable so as to trigger a duty to preserve evidence" as soon as the party acquired a patent and could "pull the trigger" because the party had been "openly discussing litigation").

[75] *See, e.g.*, *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (affirming terminating sanctions where a party deleted 2,200 digital files); *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1006-07 (D. Ariz. 2011) (sanctions appropriate upon finding of gross negligence, willfulness or bad faith); *Slep-Tone*, 2014 U.S. Dist. LEXIS 2023, at *11 (entering summary judgment as sanction where "Defendant acted affirmatively to use specialized software to wipe the drives, instead of performing a standard deletion.  Defendant's conduct precluded the files from being recovered and from ascertaining the last date a file was accessed or the file was deleted.").

[76] *See* Docket No. 74-2 at ¶¶ 3, 4.

[77] *See* Docket No. 127 at 7-8; *See* Docket No. 128-7 at §§ V-A, VII.

[78] *See* Docket No. 74-2 at ¶ 1.

[79] *See* Docket No. 128-7 at V-A, VII-A, and VII-A.

[80] *See* Docket No. 127 at 2; *e.g.* Docket No. 62-1 at ¶¶ 13-15, 17; Docket No. 62-2 at Exs. G, J.

14

And as of the hearing on this motion, Defendants still continued to claim "[a]ll relevant, responsive documents have been produced."[81]  Defendants' culpable state of mind is unmistakable.

*Third*, as shown by Stroz Friedberg's forensic examination, Defendants failed to produce thousands of documents that contained key terms that the parties designated as relevant to the litigation.[82]  For example, Defendants did not disclose documents that discussed Berg's decision to withhold his $3.5 million investment in CVT, CVT's breach of contract defenses or Defendants' contribution to communications CVT recovered from third parties.[83]  Even without such examples of recovered documents, the law presumes that spoliated evidence "goes to the merits of the case" and "was adverse to the party that destroyed it."[84]  The court "declines to give Defendants the benefit of the doubt," especially when Defendants have affirmatively concealed their misconduct.[85]

In sum, sanctions are warranted.  The only question is what kind.

As for monetary sanctions, where there is no substantial justification or injustice and the moving party met and conferred in advance, the court must award CVT its expenses and fees in this discovery dispute under Fed. R. Civ. P. 37(b)(2)(C).[86]  "Rule 37 sanctions are mandatory and must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a

---

[81] *See* Docket No. 134 at 4.

[82] *See* Docket No. 128-7, Ex. T at § I.

[83] *See* Docket No. 127-1 at ¶ 45; Docket No. 129-4, Ex. CC; Docket No. 129-5, Ex. DD.

[84] *See, e.g., Dong Ah Tire & Rubber Co.*, 2009 U.S. Dis. LEXIS 62668, at *10.

[85] *Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, Case No. 3:11-cv-5639-EMC, 2014 U.S. Dis. LEXIS 19420, at **20-21 (N.D. Cal. Feb. 14, 2014).

[86] *See, e.g.*, *FormFactor, Inc. v. Micro-Probe, Inc.*, Case No. 4:10-cv-3095-PJH, 2012 U.S. Dist. LEXIS 62233, at *26027 (N.D. Cal. May 3, 2012).

15

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

United States District Court
For the Northern District of California

deterrent."[87]  Rule 37's justification and injustice exceptions plainly do not apply and CVT's

attempts to meet and confer on this matter were more than sufficient.[88]  CVT therefore shall

receive its costs and attorneys' fees incurred in connection with (i) CVT's motion to compel; (ii)

CVT's preparation for and taking of Defendants' spoliation depositions; (iii) negotiating forensic

examination; (iv) CVT's efforts to secure Defendants' compliance with the court's discovery

orders, including for disclosures made after CVT's motion to compel and (v) this motion for

sanctions.[89]  Defendants and their prior counsel[90] therefore are jointly and severally liable for the

following fees, which the court finds reasonable in light of the extraordinary effort required to

uncover this widespread abuse:

| Biller | Hours | Rate | Total |
|--------|-------|------|-------|
| Douglas Tilley | 277.4 from motion to compel to motion for sanctions<br>+ 30 for reply<br>= 307.4 hours + sanctions hearing | $425/hour | $130,645 |
| Renee Bea | 73 from motion to compel to motion for sanctions<br>+ 5 for reply<br>= 78 hours + sanctions hearing | $550/hour | $42,900 |
| Doug Colt | 59.5 from motion to compel to motion for | $550/hour | $38,775 |

[87] *Wingnut*, 2007 U.S. Dist. LEXIS 72953, at *54.

[88] *See* Docket No. 62-1 at ¶¶ 18-28.

[89] *Cf. Surowiec*, 790 F. Supp. 2d at 1011.

[90] Defendants' prior counsel also must be sanctioned for improperly certifying Defendants'
discovery responses, and for subsequently failing to intervene even after "obvious red flags" arose,
such as Defendants' failure to produce incriminating documents CVT obtained from their third
parties.  *See Jackson Family Wines*, 2014 U.S. Dist. LEXIS at *10; (finding sanctions appropriate
in light of failure to produce emails or other documents produced by others) *see also, e.g., Ober v.
County of L.A.*, Case No. 10-10032-DMG, 2014 U.S. Dist. LEXIS 78027, at **20-21 (C.D. Cal.
Mar. 27, 2014) (finding sanctions are "mandatory under Rule 26(g), which requires that counsel
make a reasonable investigation and effort to certify that the client has provided all information and
documents available to it which are responsive to a discovery request"); *Carrillo v. Schneider*,
Case No. 11-cv-8557-CAS, 2012 U.S. Dist. LEXIS 146903, at *51 (C.D. Cal. Oct. 12, 2012);
*Wingnut*, 2007 U.S. Dist. LEXIS 72953, at **54-55 (in addition to Rule 37, "substantial" monetary
sanctions against counsel are "likewise mandatory under Rule 26(g).").

16

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

| | | |
|---|---|---|
| sanctions<br>+ 11 for reply<br>= 70.5 hours | | |
| | | **$212,320** [91] |

As for additional sanctions, CVT seeks an adverse inference instruction as well as outright terminating sanctions. "Like many other sanctions, an adverse inference instruction can take many forms . . . ranging in degrees of harshness."[92] The degree of harshness should be dictated by the "nature of the spoliating party's conduct—the more egregious the conduct, the more harsh the sanction."[93] "In its most harsh form, when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain facts are deemed admitted and must be accepted as true. At the next level, when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption."[94] At the other end of the spectrum, "the least harsh instruction permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party. If it makes this presumption, the spoliating party's rebuttal evidence must then be considered by the jury, which must then decide whether to draw an adverse inference against the spoliating party."[95]

CVT requests the adverse inference "that all Defendants conspired to interfere with CVT's relationship with investor [Berg]; undertook overt acts in furtherance of the same; and did thereby prevent Berg from investing in CVT."[96] They request at least a "mandatory presumption" in CVT's favor and that the jury be instructed that CVT's tortious interference allegations "are

---

[91] CVT did not provide a declaration on costs or fees for its attendance at the sanctions hearing.

[92] *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities*, 685 F. Supp. 2d 456, 470 (S.D.N.Y 2010).

[93] *Id.*

[94] *Id.*

[95] *Id.*

[96] *See* Docket No. 130-3 at 3.

17

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

United States District Court
For the Northern District of California

deemed admitted and must be accepted as true."[97]  CVT also requests an adverse inference on any claims the court does not terminate, encompassing, for example, Defendants' allegations of CVT's breach of contract.[98]

In its determination, the court must consider the degree of Defendants' fault; the degree of prejudice to CVT and whether a lesser sanction will avoid substantial unfairness to Defendants.[99] Considering these factors, the court finds that a permissive adverse instruction is justified.

*First*, as addressed above, Defendants were highly at fault.  After being on notice, they knowingly and willfully discarded and withheld relevant evidence.  They did not implement a hold or monitoring policy and continue to claim they have produced all relevant documents.

*Second*, the degree of prejudice to CVT is high.  CVT cannot access potentially critical evidence to supports its claims and defenses.  CVT was forced to depose Berg before receiving John Rasnick and Basil Mattingly's emails to Berg saying they "kept you from giving CVT another $3.5mm."[100]  Defendants also denied CVT the chance to discover and show that any breach of covenant by CVT was excused by Defendants' own acts.[101]

*Third*, any prejudice to Defendants would not be substantially unfair.  Not only did Defendants withhold documents, but they also discarded relevant evidence.

---

[97] *See Apple*, 881 F. Supp. 2d at 1150-51.

[98] *See* Docket No. 145 at 6.

[99] *See* Fed. R. Civ. P. 37; *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008.

[100] *Cf. Wingnut*, 2007 U.S. Dist. LEXIS 72953, at **42-43 (finding prejudice where defendant produced "less than forty percent" of its full production prior to key fact depositions).

[101] *See, e.g., Leon*, 464 F.3d at 959; *Carrillo*, 2012 U.S. Dist. LEXIS 146903, at *45.

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

All this warrants the adverse instruction that the unproduced material may be deemed to support CVT's contentions.[102]  The court orders the jury be instructed as follows:

> Defendants have failed to prevent the destruction and loss of relevant evidence for CVT's use in this litigation.  This is known as the "spoliation of evidence."

> I instruct you, as a matter of law, that Defendants failed to preserve evidence after its duty to preserve arose.  This failure resulted from its failure to perform its discovery obligations.

> You also may presume that CVT has met its burden of proving the following two elements by a preponderance of the evidence: *first,* that *relevant* evidence was destroyed after the duty to preserve arose.  Evidence is relevant if it would have clarified a fact at issue in the trial and otherwise would naturally have been introduced into evidence.  And *second,* the lost evidence was favorable to CVT.

> Whether this finding is important to you in reaching a verdict in this case is for you to decide.  You may choose to find it determinative, somewhat determinative or not at all determinative in reaching your verdict.[103]

With respect to terminating sanctions, CVT requests a recommendation that Defendants' counterclaims be dismissed, and judgment of liability in favor of CVT on CVT's first, second and third causes of action.[104]  In a determination of terminating sanctions, the court must weigh the public's interest in speedy resolution of litigation; the court's need to manage its docket; the risk of

---

[102] *See, e.g., Apple*, 888 F. Supp. 2d at 998.  *See also Nursing Home Pension Fund*, 254 F.R.D. at 565 ("[I]t is impossible to know whether additional unproduced emails were also deleted or not turned over[,]" (b) the spoliator might seek to argue "that he never actually read or received an email that was sent to him," and (c) the Court cannot exclude the possibility that the spoliator "created a relevant document that was not produced by another custodian [] because the other custodian never received it"); *Jackson Family Wines*, 2014 U.S. Dist. LEXIS 19420 at *25.

[103] A permissive rather than mandatory instruction is sufficient given the strong favor public policy places on determining a case on the merits.  CVT still has the "ability to go to trial," *See Leon*, 464 F.3d at 959, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386 (9th Cir. 2010), and a jury should be permitted to make the first call.  *See also Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 555 (6th Cir. 2010) ("[A]n adverse inference [sanction for spoliation of evidence] is usually only permissive for the factfinder, not mandatory") (citing *Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1158-59 (1st Cir.1996)); *Arch Ins. Co. v. Broan-NuTone, LLC,* 509 F. App'x 453, 459 (6th Cir. 2012) (same); *Dae Kon Kwon v. Costco Wholesale Corp.,* 469 F. App'x 579, 580 (9th Cir. 2012) ("A fact finder may draw an inference against any party that destroys or despoils evidence, but that inference is permissive rather than mandatory.").

[104] *See* Docket No. 130-3 at 2-4.

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

prejudice to CVT; the public policy favoring disposition of cases on their merits and the availability of less drastic sanctions.[105]  While the court "need not make explicit findings regarding each of these factors," a finding of "willfulness, fault, or bad faith" is required to impose terminating sanctions.[106]

Defendants have caused over a year of needless delay and expense in frustrating discovery. Judge Freeman's docket management was affected:  indeed, she stayed discovery and extended the case schedule.[107]  CVT is prejudiced, as discussed above.[108]  But public policy strongly favors the disposition of cases on the merits,[109] and less drastic sanctions are sufficient and available in the form of monetary sanctions and an adverse jury instruction, as addressed above.  As a result, although the court finds Defendants acted in bad faith, in light of public policy and the sufficiency of monetary sanctions and an adverse jury instruction, the court declines to recommend terminating sanctions.

A final point.  The court is informed that, in violation of this court's order that they pay Stroz Friedberg's fees,[110] Defendants have stiffed on the bill.  Defendants shall show cause why they should not face further sanctions for this failure.

## IV.

CVT's motion for sanctions is GRANTED-IN-PART.  While CVT is not entitled to terminating sanctions or a mandatory inference instruction, CVT is entitled to monetary sanctions

---

[105] *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

[106] *See Leon*, 464 F.3d at 958.

[107] *See* Docket No. 111.

[108] *See, e.g., Apple*, 888 F. Supp. 2d at 998.

[109] *See, e.g., Leon*, 464 F.3d at 951, 958.

[110] *See* Docket No. 102 at ¶ 18; Docket No. 103 at 1.

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS

and a permissive adverse jury instruction that allows the presumption that Defendants' spoliated

documents favor CVT.  Defendants shall show cause as directed above no later than May 20, 2015.

**SO ORDERED.**

Dated:  May 13, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No. 5:13-cv-02744-BLF
ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SANCTIONS