UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLEAR-VIEW TECHNOLOGIES, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN H. RASNICK, et al.,<br><br>    Defendants. | Case No. 13-cv-02744-BLF<br><br>**ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. JONATHAN NEUBERGER**<br><br>[Re: ECF 160, 170] |

On May 28, 2015, the Court heard oral argument on Defendants' motion to exclude the testimony and expert report of Plaintiff's proposed expert, Dr. Jonathan Neuberger, which values Plaintiff CVT, as of June 17, 2011, at $88.7 million. *See* Neuberger Report, ECF 153-4 at ¶ 36. For the reasons below, the Court DENIES the motion.

**I.  LEGAL STANDARD**

Federal Rule of Evidence 702 provides that a qualified expert may testify at trial if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." In *Kumho Tire Co., Ltd. v. Carmichael*, the Supreme Court clarified that this gatekeeping obligation applies not only to scientific testimony but to all expert testimony. 526 U.S. 137, 147 (1999).

In making its findings, the district court must address the soundness of the expert's

methodology, not the correctness of his or her conclusions. *See Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d, 457, 463 (9th Cir. 2014). The district court's duty is to "exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Id.* (internal quotation marks and citation omitted). The district court must take care not to act as a fact finder, *see Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010) ("[T]he district judge is a gatekeeper, not a fact finder."), because the Court's "role as a gatekeeper is not designed to serve as a replacement for the adversary system." Fed. R. Evid. 702, 2000 Adv. Comm. Notes. "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* at 565.

## II. DISCUSSION

Defendants do not challenge Dr. Neuberger's credentials or qualifications; rather, Defendants argue that the assumptions on which Dr. Neuberger bases his opinions are so speculative as to be unreliable, and thus inadmissible under *Daubert* and Rule 702.[1]

To reach his valuation of CVT, Dr. Neuberger examined CVT's business plans, financial statements, and financial projections produced by the company prior to June 2011, including a report from a third-party valuation firm called Cronkite & Kissel. *See* Neuberger Report ¶ 25; *see also* Neuberger Supp. Decl., ECF 176-8 at ¶ 14.[2] To render sales projections for CVT's product The BarMaster, which serve as the backbone for his valuation estimate of the company, Dr. Neuberger made several assumptions: first, he assumed that CVT would "book no revenue" in 2011, and that its sales in 2012 would be limited to only "those customers that had placed preliminary orders at the March 2011 Las Vegas Nightclub and Bar trade show." *Id.* at ¶ 26. Then, "assuming the enormous size of the potential market identified by CVT's market research," Dr. Neuberger projected sales of The BarMaster to increase over the first five years to make up five

---

[1] A district court has "broad latitude to determine the appropriate form of the [*Daubert*] inquiry." *Barabin* at 463. Though pretrial *Daubert* hearings are commonly used, they are not required. *See id.* Here, neither party requested a *Daubert* hearing. The Court therefore bases its decision on this motion on the written record and counsel's oral argument.

[2] Defendants moved *in limine* to exclude this supplemental declaration, which the Court denied. *See* ECF 214 at 7-8.

percent of CVT's target market, with one percent yearly annual revenue growth thereafter. *See id.*

Defendants' motion asserts that these assumptions, specifically that all the 2011 non-binding orders placed at the Las Vegas trade show would materialize into binding sales, are so wildly speculative, so "pie-in-the-sky," as to render Dr. Neuberger's opinions unreliable. *See* Defs.' Mot., ECF 170 at 18-19.

District courts across the country have repeatedly held that an economic expert may be excluded from testifying under *Daubert* when the "expert's testimony rests on faulty assumptions." *See, e.g.*, *Total Containment, Inc. v. Dayco Prods., Inc.*, 2001 WL 1167506, at *4 (E.D. Pa. Sept. 6, 2001) ("Nothing requires a court to accept an opinion tied to existing data only through an expert's 'ipse dixit.'"); *see also Fail-Safe LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 876-82 (E.D. Wisc. 2010) ("There is a fine line between a court finding that proffered expert testimony is 'unpersuasive' (and capable of being submitted to a jury) and when a court concludes that evidence is wholly 'unreliable' (and properly excludable under *Daubert*)."). This is because district courts, in general, "should avoid passing judgment on the 'factual underpinnings of the expert's analysis and the correctness of the expert's conclusions." *Tucker v. SmithKline Beecham Corp.*, 701 F. Supp. 2d 1040, 1055 (S.D. Ind. 2010). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*

For the reasons below, the Court finds that although Defendants' motion identifies a number of ways in which Dr. Neuberger could be cross-examined by Defendants, Defendants have not shown that his opinions are so "unreliable" as to necessitate exclusion under Rule 702.

Dr. Neuberger's opinion of CVT's future sales projections, the sales orders placed at the 2011 Las Vegas trade show, relies on specific expressions of interest made by third parties regarding purchasing The BarMaster. These numbers are not made up out of whole cloth, but rather are based on clear indicia of demand for the product. Though these 2011 orders were non-binding, and a factfinder may find *unpersuasive* the assumption that all of these orders would manifest into binding sales, Dr. Neuberger's foundation is not *so* unreliable as to be inadmissible. This is distinguishable from the expert report excluded in *Fail-Safe*, on which Defendants heavily

rely. In that case, the expert based his sales projections on a single PowerPoint slide statement, made by his client, that the "company *hoped* to have 350k . . . Target Units as the starting point for how many [units] would be on the market in the first year and a half." 744 F. Supp. 2d at 887-88 (emphasis added). Here, Dr. Neuberger used as his baseline actual expressions of interest from possible purchasers of The BarMaster, not mere expressions of corporate hope. Defendants may cross-examine Dr. Neuberger as to his presumption that *all* of those non-binding orders would manifest into sales, but they may not exclude his report on this ground.

The remaining challenges Defendants make to Dr. Neuberger's assumptions fare no better. Defendants assert that Dr. Neuberger improperly assumed that The BarMaster could be completed, that CVT would implement a business plan to bring its product to market, and that CVT could develop a "more efficient" version of The BarMaster. *See* Defs.' Mot. at 13, 18. Defendants claim that these assumptions are untenable because CVT did not have a working version of The BarMaster as of June 17, 2011 – the date on which Dr. Neuberger valued the company to be worth $88.7 million. Whether The BarMaster worked, however, is a factual dispute in this litigation – Plaintiff in fact contends that it successfully installed The BarMaster at a Roanoke, Virginia establishment called 202 Market. Pl.'s Opp., ECF 176 at 13. As the Advisory Committee Notes to Rule 702 make clear, it is improper for the Court to exclude an expert's testimony based on "the ground that the court believes one version of the facts and not the other." None of these three grounds meet the high bar to exclude expert testimony based on faulty assumptions.

Defendants also take issue with Dr. Neuberger's assumptions that there was a "massive market" for The BarMaster, and that CVT would make international sales of the product. *See* Defs.' Mot. at 15-18. Dr. Neuberger, however, provides support for these assumptions in his expert report through his analysis of CVT's market competitors and studies of the domestic and international market for The BarMaster. *See* Neuberger Report ¶¶ 27-29. Though Dr. Neuberger posits that CVT would become a market leader in its industry through sales of The BarMaster, he has supported these assumptions with sufficient data.

Finally, Defendants challenge Dr. Neuberger's assumption that CVT is presently valuable. Defs.' Mot. at 18. Dr. Neuberger assumes that the outstanding 60 million shares of the company,

4

which has not been dissolved, would be "potentially valuable if the company is able to restart its operations." Neuberger Report at ¶ 41. He gives each stock the nominal value of $0.01, which puts the present value of the company at $600,000. *Id.* Defendants contend that this means "an individual can start a company, arbitrarily choose the number of 100 million shares of stock, and Neuberger's methodology would value that entity at $1 million." Defs.' Mot. at 18. Defendants, however, point to no evidence that the number of outstanding shares is arbitrary, and Dr. Neuberger states that CVT is "potentially valuable" *were it able to restart operations*. Defendants may cross-examine Dr. Neuberger on this point, but have not shown that it is so speculative as to be unreliable.

Defendants make one additional argument that the Court briefly addresses here. Defendants claim that Dr. Neuberger did not independently verify the information provided to him by CVT, and that an economic expert can only rely on data provided by the client when the expert engages in such independent verification. Defs.' Mot. at 19. Dr. Neuberger provided the Court with a supplemental declaration, ECF 176-8, in which he declares that he considered not only materials produced by CVT, but also third party analyses, including one performed by valuation firm Cronkite & Kissel, in reaching his valuation. *Id.* at ¶ 14. Though Defendants are correct that an expert may not rely merely on the self-serving projections of his client, *see, e.g.*, *Zenith Elecs. Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir. 2005), the Court finds that Dr. Neuberger did not rest his valuation on CVT's mere "say-so," but rather engaged in his own independent analysis of this data, consistent with his obligations as an expert under Rule 702 and *Daubert*.

### III. ORDER

For the foregoing reasons, Defendants' motion to exclude the expert report and testimony of Dr. Jonathan Neuberger is DENIED.

**IT IS SO ORDERED.**

Dated: June 2, 2015

_____
BETH LABSON FREEMAN
United States District Judge

5