**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CLEAR-VIEW TECHNOLOGIES, INC., <br><br>  Plaintiff, <br><br> v. <br><br> JOHN H. RASNICK, et al., <br><br>  Defendants. | Case No. 13-cv-02744-BLF <br><br> **ORDER:** <br> **(1) GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE THE EXPERT REPORT OF JAMES A. TURNER AND EXCLUDE HIS TESTIMONY;** <br> **(2) GRANTING PLAINTIFF'S MOTION TO STRIKE THE EXPERT REPORT OF EARL MCCUNE AND EXCLUDE HIS TESTIMONY** <br><br> [Re: ECF 153] |

On October 30, 2014, the Court modified the schedule in this case with regard to expert discovery. The schedule required the parties to disclose their initial experts and exchange expert reports no later than February 17, 2015; disclose rebuttal experts and exchange rebuttal expert reports no later than March 17, 2015; and set an expert discovery cutoff date of April 14, 2015. *See* ECF 111 at 2 (adopting Plaintiff's proposed schedule, at ECF 105-6, with minor modifications).

On February 17, 2015, Plaintiff produced to Defendants the expert report of Dr. Jonathan Neuberger. Dr. Neuberger's report set forth his expert opinions regarding Plaintiff's valuation on June 17, 2011, prior to the alleged misconduct of Defendants that gives rise to this suit. Defendants did not produce an initial expert report by this date. But on March 17, 2015, the last day to disclose and exchange rebuttal reports, Defendants timely disclosed the rebuttal expert report of James A. Turner, which professed to rebut Dr. Neuberger's valuation of CVT. The Turner Report included as an exhibit an additional report by Dr. Earl McCune entitled "Analysis of Failed Technology Utilized by Clear-View Technologies, Inc." See ECF 153-6 Exh. B. Dr. McCune, a specialist in wireless communications and radio frequency technology, set forth in this

report his opinion that the radio frequency system employed by CVT's product The BarMaster was "fatally flawed." *See id.* at 4.

Plaintiff now moves to strike the entirety of the McCune Report and portions of the Turner Report, as well as exclude their related testimony at trial, on several grounds. First, Plaintiff seeks to strike the McCune Report for three reasons: (1) McCune's disclosure as an expert was untimely because his opinions are affirmative expert opinions rather than rebuttal opinions; (2) the Report exceeds the scope of authorized rebuttal; and (3) Defendants cannot show that the failure to disclose McCune was substantially justified or harmless. Plaintiff further seeks to prohibit Turner from relying on the McCune Report in his own testimony and report, and also asks the Court to strike several improper arguments and conclusions of fact and law from the Turner Report.

The Court heard oral argument on this motion at the parties' pretrial conference on May 28, 2015. Having considered the written and oral arguments of the parties, as well as the governing law, the Court GRANTS Plaintiff's motion to strike the McCune Report in its entirety, and GRANTS IN PART Plaintiff's motion to strike portions of the Turner Report.[1]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs parties' disclosure obligations. The Rule demands that parties "make [their] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(1)(D). A party need not disclose an expert within the deadline for initial expert reports, and can instead disclose an expert as a "rebuttal expert," when the expert's testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness." *R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011). "The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006).

---

[1] Plaintiff also seeks its fees and costs related to bringing this motion. The Court DENIES this request. *Cf. Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting that the district court has "wide latitude" to issue sanctions under Rule 37(c)). Here, the Court finds that excluding Dr. McCune from testifying and striking his Report is a sufficient sanction for Defendants' failure to comply with Rule 26.

2

If the rebuttal expert's testimony is offered, however, to "contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything close to one." *Amos v. Makita U.S.A.*, 2011 WL 43092, at *2 (D. Nev. Jan. 6, 2011) (citing *In re Apex Oil Co.*, 958 F.2d 243, 245 (8th Cir. 1992)); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-06 (9th Cir. 2001) (affirming the trial court's exclusion of an expert who was improperly disclosed as a rebuttal expert); *cf. Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. App'x 496, 498-99 (9th Cir. 2009). Although a defendant need not put forth expert opinions to challenge affirmative theories on which the plaintiff bears the burden of proof, such as damages, a defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s). *See, e.g.*, *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991).

A party that, without substantial justification, fails to properly disclose information as required by Rule 26(a) may not "unless such failure is harmless, [] use as evidence at trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). "The sanction is *automatic and mandatory* unless the sanctioned party can show that its violation . . . was either justified or harmless." *R & O Constr.* at *3 (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)) (emphasis added).

**III.   DISCUSSION**

**A.     The McCune Report**

It is undisputed that McCune was not disclosed prior to the Court's February 17, 2015 deadline to disclose initial expert reports. As such, the McCune Report survives only if it is properly considered rebuttal. *See* Fed. R. Civ. P. 37(c)(1); *R & O Constr.* at *3.

Defendants make several arguments in an attempt to save the McCune Report. First, Defendants contend that the McCune Report is "undoubtedly within the permissible scope of rebuttal," because it discusses the "same subject matter" as the Neuberger Report offered by Plaintiff. *See* Opp., ECF 173 at 9, 11 ("The McCune Findings are set forth strictly for purposes of Turner's valuation of CVT as of June 17, 2011. The unfeasible BarMaster product contributed to Turner's valuation of CVT as being worthless."). Second, Defendants argue the McCune Report

3

rebuts Dr. Neuberger's assumptions that The BarMaster could be "finished" and placed on the market as a viable product. *See* Opp. at 12 ("Having opined that CVT could complete the BarMaster, and having opined that the BarMaster possessed certain desirable features, CVT cannot now prevent Defendants from producing relevant, admissible rebuttal evidence."). Third, Defendants argue that the McCune Report is "properly relied on" by Turner in his expert report because "[f]or valuation analysts, the use of consultants is a widely-held custom and practice, one that is permitted under accounting guidelines and case authority." Opp. at 13. Fourth, Defendants argue that the McCune Report must be stricken because it relies almost exclusively on the inadmissible hearsay testimony of three third-party witnesses (Messrs. Cano, Wyatt, and Simpson) and Defendant Parker Mattingly. *See* Pl.'s Mot. at 15-19. The Court considers each of these arguments in turn, and finds them unpersuasive.

### 1. The McCune Report is Not a Rebuttal Expert Report

Defendants' first and second arguments, that the McCune Report opines on the "same subject matter" as the Neuberger Report and rebuts the Neuberger Report's conclusion that The BarMaster was a viable product, are really one in the same: Defendants contend that McCune's Report is properly considered rebuttal. Defendants are incorrect, however, for several reasons.

First, the sum and substance of Dr. McCune's Report, that The BarMaster did not work, speaks directly to Defendants' affirmative defenses and counterclaims, on which Defendants bear the burden of proof. A review of Defendants' Amended Answer, ECF 81, makes this clear. Defendants' nineteenth affirmative defense states that "Plaintiff has breached the contracts alleged in the First Amended Complaint by *failing to bring a viable product into the market*." Am. Answer, ECF 81 at 19. Defendants further assert a breach of contract counterclaim, alleging that Plaintiff breached the terms of the parties' distribution agreement by "failing to manufacture or cause to be manufactured, promote and sell the product, and to *develop into a successful production for distribution*" The BarMaster. *See id.* at 21. Defendants bear the burden of proof as to all elements of this affirmative defense and counterclaim – because the McCune Report includes extensive expert opinion as to the workability and viability of The BarMaster, the report speaks directly to an issue on which Defendants bear the burden of proof, and cannot be properly

4

1  construed as a rebuttal report. *See, e.g.*, *R & O Constr.* at *3.

2  A review of Defendants' initial discovery disclosures shows that Defendants recognized their burden to produce *initial* expert testimony as to these affirmative claims. In September 2014, Defendants indicated in their initial expert disclosures that they intended to offer expert testimony regarding the technical feasibility of The BarMaster. *See* Tilley Decl., ECF 153-3 at ¶ 2 (a copy of Defendants' initial expert disclosures, which disclosed that Defendants "may rely upon expert testimony at the time of trial on the following topics: (1) Scope and calculation of damages sought by Plaintiff; (2) Status of the BarMaster product during the relevant time period, *including assessment of feasibility for mass production for purposes of distribution and sales*") (emphasis added). The disclosure deadline passed for the parties to disclose their affirmative experts on "all issues on which [the] disclosing party bears the burden of proof," which clearly included this affirmative defense and counterclaim, and Defendants failed to disclose an expert, instead waiting until Plaintiff produced its damages expert report to offer such testimony as purported rebuttal. Had Dr. McCune been offered as an initial expert witness, Plaintiff could have designated an expert to rebut Dr. McCune's opinions, and these dueling experts could have been put in front of a jury. In this circumstance, however, Defendants' actions evince the intent to play fast-and-loose with Rule 26's requirements to the detriment of Plaintiff, which the Court will not countenance.

In their opposition to Plaintiff's motion and again at oral argument on the motion, Defendants offered to dismiss their affirmative defenses and counterclaims in an attempt to save the McCune Report and Dr. McCune's ability to testify at trial. Defendants claimed that such a dismissal would render the McCune Report "solely for impeachment" purposes. *See, e.g.*, Opp., ECF 173 at 17. Defendants are incorrect – even if Defendants dismissed their affirmative defenses and counterclaims, the McCune Report would still not be a rebuttal report, for several reasons.

First, and most glaring, is the fact that Dr. McCune *never reviewed the Neuberger Report*, which he is purportedly being offered to rebut, prior to drafting his own expert report. *See* McCune Depo. Tr., Tilley Decl., ECF 176-6 at 44-45 (Pl.'s counsel: "Are you familiar with a report that was prepared by Dr. Neuberger in this case?" Dr. McCune: "No." Pl.'s counsel: You haven't reviewed that at any time?" Dr. McCune: Haven't seen anything."). Courts have

repeatedly held that an expert is improperly designated as a rebuttal expert when he has failed to review the initial expert report, or "otherwise [failed to] indicate that he was aware of" the opinions offered by the initial expert. *See, e.g.*, *Houle v. Jubilee Fisheries, Inc.*, 2006 WL 27204, at *3, *3 n.4 (W.D. Wash. Jan. 5, 2006) (stating that plaintiff's expert, who failed to mention, cite, or otherwise indicate that he was aware of the opinions of defendant's expert "is not a rebuttal expert"); *see also Amos v. Makita* at *1 ("The Ninth Circuit has held that rebuttal experts are not rebuttal experts if the testimony they give does not address or rebut previously disclosed expert testimony."). Such a rule makes sense: an expert cannot be said to "rebut" testimony he or she has never seen or reviewed. *See, e.g.*, *Houle* at *3 n.4.

Second, even if the Court were to disregard this glaring issue – which alone is a sufficient reason to strike Dr. McCune's Report – a review of the McCune Report alongside the Neuberger Report makes plain that Dr. McCune's opinions are not rebuttal opinions, nor are they offered on the "same subject matter" as the Neuberger Report. Dr. Neuberger's report includes no technical analysis of The BarMaster, but rather presents a sales projection in order to value CVT at the time of the alleged tortious interference. Though Dr. Neuberger's valuation assumes that The BarMaster was a viable product – and, in fact, that CVT would be able to implement a new, more efficient version of The BarMaster, thus improving sales, *see* ECF 153-4 ¶ 30 – the question of whether The BarMaster worked, and could in fact be sold to, and installed in, businesses such as 202 Market, was not raised by Dr. Neuberger's expert report, but instead is a primary element of Plaintiff's case-in-chief and Defendants' affirmative defenses and counterclaims. Plainly, whether The BarMaster worked goes to the heart of the dispute between these parties. "If the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." *Amos v. Makita*, at *2 (citing *In re Apex Oil Co.*, 958 F.2d at 245). Permitting Defendants to backdoor such expert testimony under the guise of "rebuttal" testimony would render Rule 26's limits generally meaningless, and permit Defendants to engage in substantial gamesmanship – something Rule 26 was designed to combat, not foster.

Defendants could have disclosed Dr. McCune as an initial expert to offer opinions on

6

whether The BarMaster actually worked as Plaintiff claimed. When a party's case, particularly with regard to damages, relies in part on the workability of a product, Defendants can be expected to introduce such expert testimony – this is particularly true when Defendants assert counterclaims or affirmative defenses which rely on proving that the product did not work. What a party cannot do, however, is exactly what Defendants did here – despite knowing that Plaintiff in its case-in-chief would argue that The BarMaster was workable and valuable, which was made clear from the very first page of Plaintiff's initial Complaint in this action, *see* ECF 1 at 1, Defendants attempted to sandbag Plaintiff by enclosing Dr. McCune's technical report as an appendix to the Turner rebuttal report. This behavior runs afoul of the purpose and plain language of Rule 26, and cannot be countenanced. *See, e.g.*, *Vu v. McNeil-PPC, Inc.*, 2010 WL 2179882, at *2 (C.D. Cal. May 7, 2010) ("If the phrase 'same subject matter' is read broadly to encompass *any* possible topic that *relates* to the subject matter at issue, it will blur the distinction between 'affirmative expert' and 'rebuttal expert.' More importantly, such broad reading of Rule 26(a)(2)(C)(ii) will render the scope of the subject matter limitless and will lead to unjust results.") (emphasis in original); *Cf. also Cates* at 685.

Because McCune was not disclosed as an affirmative expert, his report must be stricken and he must be prohibited from testifying under Rule 37 unless Defendants make a showing that the failure to disclose was harmless or substantially justified. Fed. R. Civ. P. 37(c)(1); *R & O Constr.* at *3. Defendants did not attempt to make such a showing in their opposition. As such, McCune was not properly disclosed pursuant to Rule 26, and Rule 37(c)(1) demands that his report be STRICKEN and that he not be permitted to testify at trial. *See, e.g.*, *id.*

### 2. The McCune Report is Inadmissible as an Appendix to the Turner Report, and Turner Cannot Testify as to McCune's Findings

Defendants' third argument, that McCune's report is nonetheless admissible as an appendix to the Turner Report because Dr. McCune is the type of expert on which Turner could reasonably be expected to rely, is also unpersuasive. It is axiomatic that an expert, "however well credentialed, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002); *see also Am. Key Corp. v.*

1  *Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be
2  based upon the opinions of others whether those opinions are in evidence or not."). Defendants
3  have not shown how McCune, as an expert in radio frequency systems, is the type of expert on
4  which Turner, as a Certified Public Accountant, would normally rely in offering expert opinions.

5      Defendants cite to *Ohio Environmental Development Limited P'ship v. Envirotest Society
6  Corp.*, a 2007 case from the Northern District of Ohio, in support of their theory, but the Court
7  finds the case distinguishable. There, the district court held that a real estate appraiser offered as
8  an expert could reasonably rely on calculations made by an architect, because such data would be
9  normally relied on by "experts in [the] field of appraisal in forming opinions on the diminution of
10 the market value of property resulting from deferred maintenance." 478 F. Supp. 2d 963, 975
11 (N.D. Ohio 2007). First, *Ohio Environmental's* ruling is consistent with the "great liberality" the
12 Sixth Circuit affords to experts under Rule 703, *see id.* at 974, a liberality that courts in the Ninth
13 Circuit have not adopted. *See, e.g.*, *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 2009 WL
14 1292913, at *4 (S.D. Cal. May 6, 2009) (rejecting *Ohio Environmental's* reading of Rule 703, and
15 further stating that "nothing in Rule 703 suggests that an expert may rely on evidence the Court
16 has *expressly precluded*.") (emphasis added). Second, the district court in *Ohio Environmental*
17 found that the real estate appraiser had personally checked the architect's work, "[a]s opposed to
18 blindly accepting [his] calculations." *Id.*

19     Defendants cannot show that CPAs regularly rely on scientific experts such as Dr. McCune
20 when determining a business's valuation. Nor does Turner state in his report that he independently
21 attempted to verify McCune's work, or that he would be qualified to do so. Instead, Turner
22 testified that his understanding of the radio frequency technology employed by The BarMaster
23 came from McCune's Report. *See* Turner Depo. Tr., Tilley Reply Decl. at 86:4-24. There is a
24 sharp difference between a real estate appraiser relying on the opinions of an architect – two
25 related professions that involve similar expertise – and a CPA relying on, and then repeating, the
26 opinions of a scientific technical expert in a wholly different field with which the CPA has neither
27 familiarity or expertise. *See Dura* at 614. For that reason, Turner may not rely on the McCune
28 Report when rendering his own expert opinions, in either his Report or in testimony. Turner is

free to testify that he has seen no evidence to support an assumption that The BarMaster is a viable product, but he may not rely on McCune's Report to support such an opinion. *See, e.g.*, *id.*

### 3. Defendants' Undisclosed "Impeachment" Witnesses Cannot Testify at Trial Because Their Testimony is Direct Evidence Relating to Defendants' Counterclaims and Affirmative Defenses

In their opposition, Defendants further argue that three other fact witnesses, Messrs. Cano, Wyatt, and Simpson, should be allowed to testify to impeach Mr. Mula's anticipated testimony about the success of an installation of The BarMaster at a Roanoke, Virginia establishment called 202 Market. Neither Cano nor Wyatt were disclosed by Defendants pursuant to Rule 26.

Plaintiff makes two arguments with regard to these witnesses. First, it argues that the McCune Report is inadmissible because it relies almost exclusively on this hearsay testimony, which would be inadmissible. *See* Pl.'s Mot. at 16-17. Because the Court strikes the McCune Report, and precludes Dr. McCune from testifying at trial, this argument is moot. Second, Plaintiff argues that Cano and Wyatt are not impeachment witnesses because their testimony would be offered as direct evidence that The BarMaster did not work – evidence that would speak to Defendants' counterclaims and affirmative defenses. *See* Pl.'s Reply at 9.

The Court agrees with Plaintiff. Though Defendants argue that Wyatt and Cano will testify only as impeachment witnesses, they argue that they intend to call these witnesses in order to contradict testimony by CVT that the 202 Market installation was "finished in 2011" and "fully functioning." *See* Opp. at 15. Defendants are correct that witnesses who are called solely for impeachment purposes need not be disclosed pursuant to Rule 26, but Defendants' description of the testimony to be offered by these witnesses shows that their testimony would not be solely for impeachment and would instead be directly related to Defendants' affirmative defenses and counterclaims – matters on which Defendants bear the burden of proof.

Evidence is "solely for impeachment" when it "has value solely for the purpose of impeaching a witness." *Robert Kubicek Architects & Assocs., Inc. v. Bosley*, 2013 WL 998222, at *2 (D. Ariz. Mar. 13, 2013). If evidence instead "has independent relevancy to the merits of the case, [the evidence] is not 'solely for impeachment' and must be disclosed to opposing counsel"

9

pursuant to Rule 26. *Id.* (citing *Klonoski v. Mahlab*, 156 F.3d 255, 270 (1st Cir. 1998)); *see also Wilson v. AM Gen. Corp.*, 167 F.3d 1114, 1122 (7th Cir. 1999) (finding that when a witness will offer testimony related to a "primary line of defense" in the suit, the witness is not offered solely for impeachment purposes). Here, evidence that the 202 Market installation did not work, or was otherwise not fully functional, is not impeachment evidence because it has independent relevance beyond impeaching Mr. Mula or any other CVT witness – the testimony goes directly to Defendants' breach of contract counterclaims and affirmative defenses, which require Defendants to prove that Plaintiff did not bring a viable product to market. *See Valiavicharska v. Tinney*, 2012 U.S. Dist. LEXIS 11334, at *5 ("'Impeachment' as contemplated by the Rule 26(a) exception refers to *attacks on the credibility of a witness and not to rebuttal evidence*, which tends to prove any element of [a party's] claims.") (emphasis added). Defendants may not seek to introduce these witnesses under the guise of impeaching Mr. Mula's credibility when the witness would actually testify about the effectiveness of the 202 Market installation and the workability of The BarMaster.

Messrs. Cano and Wyatt are not being offered "solely for impeachment," and needed to be disclosed by Defendants pursuant to Rule 26. Because Defendants did not do so, both witnesses must be precluded from testifying, pursuant to Rule 37.

Defendants argued at the hearing on this motion that, were they to dismiss their counterclaims and affirmative defenses, Wyatt and Cano's testimony would be rendered solely for impeachment purposes. The Court DEFERS ruling on such a request to offer Wyatt and Cano's testimony as impeachment evidence until (1) Defendants dismiss their counterclaims and affirmative defenses and (2) the Court hears the testimony Defendants would seek to impeach.[2] *Even if* Defendants were to dismiss their counterclaims and affirmative defenses, Messrs. Wyatt and Cano may still be precluded from testifying if the Court determines that their testimony is not offered solely for impeachment purposes.

---

[2] Further, it would be unjust to conditionally deny Plaintiff's motion on the mere offer that Defendants will dismiss their affirmative defenses and counterclaims. Defendants may, at any time, dismiss their counterclaims and affirmative defenses, but such a dismissal is no guarantee that the Court will permit Wyatt and Cano to testify.

**B.     The Turner Report**

Because the Court strikes the McCune Report, Turner may not testify regarding The BarMaster's technical flaws. This is because Turner himself does not have any expertise in radio frequencies or wireless communications, and stated in his deposition testimony that his technical knowledge of The BarMaster came from Dr. McCune's Report. *See, e.g.*, Turner Depo. Tr. at 86:4-24; *see also Dura* at 614.

Plaintiff also seeks to strike and exclude portions of the Turner Report which it argues "go[] far beyond the scope of authorized rebuttal." Pl.'s Reply at 10. At oral argument on the motion, Plaintiff pointed to several specific portions of the Turner Report that it sought to strike: (1) Turner's legal conclusions that CVT was a Ponzi scheme, that CVT failed to mitigate its damages, and that certain portions of the Neuberger Report had "no evidentiary value"; and (2) Turner's testimony that CVT had "no patentable technology."

As discussed by the Court at oral argument, the Court agrees with Plaintiff that these statements each go beyond the permissible scope of expert testimony. With regard to Turner's legal conclusions, the Court STRIKES the section of Turner's Report which states that CVT failed to mitigate its damages, *see* Turner Report, Part V.C at 16-17, and the portions of his Report which state that the Neuberger Report lacks evidentiary value. Further, the Court STRIKES Turner's statement that "CVT had the elements of a [P]onzi scheme," *id.* at 17, because Turner's Report points to no evidence that money was being raised by CVT's leadership in order to pay amounts due to other earlier investors. The phrase "Ponzi scheme" is a loaded term that Turner and Defendants shall not be permitted to put before a jury without such evidentiary support.

As to Turner's opinion that CVT had "no patentable IP," *see* Turner Report at 17, the Court limits Turner's opinion and testimony to statements that CVT held no issued patents, but otherwise excludes his opinion that CVT and its owners had no patentable technology. Turner professed no expertise in patents and cannot serve as a mouthpiece for McCune's analyses of Plaintiff's patent applications. *See, e.g.*, *Dura* at 614. The Court otherwise DENIES Plaintiff's motion to strike the Turner Report.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The McCune Report is STRICKEN, and McCune cannot testify at trial.
2. Turner may not rely on the opinions offered in the McCune Report in his testimony at trial, and any reference by Turner to McCune's opinions is STRICKEN.
3. Messrs. Wyatt and Cano are precluded from testifying at trial.
4. The Turner Report is STRICKEN IN PART as to the legal conclusions contained within and its opinion that CVT or its owners lacked patentable technology, and Turner shall not be permitted to testify at trial as to these opinions. Plaintiff's motion to strike the Turner Report is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: June 3, 2015

_____
BETH LABSON FREEMAN
United States District Judge

12